IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **TYLER LEE CANARIS,** | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION FILE NO:** |
| | ) | _____ |
| v. | ) | |
| | ) | |
| **MICHAEL MCMASTER**, in his | ) | |
| Individual Capacity as a former Deputy of | ) | |
| the Paulding County Sheriff's Office, and | ) | |
| **GARY GULLEDGE**, in his Individual | ) | |
| and Official Capacity as Sheriff of | ) | *Jury Trial Demanded* |
| Paulding County, | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT FOR DAMAGES

**NOW COMES** Plaintiff, TYLER LEE CANARIS, and hereby files his *Complaint for Damages* against Defendant MICHAEL MCMASTER, in his individual capacity as a former deputy sheriff with the Paulding County Sheriff's Office, and Defendant GARY GULLEDGE, in his official capacity as Sheriff of Paulding County, and show this Court as follows:

## INTRODUCTION

1.

This is a civil rights lawsuit filed by TYLER LEE CANARIS, pursuant to 42

U.S.C. § 1983, seeking general and compensatory damages for his unlawful arrest and seizure in violation of his rights guaranteed by the Fourth Amendment to the United States Constitution. MR. CANARIS additionally asserts Georgia state law claims for assault, battery, intentional infliction of emotional distress, punitive damages, and attorney's fees.

2.

This incident occurred on March 4, 2022, when MR. CANARIS was wrongly detained and arrested by Defendant MCMASTER without reasonable suspicion or probable cause. As a result of being wrongly detained and arrested, MR. CANARIS sustained significant injuries that required medical and surgical treatment from being body slammed to the ground by Defendant MCMASTER. Subsequently, Defendant MCMASTER made false and misleading statements in a criminal warrant alleging that MR. CANARIS resisted arrest, which resulted in MR. CANARIS being charged with the misdemeanor offense of obstructing a law enforcement officer.[1]

3.

On February 27, 2023, a notice of claim was filed on behalf of MR. CANARIS with Paulding County officials explaining that prior to this incident, Defendant GULLEDGE, as the Paulding County Sheriff, had notice and knowledge that

---

[1] *State of Georgia v. Tyler Canaris*, 22-CR-000264, State Court of Paulding County.

Defendant MCMASTER had a history and problem with anger management which caused him to abuse and violate the constitutional rights of citizens. Despite this knowledge, Defendant GULLEDGE failed to take any corrective action to address these issues with Defendant MCMASTER until nearly a year after the incident involving MR. CANARIS. See *Notice of Claims on Behalf of Tyler Canaris Pursuant to O.C.G.A. § 36-11-1*, attached hereto as **Exhibit 1**.

4.

On February 27, 2023, Defendant MCMASTER was terminated by the Paulding County Sheriff's Office (hereinafter "Sheriff's Office"). His termination was based on multiple policy and procedure violations relating to his interactions and encounters with citizens. See *Termination Report*, attached hereto as **Exhibit 2**.

## **JURISDICTION AND VENUE**

5.

This action is brought pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution as applied to the State of Georgia and its entities, officials, and employees, as well as the statutes and common laws of the State of Georgia.

6.

Because this is an action under the United States Constitution, this Court has

jurisdiction under Article III of the Constitution and under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). The relief sought is authorized by the United States Constitution and by 42 U.S.C. § 1983.

7.

This Court has supplemental jurisdiction over MR. CANARIS' state law claims pursuant to 28 U.S.C. § 1367, because they are related to his §1983 claims, over which this Court has original jurisdiction, and these claims all arise from the same case or controversy under Article III of the United States Constitution.

8.

Venue is proper in the Northern District of Georgia, Atlanta Division pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and occurrences giving rise to the claim occurred in Paulding County, Georgia.

**<u>IDENTIFICATION OF PARTIES</u>**

9.

Plaintiff, TYLER LEE CANARIS, (hereinafter "MR. CANARIS"), at all relevant times herein, was a citizen of the United States and a resident of Georgia, and currently resides at 113 Red Mountain Road, Dallas, Georgia 30157.  MR. CANARIS brings this action under federal law and Georgia law for all general, special, compensatory, and permissible damages. At the time of the events giving

rise to this incident, MR. CANARIS resided in Paulding County.

10.

Defendant, MICHAEL MCMASTER (hereinafter "Defendant MCMASTER"), at all relevant times herein, is and was a sworn deputy of the Sheriff's Office. In his capacity as a law enforcement officer, Defendant MCMASTER was responsible for policing Paulding County under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the Paulding County Sheriff's Office.

11.

The actions of Defendant MCMASTER that are the subject of this lawsuit were undertaken in the regular course of his employment as a deputy with the Sheriff's Office.  Defendant MCMASTER is sued in his individual capacity and is a resident and citizen of the State of Georgia and may be served with process at his personal place of residence: 53 Valley Brook Ct., Dallas, Georgia 30132. Jurisdiction and venue are proper.

12.

Defendant, GARY GULLEDGE (hereinafter "Defendant GULLEDGE") is, and at all relevant times, was the Sheriff of the Paulding County Sheriff's Office,

with supervisory and managerial authority over all Paulding County Sheriff's Office deputies.

13.

As Sheriff, Defendant GULLEDGE was ultimately responsible for the hiring, training, supervision, discipline, administration, policies, customs, practices, operations, management, and control of the Sheriff's Office and its officers, including Defendant MCMASTER. Defendant GULLEDGE is the final policymaker and decisionmaker for the Sheriff's Office in the areas of law enforcement policies, hiring, training, supervision, and discipline of JPSO officers.

14.

The actions of Defendant GULLEDGE that are the subject of this complaint were undertaken under the color of law in the regular course of his employment as the Paulding County Sheriff. Defendant GULLEDGE is a resident and citizen of the State of Georgia and may be served with process in his individual and official capacity at the Paulding County Sheriff's Office, 180 Constitution Boulevard, Dallas, Georgia 30312. Jurisdiction and venue are proper.

15.

The actions of Defendants violated clearly established statutory and constitutional rights of which reasonable officers would have known, including

rights pertaining to the Fourth Amendment of the United States Constitution. Further, the actions and omissions of Defendants were willful, wanton, and reckless, and proximately caused injuries to MR. GULLEDGE, for which Defendants are not entitled to qualified immunity.

## **STATEMENT OF FACTS**

### **Detention and Arrest of Tyler Canaris**

16.

At approximately 6:00 am on Friday March 4, 2022, MR. CANARIS was walking from his home to work when he was detained and arrested by Defendant MCMASTER, who suspected MR. CANARIS of breaking into cars.

17.

At the time MR. CANARIS was stopped, detained, and arrested by Defendant MCMASTER, there was no reasonable articulable suspicion or probable cause to arrest or detain MR. CANARIS.

18.

During the arrest and detention of MR. CANARIS, video of the incident shows Defendant MCMASTER violently slamming Mr. Canaris to the ground.

19.

In an incident report describing his detention and arrest of MR. CANARIS,

Defendant MCMASTER wrote the following:

> On the above date, I, Dep. Mc Master, responded to a suspicious person attempting to break into vehicles. I located a suspect matching the description [sic] given. I placed the suspect under arrest. I completed a report and went back into service.

See, *Case Report*, attached hereto as **Exhibit 3**.

20.

Not only was the detention and arrest of MR. CANARIS by MR. MCMASTER unlawful, but the physical force used by Defendant MCMASTER during the arrest of MR. CANARIS was excessive, unreasonable, unnecessary, and in violation of state and federal law, including the Fourth Amendment of the United States Constitution.

21.

Following his arrest, it was determined by the Paulding County Sheriff's Office that MR. CANARIS was not breaking into cars.

22.

While on the scene, EMS responded and observed that MR. CANARIS was bleeding from his left ear and recommended that he be transported to the hospital. MR. CANARIS was transported by Sheriff Deputy Thomas Ogden to Paulding Well

Star Hospital in Hiram, where after being examined, he was later transported by ambulance to Well Star Kennestone Hospital in Marietta, where he remained under hospital care until March 9.

23.

As a result of being violently body slammed to the ground by Defendant MCMASTER, MR. CANARIS sustained significant injuries that required medical and surgical treatment for a left clavicle fracture, right thumb fracture, skull fracture, rupture of left ear drum, traumatic brain injury, among other injuries.

24.

MR. CANARIS injuries required follow-up medical treatment, and he continues to experience physical pain and emotional trauma due to this incident. His current medical bills total approximately $73,416.00.

25.

After transporting MR. CANARIS to the hospital in the back of a patrol car in handcuffs, the Sheriff's Office released him from custody and left him at the hospital.

**Criminal Arrest Warrant for Tyler Canaris**

26.

At approximately 2:58 pm on March 4, 2022, Defendant MCMASTER

prepared a Criminal Warrant that was presented to Paulding County Magistrate Judge L.F. Baty, alleging that MR. CANARIS committed the misdemeanor offense of obstructing of a law enforcement officer, in violation of O.C.G.A. § 16-10-24(a), alleging as follows:

> [That MR. CANARIS] did knowingly and willfully hinder Dep. McMaster a Law Enforcement Officer in the lawful discharge of his duties by refusing to follow commands and attempting to get arms way when being handcuffed.

See, *Criminal Arrest Warrant*, attached hereto as **Exhibit 4**.

27.

The statements and allegations made by Defendant MCMASTER in his Criminal Warrant are false, misleading, and contradicted by video of the incident from his vehicle's dash camera. The false and misleading statements of Defendant MCMASTER resulted in the issuance of a criminal arrest warrant for MR. CANARIS.

28.

On May 12, 2022, MR. CANARIS turned himself into the Paulding County jail for booking on the charge of misdemeanor obstruction of a law enforcement officer and was released on his "Own Recognizance" pursuant to an *Unsecured*

*Judicial Release Order*.

29.

On November 21, 2022, a formal accusation was filed in the Clerk of State Court of Paulding County against MR. CANARIS by Luana P. Nolen, Solicitor General of Paulding County, charging him with one count of obstruction of an officer, alleging as follows:

> [O]n or about the 4th day of March, 2022, [MR. CANARIS] did knowingly and willfully obstruct Michael McMaster a law enforcement officer with the Paulding County Sheriff's Office in the lawful discharge of his lawful official duties by refusing to comply when ordered to remove his backpack and place his hands behind his back when ordered to do so, in violation of O.C.G.A. § 16-10-24(a).

See, *Accusation*, attached hereto as **Exhibit 5**.

30.

The allegations contained within the above-referenced accusation are contradicted by the video of this incident.

31.

Following the arrest of Mr. Canaris, Defendant MCMASTER prepared a detailed Investigative Narrative which stated, in pertinent part, the facts leading to

his detention and arrest of MR. CANARIS:

> On the above date, I Dep. McMaster, responded to a subject complaint. The call was in reference to a male wearing dark clothing and a backpack attempting to break into cars in the area. This is the second call that Deputies have received in the area in the matter of thirty minutes. The descriptions on both calls were similar in nature. The actions of the suspect in both calls were the same. The suspects were attempting to enter vehicles in the area. Due to my knowledge and experience with this type of crime, I know that many weapons are targeted. I have taken multiple reports about guns being stolen from vehicles. It was unknown if the suspect has made it into a vehicle at this time due to the earlier hour of the morning.

See, *Paulding County Sheriff's Office Reports*, attached hereto as **Exhibit 6**.

32.

The above facts reported by Defendant MCMASTER did not provide reasonable articulable suspicion or probable cause for him to detain or arrest MR. CANARIS.

33.

On or around February 17, 2023, video of the incident from Defendant

MCMASTER's vehicle dash camera was released to the public and news media and began circulating on the internet.

34.

The of video of the arrest and detention of MR. CANARIS prompted the Sheriff's Office to request a GBI investigation into this incident "to let them look at it and get their unbiased third party opinion on what took place, and if there were any criminal actions that took place in that incident." See *GBI investigating use-of-force incident by Paulding County Sheriff's Deputy*, by Denise Dillon, February 17, 2023.

## Paulding County Sheriff's Office
## Policies and Procedures

35.

The **"Agency Philosophy"** of the Sheriff's Office "is to maintain social order within ethical and constitutional limits, while providing professional law enforcement services to all."  Further, the purpose of the Sheriff's Office is to enforce the law "in a fair and impartial manner, recognizing both the statutory judicial limitations of the Sheriff's authority and the constitutional rights of all persons" which "contributes to the preservation of life, the protection of property and the safety of the community." See *Paulding County Sheriff's Office, Policy and Procedures Manual, Chapter 1: Administrative Organization and Management,*

*Subject: Agency Philosophy*, Page 1, attached as **Exhibit 7**.

36.

As Sheriff, Defendant GULLEDGE is responsible for providing management, administration and support required for operation of the Sheriff's Office, including written policies and procedures, based upon Federal, State, and local laws. *Id.*, at Page 3, <u>see also</u> *Paulding County Sheriff's Office, Policy and Procedures Manual, Chapter 1: Administrative Organization and Management, Subject: Standard Operating Procedures/On-Line SOP*, Page 1, attached as **Exhibit 8**.

37.

It is the policy of the Sheriff's Office "to provide employees with continuous and on-going instruction designed to enhance, refresh and update job-related knowledge, skills and abilities." <u>See</u> *Paulding County Sheriff's Office, Policy and Procedures Manual, Chapter: Training, Subject: In-Service Training,* Page 1, attached hereto as **Exhibit 9**.

38.

The Sheriff's Office has a policy regarding **"Arrest Procedures"** that provides guidelines for "investigative detention," defined as follows:

An investigative detention occurs when an officer, based on his natural senses, experience, and good judgment, suspects that criminal

14

activity may be afoot and has reasons that he can state to support his
suspicion.   He may then detain a subject briefly to investigate his
suspicions and may frisk the subject's other garments, if he has reason
to believe weapons are involved.

See *Paulding County Sheriff's Office, Policy and Procedures Manual, Chapter:
Arrest, Subject: Arrest Procedures,* Page 1, attached hereto as **Exhibit 10**.

### 39.

The Sheriff's Office provides guidelines for arrest procedures, which must be
supported by probable cause, which the Sheriff's Office defines as "[t]hose facts and
circumstances which would lead a reasonable and prudent person to believe that a
crime had been committed, or that the suspected person has committed an offense."
*Id.*, at Page 1.

### 40.

The Sheriff's Office arrest procedures state that an officer making a lawful
arrest has the right to use whatever force is reasonable and necessary to accomplish
the arrest, but no more than is necessary to take the suspect into custody. *Id.*, at Page
3.

### 41.

The Sheriff's Office has written procedures regarding the investigation of

suspicious persons which provides that during an interview of a suspicious person "officers are to treat the persons in a courteous manner and inform them of the reasons they were stopped and questioned." See *Paulding County Sheriff's Office, Policy and Procedures Manual, Chapter: Patrol Functions, Subject: Investigations of Suspicious Persons/Vehicles,* Page 2, attached hereto as **Exhibit 11**.

42.

The Sheriff's Office's procedure regarding **"Use of Force"** provides that "it is the policy of this department that deputies use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of deputies and others." See *Paulding County Sheriff's Office, Policy and Procedures Manual, Chapter: Use of Force, Subject: Use of Force,* Page 1, attached hereto as **Exhibit 12**.

43.

The Sheriff's Office's procedure state that the force utilized by a deputy must be "reasonable and necessary" and "relative to the suspect's resistance level." The policy also states that a deputy is required to de-escalate force when appropriate and cease use of force when control of a suspect has been established. *Id.*, at Page 2.

44.

The Sheriff's Office has an **"Internal Affairs"** policy which "establish

16

guidelines and procedures for thorough investigations of all complaints of alleged employee misconduct."   See *Paulding County Sheriff's Office, Policy and Procedures Manual, Chapter: Internal Affairs, Subject: Policy,* attached hereto as **Exhibit 13**.

45.

The purpose of the **"Internal Affairs"** policy is to identify "practices requiring corrective measures through remedial training" and "employees who may be involved in illegal, unethical, or unprofessional conduct so that the appropriate corrective measures may be taken." *Id.*

46.

The Sheriff's Office defines employee misconduct as "actions that are unlawful, dishonest, improper, or that represent a failure to do what duty requires to be done." See *Paulding County Sheriff's Office, Policy and Procedures Manual, Chapter: Internal Affairs, Subject: Procedures,* Page 1, attached hereto as **Exhibit 14**.

47.

As Sheriff, Defendant GULLEDGE is responsible and accountable for the Office of Professional Standards. Further, all investigators assigned to an internal affairs case "shall report directly to the Sheriff concerning the progress and finding

of such investigations." *Id.*, at Page 2.

48.

As Sheriff, Defendant GULLEDGE has the authority to relieve employees from their normal duties for use of deadly force resulting in death or injury; use of non-deadly force resulting in death of serious physical injury; any criminal violation; and any serious rule violation. <u>See</u> *Paulding County Sheriff's Office, Policy and Procedures Manual, Chapter: Internal Affairs, Subject: Conduct of Internal Affairs,* Page 1, attached hereto as **Exhibit 15**.

49.

The Sheriff's Office's **"Internal Affairs"** policy requires that upon completion of an internal affairs investigation, the Internal Affairs Officer will submit their findings to the Sheriff, Defendant GULLEDGE. <u>See</u> *Paulding County Sheriff's Office, Policy and Procedures Manual, Chapter: Internal Affairs, Subject: Sheriff and/or his Designee Actions,* Page 1, attached hereto as **Exhibit 16**.

**<u>McMaster's Policy and Procedure Violations</u>**

50.

Prior to this incident, the Sheriff's Office determined that Defendant MACMASTER'S violated agency and/ or county policy on numerous occasions, which formed the basis for his termination.  <u>See</u> *Termination Letter*, attached hereto

as **Exhibit 17**.

51.

In <u>Case: 2023-02130012</u>, a citizen complaint was filed against Defendant MCMASTER, alleging misconduct by Defendant MCMASTER. A Sheriff's Office in investigation determined that Defendant MACMASTER "should have used de-escalation tactics instead of arguing with defendant" noting that Deputy MCMASTER made the following statement about the complainant, "Bitch is stupid." *Id.,* at Page 1. It was also determined that "Deputy McMaster exceeded the speed limit several times while transporting defendant to jail and failed to seat belt defendant in [the] rear of [his] patrol vehicle." *Id.*

52.

In <u>Case: 2022-04290027</u>, the Sheriff's Office determined that Defendant MCMASTER failed to use de-escalation techniques when he attempted to detain a defendant following a traffic stop after observing a gun in the front passenger seat. Rather than questioning the defendant to determine if he was legally able to possess the gun, Defendant MCMASTER attempted to detain the defendant, which resulted in a physical struggle between Defendant MCMASTER and the defendant. The Sheriff's Office investigation into this incident determined that "[b]y Deputy McMaster's actions, he caused the situation to needlessly escalate, resulting in the

defendant being charged with felony obstruction." *Id.*, at Page 2.

53.

In <u>Case: 2022-12130058</u>, while working at the Paulding County Detention Center, Defendant MCMASTER spoke towards a male inmate "in an antagonizing and condescending way" and pushed the inmate up against a wall. Defendant MCMASTER then stated to the inmate "man take your fucking shoes off, I'm tired of dealing with you" and as the inmate bent over to remove his shoes, Defendant MCMASTER "was observed grabbing the defendant by the back of his head taking him to the ground." *Id.*

54.

In <u>Case: 2022-12130058</u>, which also occurred at the Paulding County Detention Center, Defendant MCMASTER exchanged words with an inmate which ultimately led to the inmate being physically taken down to the floor by Defendant MCMASTER. *Id.*

55.

In his termination notice, the Sheriff's Office stated that Defendant MCMASTER'S conduct in each of the above-referenced cases were examples of Defendant MCMASTER "escalating the situation rather than de-escalating increasing the potential to cause harm to himself and others." *Id.*  These incidents

formed the basis for Defendant MCMASTER'S termination from the Sheriff's Office.

Given the severity and scope of these policy violations and conduct, prior disciplinary history, and the fact that you have previously been given formal notice that further unacceptable conduct may result in dismissal, the decision has been made to terminate your employment with the Paulding County Sheriff Office effective today, 2/27/23.

*Id.*, at Page 3.

56.

In 2015, a citizen reported to the Sheriff's Office that "they worked at the veterinary hospital with Deputy MCMASTER'S wife" and "that earlier in the week Deputy MCMASTER called the office and talked with the receptionist and made threats to come their office and "beat his ass." See, *Memo from Lt. Ritch*, attached as **Exhibit 18.**

The caller stated the staff is now scared and afraid of Deputy MCMASTER coming to the office and causing problems. Lt. RICH asked the caller what caused this reaction from Deputy MCMASTER and the caller stated there was a new guy in the office and apparently he rubbed the shoulders of Deputy MCMASTER'S wife and the wife

told him about the incident.  The caller stated that Ms. MCMASTER

was not upset about the incident.

      The caller also stated that this was not the first incident with

Deputy MCMASTER intimidating people at their office.  The caller

further stated that they did not want him there anymore because he has

an anger problem.  They do not wish to file a formal complaint at this

time, but will do if this continues.

*Id.*

57.

On November 4, 2015, Defendant MCMASTER was counseled regarding the

complaint received from his wife's job, which prompted his superiors to review his

prior use of force reports.

      Once reviewing his file we recognized that Deputy McMaster

can be unnecessarily overly aggressive in handling situations that arise

in the Detention Center.  Deputy McMaster was recently written up for

aggressive behavior when dealing with an inmate….

      We stressed to Deputy McMaster that we want him to do his job,

we want him to be comfortable with the job requirements, but that he

must learn to use the most reasonable amount of force necessary to

22

control any situation in a safe way.  We further explained to Deputy McMaster that if he continues to demonstrate a pattern of inappropriate use of force it could lead to further disciplinary action and/or termination.

*Memo from Captain John Sheirling*, attached hereto as **Exhibit 19**.

## COUNT - I

## 42 U.S.C. § 1983 – VIOLATION OF CIVIL RIGHTS

### (Fourth Amendment Excessive Force Claim
### Against Defendant McMaster)

58.

MR. CANARIS re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

59.

Defendant MCMASTER is a "person" under 42 U.S.C. § 1983 and during all times relevant was acting under color of law as a deputy employed by the Sheriff's Office. During all times relevant, Defendant MCMASTER, as law enforcement officer, was vested with the authority and duty to protect life and property, prevent crime, detect, arrest, prosecute offenders, preserve the public peace, and enforce the laws of the state of Georgia.

60.

During all times relevant, Defendant MCMASTER had a duty and responsibility to carry out his law enforcement duties with a reverence for the sanctity of human life, and to use only that force, which is necessary, proportional to the level of resistance, and objectively reasonable based on the totality of circumstances confronting him, consistent with the Fourth Amendment of the United States Constitution.

61.

At the time of this incident, MR. CANARIS had legal rights established by the Constitution of the United States, the Constitution of the State of Georgia, and laws set forth by state and federal statutes.

62.

Defendant MCMASTER'S actions of violently body slamming MR. CANARIS to the ground was a violation of MR. CANARIS' civil rights under the United States Constitution, including the Fourth Amendment which prohibits unreasonable searches and seizures.

63.

Pursuant to 42 U.S.C. § 1983, the act of violently body slamming MR. CANARIS to the ground was unreasonable and without legal justification since MR.

CANARIS did not pose a threat to Defendant MCMASTER.

64.

Defendant MCMASTER is not entitled to qualified immunity, because his actions were malicious, reckless, and callously indifferent to clearly established and well-settled federal and state constitutional and statutory law, which a reasonable person in his position would have known.

65.

As a direct and proximate result of the actions of Defendant MCMASTER, he is personally liable to MR. CANARIS for all damages allowed under Georgia and federal law, including damages for physical and emotional pain and suffering, and medical expenses.

**COUNT II**

**42 U.S.C. § 1983 – VIOLATION OF CIVIL RIGHTS**

**(Supervisory Liability Claims Against Defendant Gulledge in his Individual and Official Capacity)**

66.

MR. CANARIS re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

67.

Defendant GULLEDGE is a "person" under 42 U.S.C. § 1983 and during all

times relevant was acting under color of law as the Paulding County Sheriff. During all times relevant, Defendant MCMASTER, as law enforcement officer, was vested with the authority and duty to protect life and property, prevent crime, detect, arrest, prosecute offenders, preserve the public peace, and enforce the laws of the state of Georgia.

68.

As sheriff, Defendant GULLEDGE is responsible for ensuring that his deputies complied with the color and pretense of federal and state laws, as well as the ordinances, regulations, customs, usages of the State of Georgia and Paulding County, and the policies of the Sheriff's Office. In his role as sheriff, Defendant GULLEDGE was ultimately responsible for the polices, practices, customs, and regulations of the Sheriff's Office; for the hiring, training, supervision, and discipline of Sheriff's Office deputies; and for promulgating all orders, rules, instructions, and standard operating procedures for citizen encounters with Sheriff's Office deputies acting in their official capacity.

69.

While supervisory officials are not liable under 42 U.S.C. § 1983 for the unconstitutional acts of their subordinates based on respondeat superior or vicarious liability, supervisors can be held liable when there is a causal connection between

the actions of a supervising official and the alleged constitutional deprivation.  <u>See</u> *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1354 (11th Cir. 2022).

70.

To establish supervisory liability under 42 U.S.C. § 1983, the necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights.  *Id.*

71.

Defendant GULLEDGE, in his individual and official capacity as the Paulding County Sheriff, has acted with deliberate indifference towards the Fourth Amendment constitutional rights of citizens to be free from excessive and unreasonable force by Defendant MCMASTER, allowing widespread abuse of citizens by Defendant MCMMASTER without taking corrective action until after the incident involving MR. CANARIS.

72.

The claims against Defendant GULLEDGE are based on his actions and omissions as Sheriff of Paulding County, including his role in the enactment and

promulgation of APD policies, customs, and procedures relating to discipline and supervision of deputies, including Defendant MCMASTER.

73.

Defendant GULLEDGE, acting in his individual capacity, and official capacity as Sheriff, failed to take the necessary or corrective action to resolve issues relating to obvious, flagrant, and rampant violations of use of force by Defendant MCMASTER, which was the driving force, and the direct and proximate cause of the injuries suffered by MR. CANARIS from being wrongly arrested and assaulted by Defendant MCMASTER.

74.

Defendant GULLEDGE, acting in his individual capacity, and official capacity as Sheriff, is liable for the violation of MR. CANARIS' constitutional rights as described herein due to his deliberate indifference to Defendant MCMASTER'S violating the constitutional rights of citizens through the improper use of force, including deadly force.

75.

Prior to this incident, Defendant GULLEDGE, in his role as Sheriff of Paulding County, was aware that Defendant MCMASTER had a history of violating the constitutional rights of citizens, and failed to take corrective action, and failed to

enforce the policies and procedure of his department relating to use of force, supervision and discipline of deputies.

76.

The custom, policies and practices described herein, and attributed to the actions and omissions a Defendant GULLEDGE in his role as Sheriff of Paulding County, were a direct contributing cause and driving force leading to the violation of MR. CANARIS' civil and constitutional rights.

77.

Defendant GULLEDGE is not entitled to qualified immunity, because his actions as shown herein, were deliberately indifferent to clearly established and well-settled federal and state constitutional and statutory law, which a reasonable person in his position would have known.

78.

As a direct and proximate result of the actions of Defendant GULLEDGE is liable to MR. CANARIS for all damages allowed under Georgia and federal law, including damages for physical and emotional pain and suffering, medical expenses.

## COUNT III

## FALSE IMPRISONMENT

### (Claim Against Defendant McMaster)

79.

MR. CANARIS re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

80.

Under Georgia law, the elements of the intentional tort of false imprisonment are the unlawful detention of the person of another, for any length of time, depriving the person of their personal liberty. See O.C.G.A. § 51-7-20.

81.

Defendant MCMASTER'S detention and arrest of MR. CANARIS on March 4, 2022, was without a warrant and was not supported by reasonable articulable suspicion or probable cause.

82.

At the time he was detained, there was no reasonable articulable suspicion to believe that a crime had been committed by MR. CANARIS.

83.

At the time he was detained, MR. CANARIS did not match the description of any criminal suspects, nor did MR. CANARIS attempt to flee when he was approached by Defendant MCMASTER.

84.

At the time he was detained, MR. CANARIS had a lawful right to walk in and around the Evans Mill subdivision.

85.

While MR. CANARIS denies that he resisted his detention or arrest by Defendant MCMASTER, he had a common-law right to resist an unlawful arrest by Defendant MCMASTER. See *Glenn v. State*, 310 Ga. 11 (2020).

86.

The Georgia Constitution is identical to the text of the Fourth Amendment to the United States Constitution, which provides the right of the people to be secure in their persons against unreasonable searches and seizures.

87.

In Georgia, when an arrest is not authorized under the law, it is illegal, and constitutes an assault by the arresting officer upon the person arrested. *Id.*, at *21-22.

88.

To establish a false arrest, detention can be shown by physical restraint or confinement as well as words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if the plaintiff does not remain as instructed.

89.

As a direct and proximate result of the actions of Defendant MCMASTER in detaining and arresting MR. CANARIS, which included the use of excessive and unreasonable physical force, Defendant MCMASTER is liable to MR. CANARIS for damages, including physical and emotional pain and suffering, and medical expenses for MR. CANARIS' hospitalization and treatment for the wounds inflicted by Defendant MCMASTER.

## COUNT - IV

## ASSAULT AND BATTERY

### (Claims Against Defendant McMaster)

90.

MR. CANARIS re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

91.

Under Georgia law, O.C.G.A. §§ 51-1-13, "[a] a physical injury done to another shall give a right of action to the injured party, whatever may be the intention of the person causing the injury unless he is justified under some rule of law."

92.

Under Georgia law, O.C.G.A. §§ 51-1-14, "[a]ny violent injury or illegal

attempt to commit a physical injury upon a person is a tort for which damages may be recovered."

93.

MR. CANARIS and arrest of Plaintiff without probable cause and legal justification was an aggravated assault and battery actionable under O.C.G.A. §§ 51-1-13 and 51-1-14, for which Defendant MCMASTER'S is liable to MR. CANARIS for damages, including physical and emotional pain and suffering, and medical expenses for MR. CANARIS' hospitalization and treatment for the wounds inflicted by Defendant MCMASTER.

## COUNT - V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Claim Against Defendant McMaster)

94.

MR. CANARIS re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

95.

Under Georgia law, a claim for intentional infliction of emotional distress exists where a defendant's conduct directed at a plaintiff is intentional or reckless, extreme and outrageous, and causes a plaintiff to experience severe emotional

distress. <u>See</u> *Kirkland v. Earth Fare, Inc.*, 289 Ga. App. 819 (2008).

96.

The actions and false statements of Defendant MCMASTER resulted in MR. CANARIS being arrested and prosecuted, which has caused MR. CANARIS to suffer and continue to suffer severe emotional distress.

97.

The conduct of Defendant MCMASTER, as described herein, was intentional, reckless, extreme, and outrageous, and has caused MR. CANARIS to experience serve emotional distress.

98.

The wrongful conduct and actions of Defendant MCMASTER, as described herein, were the proximate cause of MR. CANARIS' emotional distress. As a result of Defendant MCMASTER'S false allegations that resulted in MR. CANARIS being charged with obstruction of a law enforcement officer, MR. CANARIS has suffered damages for emotional pain and suffering, for which Defendants are liable for damages under Georgia law.

## COUNT - VI

## <u>PUNITIVE DAMAGES</u>

### (Claim Against Defendant McMaster)

99.

MR. CANARIS re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

100.

Under Georgia law, O.C.G.A. § 51-12-5.1, punitive damages may be awarded in a tort action where there is clear and convincing evidence that a defendant's actions showed either willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

101.

As shown herein, through their actions and omissions, Defendant MCMASTER have maliciously and intentionally injured MR. CANARIS, and his conduct evidences a willful, wanton, and reckless disregard of MR. CANARIS rights, and raise the presumption of conscious indifference to consequences.

102.

Based on the actions of Defendant MCMASTER towards the constitutional rights of citizens of Georgia, a jury would be authorized to award punitive damages to MR. CANARIS against Defendant MCMASTER to punish, penalize, or deter Defendant MCMASTER from future misconduct.

## COUNT - VII

### Attorneys' Fees

### (Claim Against Defendants McMaster and Gulledge)

103.

MR. CANARIS re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

104.

Pursuant to O.C.G.A. § 13-6-11, should MR. CANARIS prevail in his state law claims against Defendants, a jury may award him expenses of litigation where Defendants have acted in bad faith, been stubbornly litigious, and have caused MR. CANARIS unnecessary trouble and expense.

**WHEREFORE**, Plaintiff prays that he has a trial on all issues and judgment against Defendants as follows:

a.   That Plaintiff recover for the deprivation of his civil rights and liberties in an amount to be determined by the enlightened conscience of a jury;

b.   That Plaintiff recover for being wrongfully shot and injured in an amount determined by the enlightened conscience of a jury;

c.   That Plaintiff recover for his medical expenses, lost wages, and

other necessary expenses in an amount to be proven at trial;

e.  That Plaintiff recover for his physical and mental pain and suffering, loss of enjoyment of life, and emotional distress in an amount to be determined by the enlightened conscience of the jury;

f.  That Plaintiff recover punitive damages in an amount to be determined by the enlightened conscience of a jury;

g.  That Plaintiff recover reasonable attorney's fees and costs of litigation under 42 U.S.C. § 1988 and O.C.G.A. § 13-6-11;

h.  That Plaintiff recover such other and further relief as is just and proper; and

i.  That all issues be tried before a jury.

Respectfully submitted this 22nd day of September, 2023.

THE COCHRAN FIRM – ATLANTA

/s/ Sam Starks_____
Shean D. Williams, Esq.
Georgia Bar No. 764139
Samuel L. Starks, Esq.
Georgia Bar No. 676515
swilliams@cochranfirmatl.com
sstarks@cochranfirmatl.com
*Attorneys for the Plaintiff*

100 Peachtree Street, NW
Suite 2600
Atlanta, Georgia 30303
Telephone: (404) 222-9922
Fax: (404) 222-0170
swilliams@cochranfirmatl.com
sstarks@cochranfirmatl.com