

# THE COCHRAN FIRM - ATLANTA

⚖

100 PEACHTREE STREET, N.W. • SUITE 2600
ATLANTA, GEORGIA 30303
(404) 222-9922 • FAX: (404) 222-0170

February 27, 2023

**Paulding County Board of Commissioners:**
Dave Carmichael, Commission Chair
Keith Dunn, Post I Commissioner
Sandy Keacher, Post II Commissioner
Virginia Galloway, Post III Commissioner
Brian Stover, Post IV Commissioner
180 Constitution Blvd.
Dallas, Georgia 30132
*(By Hand-delivery & Certified Mail)*

Gary Gulledge
**Paulding County Sheriff**
180 Constitution Blvd.
Dallas, Georgia 30132
*(By Hand-delivery & Certified Mail)*

Joann D. Francis
**Senior Claims Examiner**
ACCG Insurance Programs
P.O. Box 56527
Atlanta, Georgia 30343
*(By Certified Mail Only)*



Jayson Phillips, Esq.
**Paulding County Attorney**
Talley, Richardson & Cable, P.A.
367 Memorial Dr.
Dallas, Georgia 30132
*(By Certified Mail Only)*

**Re:    Notice of Claims on Behalf of Tyler Canaris Pursuant to O.C.G.A. § 36-11-1.**

Dear Ladies and Gentlemen:

Please be advised that the Cochran Firm Atlanta represents Mr. Tyler Canaris who resides at 357 Evans Mill Dr., Dallas, Georgia 30157, regarding all claims that exist under state and federal law arising from his encounter with Deputies from the Paulding County Sheriff's Department on March 4, 2022. As a result of this encounter, Mr. Canaris was detained and arrested without legal

THE COCHRAN FIRM · ATLANTA

justification; sustained physical and emotional injuries resulting from excessive force used during his arrest; and is being maliciously prosecuted based on false and malicious statements. Mr. Canaris hereby provides notice of his intention to file suit against Paulding County and all officials that were directly and indirectly involved in the encounter described in this letter.

At approximately 6:00 am on Friday March 4, 2022, Mr. Canaris was walking from his home to work when he was detained and arrested by Michael McMaster, a Paulding County Sheriff Deputy, who suspected Mr. Canaris of breaking into cars. At the time Mr. Canaris was stopped, detained, and arrested by Deputy McMaster, there was no reasonable articulable suspicion or probable cause to arrest or detain Mr. Canaris. During the arrest and detention of Mr. Canaris, Deputy McMaster can be seen on video from his patrol car's dash camera violently slamming Mr. Canaris to the ground. In his incident report, Deputy McMaster wrote the following: "**On the above date, I, Dep. Mc Master, responded to a suspicious person attempting to break into vehicles. I located a suspect matching the description [sic] given. I placed the suspect under arrest. I completed a report and went back into service.**"

Not only was the detention and arrest of Mr. Canaris by Deputy McMaster unlawful, but the physical force used by Deputy McMaster during the arrest of Mr. Canaris was excessive, unreasonable, unnecessary, and in violation of state and federal law, including the Fourth Amendment of the United States Constitution. Following his arrest, it was determined by the Paulding County Sheriff's Office that Mr. Canaris was not breaking into cars.

While on the scene, EMS responded and observed that Mr. Canaris was bleeding from his left ear and recommended that he be transported to the hospital. Mr. Canaris was transported by Paulding County Sheriff Deputy Thomas Ogden to Paulding Well Star Hospital in Hiram, where after being examined, he was later transported by ambulance to Well Star Kennestone Hospital in Marietta, where he remained under hospital care until March 9. As a result of being violently body slammed to the ground by Deputy McMaster, Mr. Canaris sustained significant injuries that required medical and surgical treatment for a left clavicle fracture, right thumb fracture, skull fracture, rupture of left ear drum, traumatic brain injury, among other injuries. Mr. Canaris' injuries also required follow-up medical treatment, and he continues to experience physical pain and emotional trauma due to this incident. His current medical bills total approximately $73,416.00.

After transporting Mr. Canaris to the hospital in the back of a patrol car in handcuffs, the Paulding County Sheriff's Office released him from custody and left him at the hospital. However, at approximately 2:58 pm on March 4, 2022, Deputy McMaster prepared a Criminal Warrant that was presented to Paulding County Magistrate Judge L.F. Baty, alleging that Mr. Canaris committed the misdemeanor offense of obstructing a law enforcement officer, in violation of O.C.G.A. § 16-10-24(a), alleging that Mr. Canaris "**did knowingly and willfully hinder Dep.**

**McMaster a Law Enforcement Officer in the lawful discharge of his duties by refusing to follow commands and attempting to get arms way when being handcuffed.**" The statements and allegations made by Deputy McMaster in his Criminal Warrant are false, misleading, and contradicted by video of the incident from his vehicle's dash camera. The false and misleading

THE COCHRAN FIRM - ATLANTA

statements of Deputy McMaster resulted in the issuance of a criminal arrest warrant for Mr. Canaris.

On May 12, 2022, based on the advice and assistance of counsel, Torris J. Butterfield, Esq., Mr. Canaris turned himself into the Paulding County jail for booking on the charge of misdemeanor obstruction of a law enforcement officer and was released on his "Own Recognizance" pursuant to an *Unsecured Judicial Release Order*. On November 21, 2022, a formal accusation was filed in the Clerk of State Court of Paulding County against Mr. Canaris by Luana P. Nolen, Solicitor General of Paulding County, charging him with one count of obstruction of an officer, alleging that **"on or about the 4th day of March, 2022, [Mr. Canaris] did knowingly and willfully obstruct Michael McMaster a law enforcement officer with the Paulding County Sheriff's Office in the lawful discharge of his lawful official duties by refusing to comply when ordered to remove his backpack and place his hands behind his back when ordered to do so, in violation of O.C.G.A. § 16-10-24(a)."** The allegations contained within this accusation are contradicted by the video of this incident.

Following the arrest of Mr. Canaris, Deputy McMaster prepared a detailed Investigative Narrative which stated, in pertinent part, the facts leading to his detention and arrest of Mr. Canaris: **"On the above date, I Dep. McMaster, responded to a subject complaint. The call was in reference to a male wearing dark clothing and a backpack attempting to break into cars in the area. This is the second call that Deputies have received in the area in the matter of thirty minutes. The descriptions on both calls were similar in nature. The actions of the suspect in both calls were the same. The suspects were attempting to enter vehicles in the area. Due to my knowledge and experience with this type of crime, I know that many weapons are targeted. I have taken multiple reports about guns being stolen from vehicles. It was unknown if the suspect has made it into a vehicle at this time due to the earlier hour of the morning."** The above facts reported by Deputy McMaster did not provide reasonable articulable suspicion or probable cause for Deputy McMaster to detain or arrest Mr. Canaris.

On or around February 17, 2023, video of the incident from Deputy McMaster's vehicle dash camera was released to the public and news media and began circulating on the internet. According to Sgt. Henson of the Paulding County Sheriff's Office, the release of the video prompted the Paulding County Sheriff's Office to request a GBI investigation into this incident **"to let them look at it and get their unbiased third party opinion on what took place, and if there were any criminal actions that took place in that incident."** *See GBI investigating use-of-force incident by Paulding County Sheriff's Deputy*, by Denise Dillon, February 17, 2023.

Prior to this incident, the Paulding County Sheriff's Office failed to provide Deputy McMaster, and other officers, with adequate training, supervision and discipline relating to the legal standards required to justify detention and arrests of suspects, as well as the limitations on the proper use of physical force during a detention and arrest. Furthermore, prior to this incident, the Paulding County Sheriff's Office had notice and knowledge that Deputy McMaster had a history and problem with anger management but failed to take corrective action to address this problem. Moreover, this incident reveals a ratification and deliberate indifference by the Paulding County Sheriff's Office to the constitutional rights of citizens to be free from unlawful detentions

THE COCHRAN FIRM · ATLANTA

and arrest, as well as excessive force in violation of the Fourth Amendment. Based on information and belief, the Paulding County Sheriff's Office have allowed its deputies to engage in a custom and practice of violating the civil rights of citizens.

Based on the physical and emotional injuries suffered by Mr. Canaris, and the violation of his state and federal statutory and constitutional rights, we have been authorized to make a settlement demand on behalf of Mr. Canaris in the amount of $1,000,000.00 (1 Million Dollars) to resolve all claims arising from this incident against Paulding County, Deputy McMaster and the Paulding County Sheriff's Office. This offer is submitted pursuant to the "Unliquidated Damages Interest Act of Georgia" as codified at O.C.G.A. §51-12-14; Southern General Insurance Co. v. Holt, 262 Ga. 267 (1992) and its progeny, including specifically Cotton States. v. Brightman, 256 Ga. App. 451 (2002), a case affirming an insurer's duty of good faith to persons insured under its policies or self-insured programs. You may pay the said amount and the matter will be settled in full. If you fail to pay the said amount within (30) days from the mailing date of this notice, then the offer to settle will be withdrawn and Mr. Canaris will proceed to litigate.

This letter is expressly provided as an offer of compromise of an existing claim, and as such, its contents are not admissible at any trials of this action. Additionally, you are advised that this notice is given pursuant to O.C.G.A § 36-11-1 to afford Paulding County, its departments, agents, employees, and insurance carrier, sufficient information to allow an investigation of these claims, and to adjust and settle these claims if they so desire. This letter shall not preclude other bases of liability that may be asserted if this matter proceeds to litigation. Pursuant to O.C.G.A § 36-11-1, we request that you investigate this claim within 30 days of your receipt of this notice. We hope that following your careful evaluation of this case, you will agree that our demand is just and fair.

We look forward to hearing from you and bringing this matter to an expedient resolution. I look forward to receiving your response to this letter.

Sincerely,

*Samuel L. Starks*

Samuel L. Starks, Esq.

**RE:   Affidavit of Service on Behalf of Tyler Canaris**

### AFFIDAVIT OF SERVICE

PERSONALLY appeared before me, the undersigned officer duly authorized to administer oaths, JUAN WOODFORK, who after first being duly sworn, on oath deposes and states that he is a citizen of the State of Georgia and 21 years of age or older.  Affiant further states that he served the Paulding County Sheriff, with an Ante Litem letter relating to Tyler Canaris by personally serving Melanie Thompson, a person with authority to accept service on **February 27, 2023** at 180 Constitution Boulevard, Dallas, Georgia 30132.

Dated this 2nd day of March, 2023.

_____
JUAN WOODFORK
Process Server

Sworn and subscribed before me on

March 2, _____, 2023.

_____
NOTARY PUBLIC
STATE OF GEORGIA

VERONICA MALOY DE LA CRUZ
NOTARY PUBLIC
MY COMMISSION EXPIRES
JULY 17, 2026
DEKALB COUNTY, GEORGIA

# TERMINATION REPORT

| EMPLOYEE NAME | (LAST) | (FIRST) | (MI) |
|---|---|---|---|
| | McMaster | Michael | Mahlon |

| DEPARTMENT | TODAY'S DATE | TERMINATION EFFECTIVE DATE | LAST DAY WORKED |
|---|---|---|---|
| Sheriff's Office | 2/27/2023 | 2/27/2023 | 2/27/2023 |

| JOB TITLE | TERRITORY | CLOCK NO. | EMPLOYEE NO. |
|---|---|---|---|
| Deputy Sheriff | | 880 | 5090 |

**TYPE OF SEPARATION (CHECK ONE)**

- [ ] RESIGNATION (ATTACH LETTER)
- [ ] MUTUAL AGREEMENT
- [ ] LAYOFF
- [X] DISMISSAL
- [ ] OTHER
- [ ] RETIREMENT

MAIL CHECK
- [ ] YES
- [ ] NO

**REASON FOR TERMINATION**

- [ ] ABSENTEEISM/TARDINESS
- [ ] INSUBORDINATION
- [ ] INCOMPETENCE
- [ ] JOB CHANGE
- [ ] HEALTH
- [ ] REDUCTION IN FORCE
- [ ] COMPANY SHUT DOWN
- [ ] FAMILY
- [X] OTHER    See atatched letter

## EMPLOYEE EVALUATION  (CHECK APPROPRIATE BOXES)

| | UNSATISFACTORY | FAIR | SATISFACTORY | GOOD | EXCELLENT |
|---|---|---|---|---|---|
| ATTENDANCE | | | | X | |
| COOPERATION | | | X | | |
| INITIATIVE | | | X | | |
| JOB KNOWLEDGE | | | X | | |
| QUALITY OF WORK | X | | | | |

**RECOMMENDATION**

REHIRE

- [ ] WITHOUT RESERVATION    [ ] YES
- [ ] WITH SOME RESERVATION    [X] NO
- [ ] WOULD NOT RECOMMEND    IF NO, REASON  Termination

**ADDITIONAL COMMENTS**

Terminated due to multiple policy and procedure violations when dealing with defendants

PLAINTIFF'S EXHIBIT 2    exhibitsticker.com

| SIGNED | Col. Chad Hunton | DATE | 2/27/2023 |
|---|---|---|---|

## FOR OFFICE USE ONLY

BENEFITS CANCELLED:

| LIFE | HOSPITAL | OTHER | PERSONNEL APPROVED | DATE |
|---|---|---|---|---|

# PAULDING COUNTY SHERIFF'S OFFICE
## CHANGE OF STATUS FORM

Name:  MCMaster, Michael Mahlon
       (Last, First Middle)

SSN: ▓▓▓▓▓▓      DOB: ▓▓▓ 1993

Race: W     ☒ Male     ☐ Female

**Type of change:**

☐ Promotion
☐ Rank Change
☒ Separation
☐ Name Change (documentation must be attached, i.e. marriage license)
☐ Education Change (documentation must be attached, i.e. diploma)
☐ Deceased

**If Separation:**

☐ Voluntary Resignation

☐ Career Retirement

☐ Resignation in lieu of dismissal
☒ Dismissal
☐ Medical Disability Retirement
☐ Suspension (Number of days suspended:          )
☐ Demotion (From rank:          to rank:

Reason for disciplinary action: McMaster was terminated for multiple policy violations involving cases from April of 2022-December of 2022

**Note: Any time there is a disciplinary action or change of status, please fill out as part of paperwork and send to the Training Division.  Required by P.O.S.T. OCGA 35-8-1.

**PCSO Case, Officer: PAULDINGCO\mmcmaster, Supervisor: PAULDINGCO\nhardy, Merged By: PAULDINGCO\econville**

| | **PAULDING COUNTY SHERIFF'S OFFICE** | |
|---|---|---|
| | **CASE REPORT** | CASE# 2022-03040013 |

**EVENT**

| REPORTED DATE/TIME 03/04/2022 06:10 | OCCURRED INCIDENT TYPE **Suspicious Activity** | LOCATION OF OCCURRENCE **evan mills DR Dallas, GA** |
|---|---|---|
| OCCURRED FROM DATE/TIME 03/04/2022 06:00 | OCCURRED THRU DATE/TIME 03/04/2022    06:05 | |

**OFFENSES**

| | STATUTE/DESCRIPTION | COUNTS | ATTEMPT/COMMIT |
|---|---|---|---|
| 01 | 16-10-24 **Obstruction of EMS** | 1 | Commit |
| 02 | 16-4-1 **Criminal Attempt** | 1 | Commit |
| | | | |
| | | | |
| | | | |
| | | | |

**SUBJECT**

| JACKET/SUBJECT TYPE **Suspect** Adult (18 & over) | NAME (LAST, FIRST, MIDDLE SUFFIX) **CANARIS, TYLER LEE** | | | | | |
|---|---|---|---|---|---|---|
| DOB 06/04/1992 | AGE or AGE RANGE 29 | ADDRESS (STREET, CITY, STATE, ZIP) **357 EVANS DALLAS, GA 30157** | | | | |
| RACE **White** | | SEX **Male** | HEIGHT or RANGE **5'10"** | WEIGHT or RANGE **155** | HAIR **Blonde** | EYE **Blue** |
| DL NUMBER/STATE **056382619 / GA** | | PRIMARY PHONE | | PHONE #2 | PHONE #3 | |

**SUBJECT**

| JACKET/SUBJECT TYPE **Suspect** Adult (18 & over) | NAME (LAST, FIRST, MIDDLE SUFFIX) **2022-03040013, Unknown** | | | | | |
|---|---|---|---|---|---|---|
| DOB | AGE or AGE RANGE 18   30 | ADDRESS (STREET, CITY, STATE, ZIP) | | | | |
| RACE **Unknown** | | SEX **Unknown** | HEIGHT or RANGE **5'10" 6'02"** | WEIGHT or RANGE **145   180** | HAIR | EYE |
| DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | PHONE #3 | |

**SUBJECT**

| JACKET/SUBJECT TYPE **Victim** Adult (18 & over) | NAME (LAST, FIRST, MIDDLE SUFFIX) **Williams, Dexter** | | | | | |
|---|---|---|---|---|---|---|
| DOB 01/24/1965 | AGE or AGE RANGE 57 | ADDRESS (STREET, CITY, STATE, ZIP) **48 Millstone GLN Dallas, GA 30157** | | | | |
| RACE **Black/African American** | | SEX **Male** | HEIGHT or RANGE | WEIGHT or RANGE | HAIR **Black** | EYE **Brown** |
| DL NUMBER/STATE | | PRIMARY PHONE **(404)839-8163** | | PHONE #2 | PHONE #3 | |

On the above date, I, Dep. McMaster, responded to a suspiciopus person attempting to break into vehicles. I located a suspect matching the discription given. I placed the suspect under arrest. I completed a report and went back into service.

| REPORTING OFFICER **McMaster #880** | DATE **03/04/2022** | REVIEWED BY **Miller, Brent Edwin** |
|---|---|---|



PLAINTIFF'S EXHIBIT 3

Workflow State: Merge
PCSO Case 2022-03040013 Page 1 OF 6



# PAULDING COUNTY SHERIFF'S OFFICE
### CASE REPORT

CASE# **2022-03040013**

## NARRATIVE (continuation)

| REPORTING OFFICER | DATE | REVIEWED BY | |
|---|---|---|---|
| **880 McMaster** | **03/04/2022** | **Miller, Brent Edwin 03/05/2022** | Workflow State: Merge |



## PAULDING COUNTY SHERIFF'S OFFICE
### CASE REPORT
CASE# 2022-03040013

## ADDITIONAL SUBJECTS

| JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|
| **Business** | **Victim** | **State of Georgia ,** | | | | | |
| DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |

| JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|
| **Adult (18 & over)** | **Complainant** | **Williams, Dexter** | | | | | |
| DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| **01/24/1965** | **57** | **48  Millstone  GLN Dallas, GA 30157** | | | | | |
| RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| **Black/African American** | | **Male** | | | **Black** | | **Brown** |
| DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |
| | | **(404)839-8163** | | | | | |

| JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |

| JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |

| JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |

| REPORTING OFFICER | DATE | REVIEWED BY | |
|---|---|---|---|
| **880 McMaster** | **03/04/2022** | **Miller, Brent Edwin 03/05/2022** | Workflow State: Merge |



# PAULDING COUNTY SHERIFF'S OFFICE
## CASE REPORT

CASE# **2022-03040013**

---

## VEHICLES as INVOLVED

**INVOLVED VEHICLE**

VEHICLE ROLE
**Victim Vehicle**

| VEH YR | TYPE/MAKE/MODEL | | STYLE |
|---|---|---|---|
| | **Dodge** | **CHALLENGER** | |

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|
| | | **Blue** | **Blue** |

ADDITIONAL DESCRIPTIVE INFORMATION
**no tag number**

---

**INVOLVED VEHICLE**

VEHICLE ROLE

| VEH YR | TYPE/MAKE/MODEL | STYLE |
|---|---|---|

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|

ADDITIONAL DESCRIPTIVE INFORMATION

---

## VEHICLES as PROPERTY

**PROPERTY VEHICLE**

PROPERTY CODE / VALUE

| VEH YR | TYPE/MAKE/MODEL | STYLE |
|---|---|---|

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|

ADDITIONAL DESCRIPTIVE INFORMATION

---

**PROPERTY VEHICLE**

PROPERTY CODE / VALUE

| VEH YR | TYPE/MAKE/MODEL | STYLE |
|---|---|---|

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|

ADDITIONAL DESCRIPTIVE INFORMATION

---

**PROPERTY VEHICLE**

PROPERTY CODE / VALUE

| VEH YR | TYPE/MAKE/MODEL | STYLE |
|---|---|---|

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|

ADDITIONAL DESCRIPTIVE INFORMATION

---

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| **880 McMaster** | **03/04/2022** | **Miller, Brent Edwin 03/05/2022** |

Case Number: 2022-03040013. ORI: GAI10000'

**PCSO Case Supp, Officer: PAULDINGCO\togden, Supervisor: PAULDINGCO\dmorris, Merged By:  PAULDINGCO\lsheirling**

**PAULDING COUNTY SHERIFF'S OFFICE**

**CASE REPORT SUPPLEMENT**      CASE# **2022-03040013**

| EVENT | SUPP DATE/TIME 03/04/2022 09:20 | | LOCATION |
|---|---|---|---|

| OFFENSES | STATUTE/DESCRIPTION | COUNTS | ATTEMPT/COMMIT |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SUBJECT | JACKET/SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|
| | DOB          AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| | RACE | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| | DL NUMBER/STATE | PRIMARY PHONE | PHONE #2 | | PHONE #3 | | |

| SUBJECT | JACKET/SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|
| | DOB          AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| | RACE | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| | DL NUMBER/STATE | PRIMARY PHONE | PHONE #2 | | PHONE #3 | | |

| SUBJECT | JACKET/SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|
| | DOB          AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| | RACE | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| | DL NUMBER/STATE | PRIMARY PHONE | PHONE #2 | | PHONE #3 | | |

Disclaimer: For Law Enforcement Use Only.  Not For Public Dissemination.

| REPORTING OFFICER Ogden #920 | DATE 03/04/2022 | REVIEWED BY Miller, Brent Edwin |
|---|---|---|

Workflow State: Merge
PCSO Case Supp 2022-03040013 Page 1 OF 2



**PAULDING COUNTY SHERIFF'S OFFICE**

CASE REPORT SUPPLEMENT          CASE# **2022-03040013**

---

**SUPPLEMENTAL NARRATIVE**

---

On this date, 03/04/2022, I was dispatched to 48 Millstone Glen in reference to a male looking into a vehicle at this location. While I was enroute Deputy McMaster had already gone on scene. When I turned on to Evans Mill Drive from Charles Hardy Parkway, I observed Deputy McMaster's vehicle with its blue lights on near the intersection of Evans Mill Drive and Camry Circle. I did not see anyone around the vehicle at first. As I was pulling up on the driver side of Deputy McMaster's vehicle I observed Deputy McMaster hip tossing a white male, who was later identified as Tyler Canaris. I observed Tyler's feet in the air and then he hit the ground with Deputy McMaster falling on top of him, in front of Deputy McMaster's vehicle. I was still pulling up along side Deputy McMaster's vehicle when I observed this. I quickly got on the radio and said we were (10-10), which means actively in a physical fight. I then got out of my vehicle and ran to where Deputy McMaster was. Deputy McMaster already had one handcuff on the right wrist of Tyler Canaris. I then placed my knees on the small of the back (right side) and held the already cuffed hand while Deputy McMaster had just gotten Tyler's left hand. I then handcuffed the left hand at the request of Deputy McMaster. I then helped Deputy McMaster stand Tyler up where he was patted down and placed in the back of Deputy McMaster's patrol vehicle. EMS was then called to the scene to check on Tyler. Fire and Metro advised there was blood in the left ear of Tyler. After Metro completed there evaluation, I then placed Tyler into the back of my patrol vehicle and transported him the the Paulding Well Star Hospital Emergency Room. No further information at this time.

---

| REPORTING OFFICER | DATE | REVIEWED BY | |
|---|---|---|---|
| 920 Ogden | 03/04/2022 | Miller, Brent Edwin 03/04/2022 | Workflow State: Merge |

PCSO Case Supp 2022-03040013 Page 2 OF 2

Warrant No. 22-773   Case No. 202203040013

## CRIMINAL WARRANT

**MAGISTRATE COURT OF PAULDING COUNTY, GEORGIA**

Warrant(s) No. 22-773

Police Case No. 202203040013

Personally came **Michael  McMaster** who makes oath before a Magistrate of this Court that Tyler  Canaris, (hereinafter called the accused) did, between 03/04/2022 5:45 AM to 03/04/2022 5:50 AM at Evans Mill Dr @ camry Circle, DALLAS **Paulding** COUNTY commit the offense of  **Obstruction Of Law Enforcement Officers - (M)  {Count #1} - Misdemeanor** violating of O.C.G.A, Section 16-10-24(a), did knowingly and willfully obstruct and hinder Dep. McMaster a Law Enforcement Officer in the lawful discharge of his official duties by refusing to follow commands and attempting to get arms away **when being handcuffed. ;**
and affiant makes this affidavit that a warrant may issue for the arrest of the accused.

Officer Signature

_mcm_

3/4/2022 2:58:46 PM
Affiant:Michael  McMaster
Badge No.880

Sworn to and subscribed before me, this 3/4/2022 2:58:59 PM

Judge Signature

_Lisa Baty_

Judge:L F Baty
MAGISTRATE COURT OF PAULDING COUNTY

To any Sheriff, Deputy Sheriff, Coroner, Constable, or Marshal of said State -- GREETINGS:

For sufficient cause made known to me in the above affidavit, incorporated by reference herein, and other sworn testimony establishing probable cause for the arrest of the accused, you are therefore commanded to arrest Tyler Canaris in the foregoing affidavit charged by the prosecutor therein with the offense against the laws of this State named in said affidavit and bring the accused before me or some other judicial officer of Georgia, to be dealt with as the law directs, HEREIN FAIL NOT.

Judge Signature

_Lisa Baty_

Judge:L F Baty

This 3/4/2022 2:58:59 PM

MAGISTRATE  COURT OF PAULDING COUNTY

As the issuing judge/affiant,
I do hereby verify that this document is an original criminal warrant with electronically generated signature.
Judge/Affiant_____



PLAINTIFF'S EXHIBIT
4

1 of 2

Warrant No. 22-773   Case No. 202203040013

This Criminal Warrant is DISMISSED for the following reason:

☐ The affiant has requested a dismissal and all costs have been paid.

☐ The prosecutor has requested dismissal -- see attached paperwork.

☐ Failure of the prosecuting witness to appear for a scheduled hearing after valid service of subpoena.

☐ After this court heard evidence in a committal hearing, it is determined that no probable cause exists.

☐ Other reason:

This _____ day of _____

MAGISTRATE

This Criminal Warrant is transferred to the Superior Court of PAULDING County for the following reasons:

☐ This Court heard evidence in a committal hearing and determined that probable cause existed.

☐ The accused waived a committal/probable cause hearing.

☐ The accused waived a committal/probable cause hearing.

This _____ day of _____

MAGISTRATE

Warrant(s) No. 22-773
Police Case No. 202203040013

**MAGISTRATE COURT OF PAULDING COUNTY**
**CRIMINAL WARRANT**
**THE STATE**

**VERSUS**

Tyler Canaris
357 Evans Mill Dr, Dallas, GA 30157

BOND: NO BOND UNTIL CRIMINAL HISTORY REVIEWED
                                    CHARGE
Obstruction Of Law Enforcement Officers - (M) (Count #1) - Misdemeanor
16-10-24(a)
Georgia, PAULDING County
I affirm, this date, the Defendant was arrested and placed in the PAULDING County Jail.

This _____ day of _____

Arresting Officer _____

Initial Appearance Hearing held on _____

Magistrate _____

Officer Name: Michael McMaster
Address: 180 Constitution Blvd., Dallas, GA, 30132 Phone: 770-443-3010 (w)

Witnesses for the State:

RECEIVED
MAY 1 7 2022
District Attorney's Office

CoDefendant:

WITNESSES:

Ofc Michael McMaster
    Paulding County Sheriff's Office
    180 Constitution Blvd.
    Dallas, GA 30132
    Main Office: (770) 443-3010

**EFILED IN OFFICE**
**CLERK OF STATE COURT**
PAULDING COUNTY, GEORGIA
**22-SC-000264-AO**
NOV 21, 2022 04:49 PM

*Sheila Butler*

Sheila M. Butler, Clerk
Paulding County, Georgia

---

22ZPA01005((mm))

ACCUSATION

       22-SC-000264-AO
CASE NO.
DOCKET NO.    2022

STATE COURT
PAULDING COUNTY, GEORGIA

THE STATE OF GEORGIA
VS.
TYLER LEE CANARIS

Ct. 1: Obstruction of an Officer

LUANA P. NOLEN
SOLICITOR GENERAL
Filed in office Clerk State Court
On _____11/21/2022_____

*Sheila Butler*

**SHEILA M. BUTLER**
**CLERK STATE COURT**

---

| The defendant herein waives copy of , list of witnesses, formal arraignment, and | The defendant herein waives copy of , list of witnesses, formal arraignment, and |
|---|---|
| Pleads _____ Guilty On Date: _____ | Pleads _____ Guilty On Date: _____ |
| LUANA P. NOLEN SOLICITOR GENERAL | LUANA P. NOLEN SOLICITOR GENERAL |
| DEFENDANT | DEFENDANT |
| ATTORNEY FOR DEFENDANT | ATTORNEY FOR DEFENDANT |



PLAINTIFF'S
EXHIBIT
**5**

IN STATE COURT
PAULDING COUNTY, GEORGIA

COUNT NO. 1

LUANA P. NOLEN, Solicitor General, in the name and behalf of the Citizens of Georgia, does hereby charge and accuse: TYLER LEE CANARIS with the offense of OBSTRUCTION OF AN OFFICER in that the said accused, in the County aforesaid, on or about the 4th day of March, 2022, did knowingly and willfully obstruct Michael McMaster a law enforcement officer with the Paulding County Sheriff's Office in the lawful discharge of his official duties by refusing to comply when ordered to remove his backpack and place his hands behind his back when ordered to do so, in violation of O.C.G.A. 16-10-24(a), contrary to the laws of said State, the good order, peace and dignity thereof.

LUANA P. NOLEN
Solicitor General

ADDITIONAL WITNESSES:

D/S Thomas Ogden
    Paulding County Sheriff's Office
    180 Constitution Blvd.
    Dallas, GA 30132
    Main Office: (770) 443-3010


Robie Anastacio
    Cell Phone: 404-819-9126

Demitria Smith
    Cell Phone: 678-654-9968

Dexter Williams
    Cell Phone: 404-839-8163

David Mumford
    Paulding County 911
    1389 Industrial Blvd., North
    Dallas, GA 30132
    Main Office: 770-445-2117



# Paulding County Sheriff's Office
# Detail



**Print Date/Time:** 05/20/2022 07:59
**Login ID:** pauldingco\lsheirling
**Case Number:** 2022-03040013

Paulding County Sheriff Office
**ORI Number:** GA1100000

## Case Details:

| | | | | |
|---|---|---|---|---|
| **Case Number:** | 2022-03040013 | | **Incident Type:** | Suspicious Activity |
| **Location:** | EVANS MILL DR / CAMRY CIR | | **Occurred From:** | 03/04/2022 05:48 |
| | Dallas,GA | | **Occurred Thru:** | 03/04/2022 06:05 |
| | | | **Reported Date:** | 03/04/2022 05:48 Friday |
| **Reporting Officer ID:** | 880-McMaster | **Status:** | Cleared By Arrest | **Status Date:** 03/04/2022 |

## Case Assignments:

| Assigned Officer | Assignment Date/Time | Assignment Type | Assigned By Officer | Due Date/Time |
|---|---|---|---|---|

| Associated Cases | Status | Assisting ORIs | Role |
|---|---|---|---|

| Modus Operandi | Solvability Factors | Weight |
|---|---|---|
| | | Total: |

| Action Taken | Reason If No Arrest |
|---|---|

## Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|---|---|---|---|---|---|
| 1 | State | 90Z | 16-10-24 | Obstruction of Officers | 1 |
| 2 | State | 23F | 16-4-1 | Criminal Attempt to Commit Entering an Automobile (F) | 1 |



PLAINTIFF'S EXHIBIT 6



# Paulding County Sheriff's Office
## Detail



| | |
|---|---|
| **Print Date/Time:** | 05/20/2022 07:59 |
| **Login ID:** | pauldingco\lsheirling |
| **Case Number:** | 2022-03040013 |

Paulding County Sheriff Office
**ORI Number:**   GA1100000

**Offense #**      1

| | | | |
|---|---|---|---|
| **Group/ORI:** State | **Crime Code:** 90Z | **Statute:** 16-10-24 | **Counts:** 1 |

| | |
|---|---|
| **Description:** | Obstruction of Officers |
| **NCIC Code:** | |
| **Offense Status:** | |
| **Clery Location:** | |
| **Arson Code:** | |
| **Gang Related:** | No |
| **Property Damage Amt.:** | |
| **Accosting Situation:** | |
| **Gambling Motivated:** | |
| **Carjacking - Bump.Rob:** | |
| **Premise Code:** | |
| **Special Circumstances:** | |

| | |
|---|---|
| **Scene Code:** | Highway/Road/Alley |
| **Status Date:** | |
| **Aiding/Abetting:** | |
| **Abandoned Structure:** | |
| # of Adults: | |
| # of Juveniles: | |
| Carjacking: | |
| Anit-reproductive rights crime: | |
| Carjacking - Witness: | |
| **Bias Based On:** | |
| **Hate Bias Indicator:** | |

| | |
|---|---|
| **Attempt/ Commit Code:** | Commit |
| **Offense Date** | 03/04/2022 |
| **Bias/Motivation:** | None |
| **Occupancy Code:** | |
| **Sub-Code:** | |
| **Organized Group:** | |
| **IBR Seq. No:** | 1 |
| **Household Status:** | |
| **Lane:** | |
| **Cargo Theft:** | |
| **Carjacking - Shooting:** | |
| **Bias Target:** | |
| **School Incident:** | |
| **Precipitating Event:** | |

**Offender Suspected of Using**

| | |
|---|---|
| **Alcohol:** | Unknown |
| **Drugs:** | Unknown |
| **Computer:** | No |

**Victim Suspected of Using**

| | |
|---|---|
| **Alcohol:** | No |
| **Drugs:** | No |
| **Computer:** | No |

**Domestic**

| | |
|---|---|
| Child Protective Services: | |
| Child Abuse: | |
| **Domestic Code:** | No |
| Domestic Circumstance: | |
| Order of Protection: | |
| Prior Inv - Offender: | |
| Prior Inv - Victim: | |

**Associated Deaths**

Adult Male:    Adult Female:    Juvenile Male:    Juvenile Female:

**Time Spent**

Years:    Months:    Days:    Hours:    Minutes:    Seconds:

Aggravated Assault/
Homicide Circumstances #1:

Aggravated Assault/
Homicide Remarks #1:

Justifiable Homicide Circumstances :
Method of Entry Type:
Method of Entry :
Point of Entry:
Direction of Travel:
How Offender Left Scene:

Aggravated Assault/
Homicide Circumstances #2:

Aggravated Assault/
Homicide Remarks #2:

Justifiable Homicide Code :
Larceny Type:
Method of Exit Type:
Method of Exit :
Point of Exit:
# of Premises Entered :

**Counterfeit**
Type:
Status:
Amount:





# Paulding County Sheriff's Office
## Detail

**Print Date/Time:** 05/20/2022 07:59
**Login ID:** pauldingco\lsheirling
**Case Number:** 2022-03040013

Paulding County Sheriff Office
**ORI Number:** GA1100000

### Offense #        2

| | | |
|---|---|---|
| **Group/ORI:** State | **Crime Code:** 23F | **Statute:** 16-4-1 | **Counts:** 1 |

**Attempt/ Commit Code:** Commit

**Description:** Criminal Attempt to Commit Entering an Automobile (F)

**NCIC Code:**
**Offense Status:**
**Clery Location:**
**Arson Code:**
**Gang Related:** No
**Property Damage Amt.:**
**Accosting Situation:**
**Gambling Motivated:**
**Carjacking - Bump.Rob.:**
**Premise Code:**
**Special Circumstances:**

**Scene Code:** Residence/Home
**Status Date:**
**Aiding/Abetting:**
**Abandoned Structure:**
**# of Adults:**
**# of Juveniles:**
**Carjacking:**
**Anit-reproductive rights crime:**
**Carjacking - Witness:**
**Bias Based On:**
**Hate Bias Indicator:**

**Offense Date:** 03/04/2022
**Bias/Motivation:** None
**Occupancy Code:**
**Sub-Code:**
**Organized Group:**
**IBR Seq. No:** 2
**Household Status:**
**Lane:**
**Cargo Theft:** No
**Carjacking - Shooting:**
**Bias Target:**
**School Incident:**
**Precipitating Event:**

### Offender Suspected of Using
**Alcohol:** Unknown
**Drugs:** Unknown
**Computer:** No

### Victim Suspected of Using
**Alcohol:** No
**Drugs:** No
**Computer:** No

### Domestic
**Child Protective Services:**
**Child Abuse:**
**Domestic Code:** No
**Domestic Circumstance:**
**Order of Protection:**
**Prior Inv - Offender:**
**Prior Inv - Victim:**

### Associated Deaths
**Adult Male:**    **Adult Female:**    **Juvenile Male:**    **Juvenile Female:**

### Time Spent
**Years:**    **Months:**    **Days:**    **Hours:**    **Minutes:**    **Seconds:**

**Aggravated Assault/ Homicide Circumstances #1:**
**Aggravated Assault/ Homicide Remarks #1:**
**Justifiable Homicide Circumstances :**
**Method of Entry Type:**
**Method of Entry :**
**Point of Entry:**
**Direction of Travel:**
**How Offender Left Scene:**

**Aggravated Assault/ Homicide Circumstances #2:**
**Aggravated Assault/ Homicide Remarks #2:**
**Justifiable Homicide Code :**
**Larceny Type:**
**Method of Exit Type:**
**Method of Exit :**
**Point of Exit:**
**# of Premises Entered :**

**Counterfeit**
**Type:**
**Status:**
**Amount:**

### Subjects

| Type | No. | Name | Address | Phone | Race | Sex | DOB/Age |
|---|---|---|---|---|---|---|---|
| Complainant | 1 | Williams, Dexter | 48 MILLSTONE GLN | (404)839-8163 | Black/African American | Male | 01/24/1965 |
| | | | Dallas,GA 30157 | | | | 57 |
| Suspect | 1 | Canaris, Tyler Lee | 357 EVANS MILL DR | (706)421-0107 | White | Male | 06/04/1992 |
| | | | Dallas,GA 30157 | | | | 29 |
| Suspect | 2 | 2022-03040013, Unknown | | | Unknown | Unknown | |
| Victim | 1 | Williams, Dexter | 48 MILLSTONE GLN | (404)839-8163 | Black/African American | Male | 01/24/1965 |
| | | | Dallas,GA 30157 | | | | 57 |
| Victim | 2 | State of Georgia | 180 CONSTITUTION BLVD | (770)443-3010 | | | |
| | | | Dallas,GA 30132 | | | | |



# Paulding County Sheriff's Office
## Detail



| | | |
|---|---|---|
| **Print Date/Time:** | 05/20/2022 07:59 | |
| **Login ID:** | pauldingco\lsheirling | |
| **Case Number:** | 2022-03040013 | |

Paulding County Sheriff Office
**ORI Number:**   GA1100000

<u>Subject #</u>     <u>**1-Complainant**</u>

| **Primary:** | No | | | | | | |
|---|---|---|---|---|---|---|---|
| **Name:** | Williams, Dexter | **Race:** | Black/African American | **Sex:** | Male | **DOB:** | 01/24/1965 |
| | | **Height:** | | **Weight:** | | **Build:** | |
| **Address:** | 48 MILLSTONE GLN | **Eyes:** | Brown | **Hair:** | Black | **Age:** | 57 |
| | Dallas GA 30157 | **SSN:** | | **DVL #:** | | **State:** | |
| **Primary Phone:** | (404)839-8163 | | | | | | |
| **Resident Type:** | | **Resident Status:** | Resident | | | **Statement Type:** | |
| **Disposition:** | | **Date:** | | | | **Custody Status:** | |

<u>Related Offenses</u>

<u>Related Weapons</u>

<u>Victim/Offender Relationship</u>

<u>Victim Information</u>

<u>Domestic</u>

<u>Injury Information</u>
Transported By:                    Extent of Injury:                    Hospital:
Domestic Violence:               Medical Treatment:               Federal Agencies Involved:
Condition:                                                                           Death In Custody:

<u>Missing Person Information</u>



# Paulding County Sheriff's Office
## Detail



| | | |
|---|---|---|
| **Print Date/Time:** | 05/20/2022 07:59 | Paulding County Sheriff Office |
| **Login ID:** | pauldingco\lsheirling | **ORI Number:** GA1100000 |
| **Case Number:** | 2022-03040013 | |

| **Subject #** | **1-Suspect** |
|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| **Primary:** | No | **Suspect Type:** | Arrestee | | | |
| **Name:** | Canaris, Tyler Lee | **Race:** White | **Sex:** Male | **DOB:** 06/04/1992 |
| **Address:** | 357 EVANS MILL DR | **Height:** 5ft 9 in | **Weight:** 177.0 lbs. | **Build:** Meduim |
| | Dallas GA 30157 | **Eyes:** Blue | **Hair:** Brown | **Age:** 29 |
| **Primary Phone:** | (706)421-0107 | **SSN:** 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 | **DVL #:** 056382619 | **State:** GA |
| **Resident Type:** | | **Resident Status:** Resident | | **Statement Type:** |
| **Disposition:** | | **Date:** | | **Custody Status:** |

### Related Offenses

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 90Z | 16-10-24 | Obstruction of Officers |

### Related Weapons

### Victim/Offender Relationship

| No. | Type | Name | Relationship |
|---|---|---|---|
| 1 | Suspect | Canaris,Tyler Lee | Relationship Unknown |

### Victim Information

**Domestic**
Arrested For:
Restraining Order
Present:

Cohabitation Status:
Restraining Order
Violated:

Restraining
Order Issued:

**Injury Information**
Transported By:
Domestic Violence:
Condition:

Extent of Injury:
Medical Treatment:

Hospital:
Federal Agencies Involved:
Death In Custody:

### Missing Person Information



# Paulding County Sheriff's Office
## Detail



**Print Date/Time:** 05/20/2022 07:59
**Login ID:** pauldingco\lsheirling
**Case Number:** 2022-03040013

Paulding County Sheriff Office
**ORI Number:** GA1100000

| Subject # | 2-Suspect | | | |
|---|---|---|---|---|
| **Primary:** | No | **Suspect Type:** | Suspect | |
| **Name:** | 2022-03040013, Unknown | **Race:** Unknown | **Sex:** Unknown | |
| **Address:** | | **Height:** 5ft 10 in | **Weight:** 145.0 lbs. | **Build:** |
| | | **Eyes:** | **Hair:** | **Age:** |
| **Primary Phone:** | | **SSN:** | **DVL #:** | **State:** |
| **Resident Type:** | | **Resident Status:** Unknown | **Statement Type:** | |
| **Disposition:** | | **Date:** | **Custody Status:** | |

### Related Offenses

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 23F | 16-4-1 | Criminal Attempt to Commit Entering an Automobile (F) |

### Related Weapons

### Victim/Offender Relationship

| No. | Type | Name | Relationship |
|---|---|---|---|
| 2 | Suspect | 2022-03040013,Unknown | Relationship Unknown |

### Victim Information

**Domestic**
Arrested For:
Restraining Order Present:

Cohabitation Status:
Restraining Order Violated:

Restraining Order Issued:

**Injury Information**
Transported By:
Domestic Violence:
Condition:

Extent of Injury:
Medical Treatment:

Hospital:
Federal Agencies Involved:
Death In Custody:

**Missing Person Information**





# Paulding County Sheriff's Office
## Detail

Paulding County Sheriff Office
**ORI Number:** GA1100000

**Print Date/Time:** 05/20/2022 07:59
**Login ID:** pauldingco\lsheirling
**Case Number:** 2022-03040013

### Subject #    1-Victim

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Primary:** | No | **Victim Type:** | Individual | | | | |
| **Name:** | Williams, Dexter | **Race:** | Black/African American | **Sex:** | Male | **DOB:** | 01/24/1965 |
| **Address:** | 48 MILLSTONE GLN | **Height:** | | **Weight:** | | **Build:** | |
| | Dallas GA 30157 | **Eyes:** | Brown | **Hair:** | Black | **Age:** | 57 |
| **Primary Phone:** | (404)839-8163 | **SSN:** | | **DVL #:** | | **State:** | |
| **Resident Type:** | | **Resident Status:** | Resident | | | **Statement Type:** | |
| **Disposition:** | | **Date:** | | | | **Custody Status:** | |

### Related Offenses

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 23F | 16-4-1 | Criminal Attempt to Commit Entering an Automobile (F) |

### Related Weapons

### Victim/Offender Relationship

### Victim Information

| | | |
|---|---|---|
| School Code: | Campus: | Transportation: |
| Action Taken: | Complainant: | Prior Complaints: |
| Protective Order: | Protective Order Filed: | Protective Order Violation: |
| Vic. By Association: | Vic. Assoc. Type: | Vic. Assoc. Relation: |
| Response Time: | Total Time: | Prior Calls: |

### Domestic

| | | |
|---|---|---|
| Offense: | Criminal Neglect: | Victim Pregnant: |
| Victim Disability: | Children Present or Involved: | Injury Type: |
| Weapon Type: | Weapon Feature: | Weapon Seized: |

### Injury Information

| | | |
|---|---|---|
| Transported By: | Extent of Injury: | Hospital: |
| Domestic Violence: | Medical Treatment: | Federal Agencies Involved: |
| Condition: | | Death In Custody: |

### Missing Person Information



# Paulding County Sheriff's Office
## Detail



**Print Date/Time:** 05/20/2022 07:59
**Login ID:** pauldingco\lsheirling
**Case Number:** 2022-03040013

Paulding County Sheriff Office
**ORI Number:** GA1100000

<u>**Subject #**</u>    <u>**2-Victim**</u>

| | | | |
|---|---|---|---|
| **Primary:** | No | **Victim Type:** | Government |
| **Name:** | State of Georgia | **Race:** | **Sex:** |
| **Address:** | 180 CONSTITUTION BLVD | **Height:** | **Weight:** **Build:** |
| | Dallas GA 30132 | **Eyes:** | **Hair:** **Age:** |
| **Primary Phone:** | (770)443-3010 | **SSN:** | **DVL #:** **State:** |
| **Resident Type:** | | **Resident Status:** | **Statement Type:** |
| **Disposition:** | | **Date:** | **Custody Status:** |

<u>**Related Offenses**</u>

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 90Z | 16-10-24 | Obstruction of Officers |

<u>Related Weapons</u>

<u>Victim/Offender Relationship</u>

<u>Victim Information</u>

| | | |
|---|---|---|
| School Code: | Campus: | Transportation: |
| Action Taken: | Complainant: | Prior Complaints: |
| Protective Order: | Protective Order Filed: | Protective Order Violation: |
| Vic. By Association: | Vic. Assoc. Type: | Vic. Assoc. Relation: |
| Response Time: | Total Time: | Prior Calls: |

<u>Domestic</u>

| | | |
|---|---|---|
| Offense: | Criminal Neglect: | Victim Pregnant: |
| Victim Disability: | Children Present or Involved: | Injury Type: |
| Weapon Type: | Weapon Feature: | Weapon Seized: |

<u>Injury Information</u>

| | | |
|---|---|---|
| Transported By: | Extent of Injury: | Hospital: |
| Domestic Violence: | Medical Treatment: | Federal Agencies Involved: |
| Condition: | | Death In Custody: |

<u>Missing Person Information</u>

---

## Arrests

| Arrest No. | Name | Address | Date/Time | Type | Age |
|---|---|---|---|---|---|
| 979A | Canaris, Tyler Lee | EVANS MILL DR / CAMRY CIR Dallas,GA | 03/04/2022 06:10 | Taken into Custody | 29 |



# Paulding County Sheriff's Office
## Detail



**Print Date/Time:** 05/20/2022 07:59
**Login ID:** pauldingco\lsheirling
**Case Number:** 2022-03040013

Paulding County Sheriff Office
**ORI Number:** GA1100000

| | | | | | | |
|---|---|---|---|---|---|---|
| **Arrest #** | 979 A | | | | | |
| **Name:** | Canaris, Tyler Lee | **Date/Time:** | 03/04/2022 06:10 | **Type:** Taken into Custody | **Status:** | |
| **Address:** | 357 EVANS MILL DR | **Race:** | White | **Sex:** Male | **DOB:** | 06/04/1992 |
| | Dallas, GA 30157 | **Height:** | 5ft 9 in | **Weight:** 177.0 lbs. | **Build:** | Medium |
| | | **Eyes:** | Blue | **Hair:** Brown | **Marital:** | Separated |
| **Phone:** | (706)421-0107 | **SSN:** | 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 | **DVL#:** 056382619 | **State:** | GA |

**Location:** EVANS MILL DR / CAMRY CIR
Dallas,GA

| | | | |
|---|---|---|---|
| **ID Procedure:** | **Miranda ID:** | | **Miranda Date/Time:** |
| **Age at Arrest:** 29 | **Arrest Type:** County | | **Resident Status:** Resident |
| **Basis For Caution:** | **Arrest Result Of:** | | **Clears Case:** |
| **Alcohol Influence:** Unknown | **Drug Influence:** Unknown | | **Resisted Arrest:** |
| **Statement Type:** | **Statement ID:** | | |

| Arresting Officers | Bureau | School Resource Officer | Weapon Codes | Feature |
|---|---|---|---|---|
| 880-McMaster | | No | Unarmed | |

**Condition:**                            **Medical Treatment:**
**Transported By:**                        **Extent of Injury:**                    **Hospital:**

**Associated Numbers**

**Warrant ORI:**                           **Warrant Number:**
**Booking ORI:**                           **Booking Number:**
**Court ORI:**                             **Court Case Number:**

**Arrest Charges**

| No. | Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|---|
| 1 | State | 90Z | 16-10-24 | Obstruction of Officers |

| | | | |
|---|---|---|---|
| **Counts:** 1 | **Charge Date/Time:** 03/04/2022 06:10 | | **Attempt/Commit:** Commit |
| **Domestic:** | **Plea:** | **Larceny:** | |
| **Disposition:** | **Disposition Date:** | | **NCIC Code:** |
| **Court Date/Time:** | **Bond Date/Time:** | | **Other ORI:** No |
| **Court Disposition:** | | **Court Disposition Date:** | |

## Property

| Date | Code | Type | Make | Model | Description | Tag No. | Item No. |
|---|---|---|---|---|---|---|---|
| 03/14/2022 | Evidence (Non IBR) | Recordings Audio/Visual | | | one dvd containing several videos of entering auto suspects nothing taken | 2022-03040013 | 1 |
| 03/07/2022 | Stolen | Other | | | | | |





# Paulding County Sheriff's Office
## Detail

**Print Date/Time:** 05/20/2022 07:59
**Login ID:** pauldingco\lsheirling
**Case Number:** 2022-03040013

Paulding County Sheriff Office
**ORI Number:** GA1100000

### Seq #   2

**Tag Number:** 2022-03040013    **Item Number:**    1
**Property Codes:**    **Property Type:**   Recordings Audio/Visual    **Property Class:**    **Date Received:**   03/14/2022

Evidence (Non IBR)    **UCR Value:**    **Initial Value:**    **Stolen Location:**

**Quantity:**    **Unit of Measure:**    **Measurement Source:**

**Description:** one dvd containing several videos of entering auto suspects    **Officer Remarks:**

**Make:**    **Model:**    **Style:**    **Style Desc:**
**Year:**    **OAN:**    **Serial #:**    **Color:**
**Condition:**    **Reg. Type:**    **Reg. ORI:**    **Reg. Number:**
**Reg. State:**    **Reg. Year:**    **Reg. Date:**    **Reg. Expiration:**

#### Recovery Information

**Location:**    **Date:**    **Code:**    **Value:**
**RFOJ?:**    **ORI:**    **Recovered Address:**   from email and on scene recording from county cellphone

#### Associated Subjects

| Type | Name | Address | Phone | Notified How | Date |
|------|------|---------|-------|--------------|------|
| Owner | | | | | |

**Insurance Company:**    **Policy Number:**    **Lein Holder:**

#### Chain of Custody

| Date | Transaction | From | From Role | To | To Role |
|------|-------------|------|-----------|-----|---------|
| 03/14/2022 14:56 | **Type:** Intake **Code:** Initial Intake **Remarks:** | 915-Colton Dyer | | 878-Jason Cromer | |

### Seq #   1

**Tag Number:**    **Item Number:**
**Property Codes:**    **Property Type:**   Other    **Property Class:**    **Date Received:**   03/07/2022
Stolen    **UCR Value:**    **Initial Value:**   $1.00    **Stolen Location:**

**Quantity:**    **Unit of Measure:**    **Measurement Source:**

**Description:** nothing taken    **Officer Remarks:**

**Make:**    **Model:**    **Style:**    **Style Desc:**
**Year:**    **OAN:**    **Serial #:**    **Color:**
**Condition:**    **Reg. Type:**    **Reg. ORI:**    **Reg. Number:**
**Reg. State:**    **Reg. Year:**    **Reg. Date:**    **Reg. Expiration:**

#### Recovery Information

**Location:**    **Date:**    **Code:**    **Value:**
**RFOJ?:**    **ORI:**    **Recovered Address:**

#### Associated Subjects

| Type | Name | Address | Phone | Notified How | Date |
|------|------|---------|-------|--------------|------|
| Owner | Williams, Dexter | 48 MILLSTONE GLN Dallas, GA 30157 | (404)839-8163 | | |

**Insurance Company:**    **Policy Number:**    **Lein Holder:**

#### Chain of Custody

| Date | Transaction | From | From Role | To | To Role |
|------|-------------|------|-----------|-----|---------|



# Paulding County Sheriff's Office
## Detail



**Print Date/Time:** 05/20/2022 07:59
**Login ID:** pauldingco\lsheirling
**Case Number:** 2022-03040013

Paulding County Sheriff Office
**ORI Number:** GA1100000

## Vehicles

| No. | Role | Vehicle Type | Year | Make | Model | Color | License Plate | State |
|---|---|---|---|---|---|---|---|---|
| 1 | Victim Vehicle | Passenger Car | | Dodge | CHALLENGER | Blue | | |

**Vehicle #** 1

| | | | | | |
|---|---|---|---|---|---|
| **Type:** | Passenger Car | **Year:** | | **Make:** | Dodge |
| **Color:** | Blue | **License Plate:** | | **State:** | |
| **Date/Time:** | 03/04/2022 09:34 | **Location:** | | | |

Make: CHALLENGER → Model: CHALLENGER

## OfficerID: PAULDINGCO\togden, Investigative Narrative

On this date, 03/04/2022, I was dispatched to 48 Millstone Glen in reference to a male looking into a vehicle at this location. While I was enroute Deputy McMaster had already gone on scene. When I turned on to Evans Mill Drive from Charles Hardy Parkway, I observed Deputy McMaster's vehicle with its blue lights on near the intersection of Evans Mill Drive and Camry Circle. I did not see anyone around the vehicle at first. As I was pulling up on the driver side of Deputy McMaster's vehicle I observed Deputy McMaster hip tossing a white male, who was later identified as Tyler Canaris. I observed Tyler's feet in the air and then he hit the ground with Deputy McMaster falling on top of him, in front of Deputy McMaster's vehicle. I was still pulling up along side Deputy McMaster's vehicle when I observed this. I quickly got on the radio and said we were (10-10), which means actively in a physical fight. I then got out of my vehicle and ran to where Deputy McMaster was. Deputy McMaster already had one handcuff on the right wrist of Tyler Canaris. I then placed my knees on the small of the back (right side) and held the already cuffed hand while Deputy McMaster had just gotten Tyler's left hand. I then handcuffed the left hand at the request of Deputy McMaster. I then helped Deputy McMaster stand Tyler up where he was patted down and placed in the back of Deputy McMaster's patrol vehicle. EMS was then called to the scene to check on Tyler. Fire and Metro advised there was blood in the left ear of Tyler. After Metro completed there evaluation, I then placed Tyler into the back of my patrol vehicle and transported him the the Paulding Well Star Hospital Emergency Room. No further information at this time.

## OfficerID: PAULDINGCO\mmcmaster, Investigative Narrative

On the above date, I, Dep. McMaster, responded to a subject complaint. The call was in reference to a male with dark clothing and a backpack attempting to break into cars in the area. This is the second call that Deputies have received in the area in the matter of thirty minutes. The descriptions on both calls were similar in nature. The actions of the suspect in both calls were the same. The suspect was attempting to enter into vehicles in the area. Due to my knowledge and experience with this type of crime, I know that many weapons are targeted. I have taken multiple reports about guns being stolen from vehicles. It was unknown if the suspect has made it into a vehicle at this time due to the earlier hour of the morning.

Upon arriving into the area, I noticed that there was very little foot traffic. Due to the lack of streetlights in the area. I drove down Evans Mill Dr with my high beams on due to the lack of streetlights in the area. I located a white male walking towards Highway 120 with dark in color clothes on and what appeared to be a backpack strapped to his back. I turned on my roof mounted blue lights to indicate multiple things. I turned the lights on to identify myself as a Law Enforcement Officer. I was going to be parking in the middle of a county maintained roadway where there were other vehicles driving and I wanted the suspect to stop. As I get out of my patrol vehicle, I notice that the suspect, later identified as Tyler, had his hands in his dark in color jacket pocket. I instructed Tyler to remove his hands from his jacket. Tyler stated, "What is going on?" I again commanded Tyler to show me his hands and he finally complied. I instructed Tyler to take his backpack off, so I could detain him. Tyler attempted to pull his hand away from mine, but was unable. Tyler continued to ask what was going on and refusing to comply with my commands. I command Tyler multiple other times to take his backpack off and to place his hand behind his back. I explained that he matched that description of the suspect in the calls above. Tyler still refused to listen and comply with my orders. I informed Tyler multiple times that I would place him on the ground if he did not comply with my orders. Due to the lack of sun light, me being alone at the time and my knowledge of targeted items in entering autos, I gained control of Tyler and pushed him up against my patrol vehicle. Tyler was making movements with his hands I was unable to see due to the lack of sun light; my blue/white lights were extremely bright as well. I finally removed Tyler's backpack from him and attempted to place him in handcuffs. Tyler again attempted to loosen my grip and tried to turn around to face me. I still have not patted Tyler down for weapons at this point. Tyler's left hand went towards his waist band, out of my view. I then gained control of Tyler and escorted him to the ground to better control him. I wrapped my arms around Tyler's waist locking one on his arms in and shifted his weight to get him off balance. The surface of the road was black top and we were on a downward hill. Once Tyler and I were on the ground, Dep. Ogden arrived on scene. Dep. Ogden and I placed Tyler into handcuffs to affect the arrest. During the incident, I sustained injuries to my left arm and hand. Tyler was raised to his feet and then placed into the back seat of my patrol vehicle. Dep. Ogden called for Metro EMS to arrive to evaluate Tyler's injuries. Metro EMS recommended that Tyler go to the hospital to be evaluated. Dep. Ogden transported Tyler to the Paulding Wellstar.

I went to the incident location and spoke with Dexter. Dexter showed me a security video of the suspect. The suspect had dark clothing and a dark backpack on. The only difference was that Tyler had on square toe boots and the suspect had orange shoes on. It is unknown if the suspect is Tyler due to the close proximity of the calls and Tyler's residence. It is plausible that Tyler was able to change his shoes prior to our contact. In cases of entering auto, it is uncommon for someone to commit the act alone. Dexter stated that nothing was taken from his vehicle due to it being locked. I informed Dexter that a report will be completed.

After speaking with Dexter, I went to Paulding Wellstar to sit with Tyler. Tyler suffered a cranial fracture and a clavicle fracture. Tyler had blood coming from his left ear due to when he hit the ground he still had an ear bud inserted into his ear. Tyler was transferred to Kennestone Hospital in Cobb County to be observed. I completed a warrant for Obstruction of Law Enforcement. I completed a criminal report and a use of force report. I then went back into service. It is to be known that a first report of injury was completed for me due to injuries sustained during the incident. My injuries include; an abrasion to my left elbow and swelling. Also, an abrasion to my left hand and swelling to my pointer finger knuckle.

## OfficerID: PAULDINGCO\mmcmaster, Summary Narrative

On the above date, I, Dep. McMaster, responded to a suspiciopus person attempting to break into vehicles. I located a suspect matching the discription given. I placed the suspect under arrest. I completed a report and went back into service.

**PCSO Case, Officer: PAULDINGCO\mmcmaster, Supervisor: PAULDINGCO\nhardy, Merged By:  PAULDINGCO\econville**

| | PAULDING COUNTY SHERIFF'S OFFICE | | |
|---|---|---|---|
| | **CASE REPORT** | CASE# | **2022-03040013** |

**EVENT**

| REPORTED DATE/TIME | OCCURRED INCIDENT TYPE | | LOCATION OF OCCURRENCE |
|---|---|---|---|
| 03/04/2022 06:10 | **Suspicious Activity** | | **evan mills  DR** |
| OCCURRED FROM DATE/TIME | OCCURRED THRU DATE/TIME | | **Dallas, GA** |
| 03/04/2022 06:00 | 03/04/2022       06:05 | | |

**OFFENSES**

| | STATUTE/DESCRIPTION | COUNTS | ATTEMPT/COMMIT |
|---|---|---|---|
| 01 | **16-10-24** **Obstruction of EMS** | 1 | Commit |
| 02 | **16-4-1** **Criminal Attempt** | 1 | Commit |
| | | | |
| | | | |
| | | | |
| | | | |

**SUBJECT**

| JACKET/SUBJECT TYPE   **Suspect** | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|
| **Adult (18 & over)** | **CANARIS, TYLER LEE** | | | | | |
| DOB                     AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| 06/04/1992        29 | **357 EVANS DALLAS, GA 30157** | | | | | |
| RACE | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| White | Male | 5'10" | 155 | Blonde | | Blue |
| DL NUMBER/STATE | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |
| 056382619 / GA | | | | | | |

**SUBJECT**

| JACKET/SUBJECT TYPE   **Suspect** | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|
| **Adult (18 & over)** | **2022-03040013, Unknown** | | | | | |
| DOB                     AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
|                      18    30 | | | | | | |
| RACE | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| Unknown | Unknown | 5'10"  6'02" | 145   180 | | | |
| DL NUMBER/STATE | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |

**SUBJECT**

| JACKET/SUBJECT TYPE   **Victim** | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|
| **Adult (18 & over)** | **Williams, Dexter** | | | | | |
| DOB                     AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| 01/24/1965        57 | **48  Millstone  GLN Dallas, GA 30157** | | | | | |
| RACE | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| Black/African American | Male | | | Black | | Brown |
| DL NUMBER/STATE | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |
| | (404)839-8163 | | | | | |

On the above date, I, Dep. McMaster, responded to a suspicipous person attempting to break into vehicles. I located a suspect matching the discription given. I placed the suspect under arrest. I completed a report and went back into service.

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| McMaster #880 | 03/04/2022 | Miller, Brent Edwin |



# PAULDING COUNTY SHERIFF'S OFFICE
### CASE REPORT
CASE# **2022-03040013**

## NARRATIVE (continuation)

| REPORTING OFFICER | DATE | REVIEWED BY | |
|---|---|---|---|
| **880 McMaster** | **03/04/2022** | **Miller, Brent Edwin 03/05/2022** | Workflow State: Merge |



# PAULDING COUNTY SHERIFF'S OFFICE
## CASE REPORT

CASE# **2022-03040013**

---

## ADDITIONAL SUBJECTS

| SUBJECT | JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Business**   Victim | | **State of Georgia ,** | | | | | |
| | DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| | | | | | | | | |
| | RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| | | | | | | | | |
| | DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |

| SUBJECT | JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Adult (18 & over)** Complainant | | **Williams, Dexter** | | | | | |
| | DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| | **01/24/1965** **57** | | **48  Millstone  GLN Dallas, GA 30157** | | | | | |
| | RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| | **Black/African American** | | **Male** | | | **Black** | | **Brown** |
| | DL NUMBER/STATE | | PRIMARY PHONE **(404)839-8163** | | PHONE #2 | | PHONE #3 | |

| SUBJECT | JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| | | | | | | | | |
| | RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| | | | | | | | | |
| | DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |

| SUBJECT | JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| | | | | | | | | |
| | RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| | | | | | | | | |
| | DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |

| SUBJECT | JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | |
| | | | | | | | | |
| | RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | | EYE |
| | | | | | | | | |
| | DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | |

| REPORTING OFFICER | DATE | REVIEWED BY | |
|---|---|---|---|
| **880 McMaster** | **03/04/2022** | **Miller, Brent Edwin 03/05/2022** | |
| | | | Workflow State: Merge |



# PAULDING COUNTY SHERIFF'S OFFICE
## CASE REPORT

CASE# **2022-03040013**

---

## VEHICLES as INVOLVED

**INVOLVED VEHICLE**

| VEHICLE ROLE | | | |
|---|---|---|---|
| **Victim Vehicle** | | | |

| VEH YR | TYPE/MAKE/MODEL | | STYLE |
|---|---|---|---|
| | **Dodge** | **CHALLENGER** | |

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|
| | | **Blue** | **Blue** |

| ADDITIONAL DESCRIPTIVE INFORMATION |
|---|
| **no tag number** |

**INVOLVED VEHICLE**

| VEHICLE ROLE | | | |
|---|---|---|---|
| | | | |

| VEH YR | TYPE/MAKE/MODEL | | STYLE |
|---|---|---|---|
| | | | |

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|
| | | | |

| ADDITIONAL DESCRIPTIVE INFORMATION |
|---|
| |

---

## VEHICLES as PROPERTY

**PROPERTY VEHICLE**

| PROPERTY CODE | VALUE |
|---|---|
| | |

| VEH YR | TYPE/MAKE/MODEL | STYLE |
|---|---|---|
| | | |

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|
| | | | |

| ADDITIONAL DESCRIPTIVE INFORMATION |
|---|
| |

**PROPERTY VEHICLE**

| PROPERTY CODE | VALUE |
|---|---|
| | |

| VEH YR | TYPE/MAKE/MODEL | STYLE |
|---|---|---|
| | | |

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|
| | | | |

| ADDITIONAL DESCRIPTIVE INFORMATION |
|---|
| |

**PROPERTY VEHICLE**

| PROPERTY CODE | VALUE |
|---|---|
| | |

| VEH YR | TYPE/MAKE/MODEL | STYLE |
|---|---|---|
| | | |

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|
| | | | |

| ADDITIONAL DESCRIPTIVE INFORMATION |
|---|
| |

---

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| **880 McMaster** | **03/04/2022** | **Miller, Brent Edwin 03/05/2022** |



**PAULDING COUNTY SHERIFF'S OFFICE**

**CASE REPORT**

CASE# **2022-03040013**

---

**NARRATIVE**

---

On the above date, I, Dep. McMaster, responded to a subject complaint. The call was in reference to a male with dark clothing and a backpack attempting to break into cars in the area. This is the second call that Deputies have received in the area in the matter of thirty minutes. The descriptions on both calls were similar in nature. The actions of the suspect in both calls were the same. The suspect was attempting to enter into vehicles in the area. Due to my knowledge and experience with this type of crime, I know that many weapons are targeted. I have taken multiple reports about guns being stolen from vehicles. It was unknown if the suspect has made it into a vehicle at this time due to the earlier hour of the morning.

Upon arriving into the area, I noticed that there was very little foot traffic. I drove down Evans Mill Dr with my high beams on due to the lack of streetlights in the area. I located a white male walking towards Highway 120 with dark in color clothes on and what appeared to be a backpack strapped to his back. I turned on my roof mounted blue lights to indicate multiple things. I turned the lights on to identify myself as a Law Enforcement Officer. I was going to be parking in the middle of a county maintained roadway where there were other vehicles driving and I wanted the suspect to stop. As I get out of my patrol vehicle, I notice that the suspect, later identified as Tyler, had his hands in his dark in color jacket pocket. I instructed Tyler to remove his hands from his jacket. Tyler stated, "What is going on?" I again commanded Tyler to show me his hands and he finally complied. I instructed Tyler to take his backpack off, so I could detain him. Tyler attempted to pull his hand away from mine, but was unable. Tyler continued to ask what was going on and refusing to comply with my commands. I command Tyler multiple other times to take his backpack off and to place his hand behind his back. I explained that he matched that description of the suspect in the calls above. Tyler still refused to listen and comply with my orders. I informed Tyler multiple times that I would place him on the ground if he did not comply with my orders. Due to the lack of sun light, me being alone at the time and my knowledge of targeted items in entering autos, I gained control of Tyler and pushed him up against my patrol vehicle. Tyler was making movements with his hands I was unable to see due to the lack of sun light; my blue/white lights were extremely bright as well. I finally removed Tyler's backpack from him and attempted to place him in handcuffs. Tyler again attempted to loosen my grip and tried to turn around to face me. I still have not patted Tyler down for weapons at this point. Tyler's left hand went towards his waist band, out of my view. I then gained control of Tyler and escorted him to the ground to better control him. I wrapped my arms around Tyler's waist locking one on his arms in and shifted his weight to get him off balance. The surface of the road was black top and we were on a downward hill. Once Tyler and I were on the ground, Dep. Ogden arrived on scene. Dep. Ogden and I placed Tyler into handcuffs to affect the arrest. During the incident, I sustained injuries to my left arm and hand. Tyler was raised to his feet and then placed into the back seat of my patrol vehicle. Dep. Ogden called for Metro EMS to arrive to evaluate Tyler's injuries. Metro EMS recommended that Tyler go to the hospital to be evaluated. Dep. Ogden transported Tyler to the Paulding Wellstar.

---

| REPORTING OFFICER | DATE | REVIEWED BY | |
|---|---|---|---|
| 880 McMaster | 03/04/2022 | Miller, Brent Edwin 03/05/2022 | Workflow State: Merge |



**PAULDING COUNTY SHERIFF'S OFFICE**

**CASE REPORT**

CASE# **2022-03040013**

**NARRATIVE (continuation)**

I went to the incident location and spoke with Dexter. Dexter showed me a security video of the suspect. The suspect had dark clothing and a dark backpack on. The only difference was that Tyler had on square toe boots and the suspect had orange shoes on. It is unknown if the suspect is Tyler due to the close proximity of the calls and Tyler's residence. It is plausible that Tyler was able to change his shoes prior to our contact. In cases of entering auto, it is uncommon for someone to commit the act alone. Dexter stated that nothing was taken from his vehicle due to it being locked. I informed Dexter that a report will be completed.

After speaking with Dexter, I went to Paulding Wellstar to sit with Tyler. Tyler suffered a cranial fracture and a clavicle fracture. Tyler had blood coming from his left ear due to when he hit the ground he still had an ear bud inserted into his ear. Tyler was transferred to Kennestone Hospital in Cobb County to be observed.  I completed a warrant for Obstruction of Law Enforcement. I completed a criminal report and a use of force report. I then went back into service. It is to be known that a first report of injury was completed for me due to injuries sustained during the incident. My injuries include; an abrasion to my left elbow and swelling. Also, an abrasion to my left hand and swelling to my pointer finger knuckle.

| REPORTING OFFICER | DATE | REVIEWED BY | |
|---|---|---|---|
| 880 McMaster | 03/04/2022 | Miller, Brent Edwin 03/05/2022 | Workflow State: Merge |

**PCSO Case Supp, Officer: PAULDINGCO\togden, Supervisor: PAULDINGCO\dmorris, Merged By:  PAULDINGCO\lsheirling**

| | PAULDING COUNTY SHERIFF'S OFFICE | |
|---|---|---|
| | CASE REPORT SUPPLEMENT | CASE# 2022-03040013 |

**EVENT**

| SUPP DATE/TIME | LOCATION |
|---|---|
| 03/04/2022 09:20 | |

**OFFENSES**

| STATUTE/DESCRIPTION | COUNTS | ATTEMPT/COMMIT |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**SUBJECT**

| JACKET/SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | |
|---|---|---|---|---|
| DOB          AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | |
| RACE | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | EYE |
| DL NUMBER/STATE | PRIMARY PHONE | PHONE #2 | PHONE #3 | |

**SUBJECT**

| JACKET/SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | |
|---|---|---|---|---|
| DOB          AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | |
| RACE | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | EYE |
| DL NUMBER/STATE | PRIMARY PHONE | PHONE #2 | PHONE #3 | |

**SUBJECT**

| JACKET/SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | |
|---|---|---|---|---|
| DOB          AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | |
| RACE | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | EYE |
| DL NUMBER/STATE | PRIMARY PHONE | PHONE #2 | PHONE #3 | |

Disclaimer: For Law Enforcement Use Only.  Not For Public Dissemination.

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| Ogden #920 | 03/04/2022 | Miller, Brent Edwin |



**PAULDING COUNTY SHERIFF'S OFFICE**

CASE REPORT SUPPLEMENT          CASE# **2022-03040013**

---

**SUPPLEMENTAL NARRATIVE**

---

On this date, 03/04/2022, I was dispatched to 48 Millstone Glen in reference to a male looking into a vehicle at this location. While I was enroute Deputy McMaster had already gone on scene. When I turned on to Evans Mill Drive from Charles Hardy Parkway, I observed Deputy McMaster's vehicle with its blue lights on near the intersection of Evans Mill Drive and Camry Circle. I did not see anyone around the vehicle at first. As I was pulling up on the driver side of Deputy McMaster's vehicle I observed Deputy McMaster hip tossing a white male, who was later identified as Tyler Canaris. I observed Tyler's feet in the air and then he hit the ground with Deputy McMaster falling on top of him, in front of Deputy McMaster's vehicle. I was still pulling up along side Deputy McMaster's vehicle when I observed this. I quickly got on the radio and said we were (10-10), which means actively in a physical fight. I then got out of my vehicle and ran to where Deputy McMaster was. Deputy McMaster already had one handcuff on the right wrist of Tyler Canaris. I then placed my knees on the small of the back (right side) and held the already cuffed hand while Deputy McMaster had just gotten Tyler's left hand. I then handcuffed the left hand at the request of Deputy McMaster. I then helped Deputy McMaster stand Tyler up where he was patted down and placed in the back of Deputy McMaster's patrol vehicle. EMS was then called to the scene to check on Tyler. Fire and Metro advised there was blood in the left ear of Tyler. After Metro completed there evaluation, I then placed Tyler into the back of my patrol vehicle and transported him the the Paulding Well Star Hospital Emergency Room. No further information at this time.

---

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| 920 Ogden | 03/04/2022 | Miller, Brent Edwin 03/04/2022 Workflow State: Merge |

PCSO Case Supp 2022-03040013 Page 2 OF 2

PAGE <u>1</u> OF <u>4</u>

**PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL**

CHAPTER I:   ADMINISTRATIVE ORGANIZATION AND MANAGEMENT

SUBJECT:  AGENCY PHILOSOPHY                 NUMBER:  PCSO

---

## <u>AGENCY</u> <u>PURPOSE</u>

The primary purpose of the Sheriff's Office is to maintain social order within prescribed ethical and constitutional limits, while providing professional law enforcement services to all.  To attain this, the Department enforces the law in a fair and impartial manner, recognizing both the statutory and judicial limitations of Sheriffs' authority and the constitutional rights of all persons.

The Sheriff's Office recognizes that no law enforcement agency can operate at its maximum potential without supportive input from the citizens it serves.  The Sheriff's Office actively solicits and encourages the cooperation of all citizens to decrease the opportunities for crime and to facilitate the maximum use of resources.

    A:   <u>Protection of Life and Property</u>

       To provide services which contribute to the preservation of life, the protection of property and the safety of the community.

    B:   <u>Prevention, Detention and Investigation of Criminal Activity</u>

       To prevent crime through aggressive patrol, which limits the opportunity for a crime to occur, and through education of citizens, which reduces the likelihood of them becoming victims.

       To provide a thorough, appropriate, and efficient investigation of criminal activity.

       To provide positive measures against organized crime and related activities.



**PAULDING COUNTY SHERIFF'S OFFICE**      Page 2 of 4
**POLICY AND PROCEDURES MANUAL**

**CHAPTER I:  ADMINISTRATIVE ORGANIZATION AND MANAGEMENT**

**SUBJECT:  AGENCY PHILOSOPHY**             **NUMBER:  PCSO**

C:  <u>Apprehension of Offenders</u>

To provide for the expeditious and prudent apprehension of suspected violators of the law, irrespective of their station in life; through thorough, appropriate, and efficient law enforcement related investigations.

D:  <u>Maintenance of Public Order</u>

To maintain peace and public order. To assist during times of natural or unnatural occurrences or disasters.

E:  <u>Recovery of Property</u>

To maintain an inventory and secure all properties, evidence, lost and recovered / stolen property being held by the Sheriff's Office, thereby ensuring that it is available when needed or claimed.

F:  <u>Training of Officers</u>

To design and implement a training program to fill the training needs of Detention Officers and Deputy's to promoting a high rate of proficiency in the staff of the Sheriff's Office.

G:  <u>Compliance to Ethical Standards</u>

To ensure the integrity and adherence to professional standards of the Sheriff's Office by receiving and investigating all complaints against Agency personnel of alleged misconduct or misuse of force.

H:  <u>Traffic Control</u>

To provide for the safe and effective flow of both vehicular and pedestrian traffic and the investigation of traffic related incidents.

PAULDING COUNTY SHERIFF'S OFFICE Page <u>3</u> of <u>4</u>
POLICY AND PROCEDURES MANUAL

CHAPTER I:  ADMINISTRATIVE ORGANIZATION AND MANAGEMENT

SUBJECT:  AGENCY PHILOSOPHY                 NUMBER:  PCSO

I:     <u>Community Service</u>

To provide the resources necessary for assisting citizens under special non–criminal circumstances.

J:     <u>Sheriff's Administration</u>

To provide management, administration and support required for operation of the Sheriff's Office.

K:     <u>Security of all Courts</u>

To provide security in both criminal and civil actions and to maintain a high degree of  professionalism.

L:     <u>Maintenance of the Detention Facility</u>

To provide the highest degree of security for the citizens and safety for both the staff and the inmates of the Detention Center in a professional and cost efficient manner.

Rev 06-19

**PAULDING COUNTY SHERIFF'S OFFICE**
**POLICY AND PROCEDURE MANUAL**

**CHAPTER TITLE:  ADMINISTRATIVE ORGANIZATION AND MANAGEMENT**

**SUBJECT:  DEPARTMENTAL PHILOSOPHY**            **NUMBER:  PCSO**

**Mission Statement:**

The mission of the Paulding County Sheriff's Office is to work collectively with our community in order to keep our citizens safe and free of crime by upholding the ideals outlined in the Constitution of the United States of America in a fair and respectful way.

**Vision Statement:**

The Paulding County Sheriff's Office is committed to ensuring the safety of our citizens by working collaboratively with the community in a professional manner.  With Deputies and citizens working together, we can help create a better Paulding County.  With integrity being one of our most important beliefs, we can strive to create an environment for families to live and prosper for years to come.

**Core Values:**

- Respect- Admiration of someone or something elicited by their abilities, qualities, or achievements
- Fairness- Treating people in a way that does not favor some over others
- Integrity- Adhering to moral and ethical principles at all times
- Professionalism- taking pride in our actions, duties, development, and appearance

**PAULDING COUNTY SHERIFF'S OFFICE**
**POLICY AND PROCEDURES MANUAL**

**CHAPTER TITLE: ADMINISTRATIVE ORGANIZATION AND MANAGEMENT**

**SUBJECT: STANDARD OPERATING PROCEDURES/ON-LINE SOP**

---

---

**STATE STANDARDS – POLICIES AND PROCEDURES:**

**The Paulding County Sheriff's Office shall have written policies and procedures, based upon Federal, State and local laws, governing the Paulding County Sheriff's Office. These Policies and Procedures shall be available to all employees. These policies shall address the all of the aspects of the Paulding County Sheriff's Office.**

**PERSONS AFFECTED**

**All persons employed by the Paulding County Sheriff's Office will perform their assignments / duties in strict compliance with the current Policy and Procedures Manual.**

PLAINTIFF'S EXHIBIT 8

**PAULDING COUNTY SHERIFF'S OFFICE**
**POLICY AND PROCEDURES MANUAL**

**CHAPTER TITLE:   ADMINISTRATIVE ORGANIZATION AND MANAGEMENT**

**SUBJECT:   STANDARD OPERATING PROCEDURES/ON-LINE SOP**

## ON-LINE SOP

**POLICY**

To establish a policy to utilize the current technology to allow Paulding County Sheriff's Office employees to access the standard operating procedures via the internet.

**PROCEDURES**

All employees will have access to this system.  The user name will be the employee i.d. number.  Passwords will be set by the employee the first time they access the system.

Each employee (civilian and sworn) will be required to check their account once every thirty days in order to see if there have been any updates or changes.  Once employees read and understand the change made to the SOP they are required to sign off with their electronic signature which is their user name and password.

Each Division Commander is required to have a minimum of one printed copy of the Standard Operating Procedure Manual.  This printed copy is to be in a location which is accessible to all employees at all times.  Each Division Commander is responsible for keeping the books updated with all additions and revisions as they are available.

**ADMIN RESPONSIBLITIES**

The Paulding County Sheriff's Office Training Division will have Administrative Responsibilities for the Standard Operating Procedure.

Admin responsibilities include updating the Standard Operating Procedure with additions and revisions to the SOP.  These additions and revisions will be posted on the on-line SOP which can be accessed by all employees.  The responsibilities will also include assisting employees who may experience difficulty accessing the on-line SOP.  Assistance will include, but is not limited to changing passwords as required, directing the employees on how to use the electronic signature feature, and helping employees access the proper documents.

The system administrator will run usage and signature reports as requested by supervisors.

**PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL**

**CHAPTER TITLE:   ADMINISTRATIVE ORGANIZATION AND MANAGEMENT**

**SUBJECT:   STANDARD OPERATING PROCEDURES/ON-LINE SOP         NUMBER:   PCSO**

---

## ADHERENCE TO POLICY AND PROCEDURES

All employees shall operate, based on established written procedures contained in this manual. Exceptions:

1) When following a procedure would endanger a human life or property
2) When direct order is issued by a ranking superior officer

## REVIEW

The review of this Manual to maintain current policy and procedures and / or necessary change / adjustments, shall be done by Policy Review Committee based on the approval of the Sheriff, of:

A.  Federal and State Law         C.  Sheriff's Office Needs
B.  Case Law                      D.  Community Needs

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL                    PAGE 1 OF 1

CHAPTER TITLE:       TRAINING

SUBJECT:             IN-SERVICE TRAINING

POLICY

To provide employees with continuous and on-going instruction designed to enhance, refresh and update job-related knowledge, skills and abilities.

PROCEDURE

A minimum of twenty (20) hours of in-service training is required of all sworn personnel each year.  This In-service will be completed no later than 30 Nov. each year.  Personnel will be compensated for participation in approved in-service training scheduled during off-duty hours.

It shall be the policy of the Paulding County Sheriff's Office that employees attend in-service training during off duty hours, and they will be given compensatory time for the hours attended.  The purpose for this policy is to ensure the employee of uninterrupted class time and to keep the department from being short-handed during in-service class hours.

The uniform for all training classes will be Class C or Class B uniforms or proper business attire.

At times, because of weather conditions, you will be allowed to remove your Class C shirt.  Make sure you wear an appropriate T-shirt that will allow you to dress down due to weather or type of training.

When driving to training in a marked or unmarked Sheriff's Office vehicle, Deputies must wear a Class C or Class B uniform.

Exceptions to this rule are:

      A. Investigators may wear appropriate business attire when traveling to and attending training.
      B. Division commanders may authorize a different uniform or clothing for travel to special training or details.



PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL          Page 1 of 4

**CHAPTER TITLE:   ARREST**

**SUBJECT:   ARREST PROCEDURES**                    **NUMBER: PCSO**

## POLICY

To establish Department guidelines for arrest procedures.

## PROCEDURES

## DEFINITIONS:

A. <u>Arrest</u> – The restraint of the liberty of a person to come or go as he pleases, no matter how slight. An individual has been arrested when he is not free to go, regardless of whether formal words of arrest are used.

B. <u>Arrest Warrant</u> – A judicial command to arrest a particular individual and to bring the arrestee promptly before the magistrate issuing the warrant or some other judicial officer. There is no such thing as an oral or a telephone warrant.

C. <u>Investigative Detention</u> – An investigative detention occurs when an officer, based on his natural senses, experience, and good judgement, suspects that criminal activity may be afoot and has reasons that he can state to support his suspicion. He may then detain a subject briefly to investigate his suspicions and may frisk the subject's other garments, if he has reason to believe weapons are involved.

D. <u>Probable Cause</u> – Those facts and circumstances which would lead a reasonable and prudent person to believe that a crime had been committed, or that the suspected person has committed an offense.

E. <u>Within the Officer's Immediate Knowledge</u> – When, by seeing, hearing, or using any of the other senses, the officer has personal knowledge of the commission of a crime. This is equivalent to "in the officer's presence". This excludes reporting of a crime by any third party other than another law enforcement officer who has direct knowledge (OCGA 17-4-20).

## RULES AND REGULATIONS

STANDARD: AN ARREST MUST BE BASED ON PROBABLE CAUSE.

A.   <u>Arrest Without a Warrant</u>
In the State of Georgia, officers may make an arrest without a warrant, in the following instances:

1. When an offense is committed in the officer's presence;
2. When an offender is endeavoring to escape;
3. When an officer has probable cause to believe an act of family violence had been committed (OCGA 19-13-1). This code (OCGA 19-13-1) is not a criminal



PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL          Page 2 of 4

CHAPTER TITLE:   ARREST

SUBJECT:   ARREST PROCEDURES                    NUMBER: PCSO

offense code, it is the authority by which you may make a warrantless arrest (i.e., simple battery.

4. When for other causes there is likely to be a failure of justice for want of a judicial officer to issue a warrant;

5. To prevent the commission of a felony; (This exception should only be utilized when the criminal act is imminent)

6. Upon receiving information from a law enforcement officer who observed an offense being committed, provided such information would constitute the basis for arrest had it been committed in the officer's presence. (The citation issued must list the names of each officer, and both must be present when charges against the offender are heard).

**NOTE: ALL OF THE ABOVE EXCEPTIONS ARE BASED ON TIMELINESS; IF ENOUGH TIME HAS PASSED FOR A WARRANT TO HAVE BEEN OBTAINED, AN ARREST WITHOUT A WARRANT WILL NOT BE UPHELD.**

7. Outside of the time restriction, a seventh exception is noted, that of a fugitive arrest based on belief that a warrant exists in the jurisdiction from which the suspect fled. An officer has no official power to arrest without a warrant beyond the boundaries of his jurisdiction except for when the officer is in hot pursuit that is continuous and uninterrupted (an officer mat temporarily lose sight of the suspect). No officer shall arrest any person without a warrant when he knows that he is without reasonable cause to arrest such person.

B. <u>Arrest With a Warrant</u>
1. Jurisdiction – An arrest warrant may be issued in any county in Georgia, even for a crime committed in another county. Once issued, a warrant may be carried from one county to another, and it may be served in any county of the state regardless of where it was issued.

2. Contents – A valid arrest warrant must contain specific information as required by statute and court decisions. Such information includes.
   a. The authority under which the warrant is issued;
   b. Identification of the person who is to execute the warrant, (Generally addressed "To any Sheriff, Deputy Sheriff, Coroner, Constable, Marshall or police officer");
   c. Identification of the person to be arrested must be identified;
   d. The offense committed;
   e. The time, date and place of occurrence of the offense, including the county in which it was committed.
   f. The victim;
   g. A description of the offense, including all of the elements of the offense. In addition, when the offense charged is a theft, the warrant must contain:

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL          Page <u>3</u> of <u>4</u>

CHAPTER TITLE:  ARREST

SUBJECT:  ARREST PROCEDURES                    NUMBER: PCSO

---

    h. A description of the property alleged to have been stolen;
    i. Identification of the owner of the stolen property;
    j. The value of the stolen property;
    k. The person from whose possession it was taken.

NOTE:  WITHOUT STRICT COMPLIANCE WITH THE ABOVE, THE WARRANT WILL
      NOT BE VALID.

    No officer shall arrest any person under color of a warrant, unless he reasonably believes a valid warrant exists and that the person described in the warrant is before him.

C.  <u>Procedures When Making an Arrest</u>

    When a lawful arrest cannot be made except with a warrant, the arresting officer should have the warrant in his physical possession at the time of the arrest, or so near at hand that it can be exhibited upon demand. Otherwise, the arresting officer has no authority to take the person into custody.

NOTE:  AN OFFICER MAKING A LAWFUL ARREST HAS THE RIGHT TO USE
WHATEVER FORCE IS REASONABLY NECESSARY TO ACCOMPLISH THE ARREST, BUT
NO MORE THAN IS NECESSARY TO TAKE THE SUSPECT INTO CUSTODY
(See Chapter 8 – Use of Force)

A.  <u>Alternatives to Physical Arrest</u>

    What is reasonable in terms of appropriate police action or what constitutes probable cause varies with each situation, and the particular facts and circumstances may justify whether an investigation, a detention, a search, an arrest, or no action at all. There may be a report written and an application for a complaint made; or in some cases, when the offense is of a minor nature, a verbal warning or other action may be taken. The requirement that legal justification be present imposes a limitation on an officer's action. In every case, an officer must act reasonably within the limits of his authority, as defined by statute and judicial interpretation.

B.  <u>Immunity from Arrest</u>

1. Consular Immunity – By treaty, Consular officers of foreign nations are immune from arrest for criminal and traffic offenses, unless an arrest is ordered by a Federal Magistrate. Once identified, Consular Officers will not be unnecessarily detained.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL          Page 4 of 4

CHAPTER TITLE:  ARREST

SUBJECT:  ARREST PROCEDURES                    NUMBER: PCSO

Consular immunity does not normally extend to members of Consular Officer families or to employees of Consular Officers.

2.  Verification of Consular Immunity Status

In any situation in which a law enforcement officer needs to establish entitlement to diplomatic immunity and the person asserting it cannot produce an identification card issued by the U.S. State Department, the correct status can be obtained through a telephone call.

   a.  During regular business hours (8:15 – 5:00, M – F): The office of Protocol, U.S. department of State (202) 647 – 1984.
   b.  At other times: Command Center for Diplomatic Security (202) 647 – 1512.

NOTE:  COMMAND CENTER PERSONNEL WILL ROUTE INQUIRES APPROPRIATELY.

3.  Members of Congress

U.S. Senator and Representatives are free from arrest during their attendance at Congress and in going to and from sessions of Congress, except for "treason, felony or breach of the peace".

4.  Members of the Georgia General Assembly

The members of the Georgia General Assembly are free from arrest during their attendance at the General Assembly and in going thereto and therefrom except for "treason, felony, larceny, or breach of the peace".

5.  Others Exempt from Civil Arrest

   a.  Members of the State Militia, during the performance of their duties.
   b.  Poll officers, during their attendance at elections and in going to and returning from same.
   c.  Voters while casting their ballots.
   d.  Witnesses on their way to and from court.

NOTE:  AN ARREST INVOLVING ANY OF THE ABOVE PERSONS, SHALL BE MADE ONLY UPON THE APPROVAL OF A SUPERVISOR.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL                    PAGE 1 OF 5

CHAPTER TITLE:  PATROL FUNCTIONS

SUBJECT:  INVESTIGATION OF SUSPICIOUS PERSONS / VEHICLES    NUMBER: PCSO

POLICY

To establish a standard operating procedure for the investigation of suspicious persons and / or vehicles.

PROCEDURES

Officers are unable to predict which persons may react violently when confronted by law enforcement. Failure of the officer to be alert for this potential, can have catastrophic results. Therefore, caution must be exercised with each confrontation. To ensure officers approach suspicious persons / vehicles in a consistent manner, the following procedures are to be followed:

1.  Investigation of Suspicious Pedestrians

    A.  The officer shall notify the Communications Center of the situation including:

        1.  The number of persons, race, sex and approximate age of the persons, description of clothing, as well as the location of the individuals shall be relayed to the Communications Center before the investigation begins;
        2.  If possible, avoid making the investigation in a crowd;
        3.  At night, attempt to direct the car lights on the suspect (s);
        4.  Each person should be investigated through the GCIC / NCIC computer.

    B.  If an officer notices two or more pedestrians to be investigated, another officer is to be called to assist before approaching them;

        1.  The stopping and investigating of the pedestrians should not take place until the assisting officer arrives;
        2.  Each officer should perform a certain part of the investigation:

            a.  The first officer will guard the suspects;
            b.  The second officer should perform the actual frisk in accordance with procedures in Chapter 10 – "Arrest". If the persons are considered dangerous, use the wall search position.



C. During the interview, officers are to treat the persons in a courteous manner and inform them of the reasons they were stopped and questioned. Officers are never to question any suspect while he is inside the police vehicle and the suspect is outside. Positioning themselves in this manner, compromises the officer's ability to effectively control the situation.

D. If officers determine the person is to be released, they are to obtain the information necessary to complete the daily log in the Communication Center, and an Incident Report will be completed by the officer (s).

2. Vehicle Checks

A. When inspecting vehicles with suspicious occupants, officers (two patrol units participating) are to conduct the following procedures:

1. An officer may receive a call to check a suspicious car, or may observe a suspicious car moving or parked. However, sufficient probable cause is necessary before a car check can be made. The driver's license of individuals may be checked on moving vehicles and on stationary vehicles, when reasonable articulable suspicion exists.
2. The officer (number 1) will notify the Communication Center that he is following a car which he desires to check, giving  the license plate number, description of the vehicle, direction of travel and number of occupants;
3. The Communication Officer is to send a second unit (number 2) as back-up and make a computer inquiry on the license plate number;
4. Car number 1 will give information on the location and direction of travel as often as possible;
5. Upon arrival of the assisting officer, car number 1 will give the Communication Officer the radio numbers of occupants in the suspect's car and their location;
6. Car number 1 should select a location most favorable to him when stopping the suspicious car:
   a. If possible, officers should stop the suspicious car in a well-lighted area. In addition, officers should avoid stopping the car at an intersection or in a heavily congested area.
   b. If the car stops unexpectedly and the occupants exit the vehicle, the officer is to order them to the left side of their car, facing the officer. Until the second officer arrives, the first officer will remain standing behind the open door of his patrol vehicle.
7. Blue lights and siren are to be used by the number 1 car only; car number 2 will use blue lights and flashers only;
8. The number 1 car is to stop approximately 12 feet behind the suspect's vehicle with his unit centered on the left taillight of the suspect's car (when appropriate);

9. The headlights of car number 1 are to be on high with the spotlight focused on the interior of the suspect's car, until the search is started. Emergency flashers will also be used. Car number 2 is to stop directly behind car number 1. Headlights on car number 2 should be turned off and the emergency flashers should be turned on. The headlight and spotlight will be used at night only;

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL                    PAGE 3 OF 5

CHAPTER TITLE:  PATROL FUNCTIONS

SUBJECT:  INVESTIGATION OF SUSPICIOUS PERSONS / VEHICLES    NUMBER: PCSO

10. While he is standing behind his open door, officer number 1 is to order suspects from the car on the left side;
11. Officer number 1 is to order suspects to line up side to side facing him, and to keep their hands away from their pockets and in full view;
12. Officer number 2 is to assume a position at the right rear bumper of unit number 1 (being sure not to stand directly between the bumpers of patrol units 1 and 2). If practical, the number 2 officer should seek a position to the right of the patrol vehicles, provided the seeking of this position can be made without severely endangering the officer. Officer number 2 is to maintain this position until he is reasonably sure all occupants are out of the suspect's car. Once the suspects have been removed from the car, officer number 2 is to conduct a visual inspection of the car, the officer should attempt to keep an object between himself and the suspect's car without obstructing his view;
13. After the interior of the suspect's car has been checked, officer number 2 is to return back along the right side and rear of the number 1 patrol vehicle to the left of the suspects. Once in position, the number 2 officer is to order them to a wall search position on the suspect's car, provided a wall search is appropriate;
14. The number 1 officer is to assume a position even with his left front headlight. (An officer should never walk or stand in front of headlights).   From this location he will guard suspects while officer number 2 starts the search of the suspects. If suspects are going to be arrested, they are to be handcuffed as they are being searched;
15. After the search is completed, officer number 2 is to direct the suspects in front of the headlights of the suspect's car. When the suspects are being moved, officer number 1 is to maintain a position which allows him to watch the suspects closely;
16. The number 1 officer is then to move forward to the left side of the number 2 officer, and guard the suspects. If a vehicle search is permissible, the number 2 officer is to start it;
17. Officer should make a computer check of the occupants and the vehicle, with the Communications Center;
18. If the car and occupants are to be released, necessary information will be obtained from the subjects and entered on the daily activity sheet and an Incident Report will be completed:

    a. During the car check the suspects should be advised as to why they were stopped;

b. Individuals shall be treated with courtesy;
c. Officers and suspects should never stand between the patrol unit (s) and the suspect's vehicle.

B. <u>If the car is going to investigate a suspicious vehicle without assistance, the following procedures are to be followed:</u>

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL                    PAGE <u>4</u> OF <u>5</u>

CHAPTER TITLE:  PATROL FUNCTIONS

SUBJECT:  INVESTIGATION OF SUSPICIOUS PERSONS / VEHICLES    NUMBER: PCSO

1. Once an officer identifies a suspicious vehicle that he wishes to stop, he is to notify the Communications Center of the vehicle's license tag number, description, sex / race of the driver and the officer's location;
2. The officer is to use his <u>blue lights and siren</u> to stop the suspect's car;
3. When the car pulls over, the officer is to position his patrol unit approximately 12 feet behind and centered on the left tail light of the suspect's car (when appropriate);
4. As the officer stops his patrol unit, he is to leave on his flashers and focus the spotlight through the rear window of the suspect's car;
5. When approaching the suspect's car, the officer is to walk up on the driver's side and visually check its interior. If the car is determined not to have any other persons inside, the officer if to assume a position clear of the door, approximately one foot to the rear of the driver's door. The Officer is to order the suspect to exit the vehicle on the left side;
6. If a visual check reveals other occupant (s) in the car the officer will order every one out of the car, in accordance with procedures for more than one occupant;
7. Once the suspect has been removed from the vehicle , he is to be frisked;
8. If the suspect is going to be arrested, he is to be handcuffed at the time he is frisked. In addition, assistance is to be requested to aid in searching the car and completing the arrest;
9. If the officer has probable cause to conduct a more thorough search of the suspect's car that cannot be conducted at the scene, he shall implement steps for obtaining a search warrant;
10. Officers shall check the suspect's name and vehicle through the GCIC / NCIC computer:

    a. The suspects should be notified as to why he was stopped;
    b. The suspect should be treated with courtesy.

C. <u>Safety Measures to be Taken by Officers During Vehicle Check:</u>

1. When practical, the vehicles to be checked will not be stopped until the second patrol unit is in position behind the first patrol unit;
2. The assisting patrol unit will, when possible, avoid arriving head-on to the vehicle to be checked;

3. If the assisting patrol unit must approach the suspect's vehicle head-on, the Deputy will not start the car check until number 2 patrol vehicle is in position;
4. <u>Officers shall not make a car check without advising the Communications Center;</u>
5. All suspects in the process of being checked should be frisked before they are interviewed;

    a. Georgia statutes permit frisks (limited search for weapons) for the protection of

<div align="center">PAULDING COUNTY SHERIFF'S OFFICE<br>POLICY AND PROCEDURES MANUAL       PAGE <u>5</u> OF <u>5</u></div>

CHAPTER TITLE:  PATROL FUNCTIONS

SUBJECT:  INVESTIGATION OF SUSPICIOUS PERSONS / VEHICLES     NUMBER: PCSO

---

    the officer before an arrest is made or even if no arrest is made;
    b. A valid arrest must precede a search for valid evidence that goes beyond a frisk for dangerous weapons;

6. Use <u>siren and blue lights</u> when stopping a vehicle;
7. If at all possible, an officer should not give the suspect too much warning of his intention to stop him. The officer should not follow too closely;
8. Advance notice will allow suspect to plan an attack or alibi or dispose of evidence before officer approaches his car;
9. Officers must <u>never drive alongside</u> a suspect's car and talk to him from the patrol vehicle. If the person warrants investigating to interviewing, the officer shall conduct the check in the standard manner.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   USE OF FORCE

SUBJECT:          USE OF FORCE

# Use of Force

     The purpose of this policy is to provide members of the Paulding County Sheriff's Office with guidelines on the use of deadly and non-deadly force.  This policy and the standards contained herein are for Paulding County Sheriff's Office use only, and the standards or policy established do not apply in any criminal or civil proceedings.  Even though in certain instances our standards or policy contained herein may be more stringent than legal standards for criminal or civil liability, they are not to be construed as creating a higher legal standard of safety or care by which the deputy/detention deputies is to be bound in an evidentiary sense with respect to claims by others involving criminal or civil liability.  The violation of this policy will subject the deputy/detention deputies to department sanctions or disciplinary action only, and shall not form the basis for civil and/or criminal action.

\*Note:  The term deputy for this policy can be substituted for the term Detention Deputies.

I.  **Policy**

     The Paulding County Sheriff's Office recognizes and respects the value and special integrity of each human life.  In vesting the members of the Sheriff's Office with the lawful authority to use force to protect the public welfare, a careful balancing of all human interest is required.  Therefore, it is the policy of this department that deputies use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the deputies and others. The PCSO will adhere to all applicable federal, state and local laws.

II.  **Definitions**

    A.  **Deadly Force:**  Any use of force that is likely to cause death or serious bodily harm.

    B.  **Non-Deadly Force:**  Any use of force other than that which is considered deadly force.

    C.  **Authorized Baton:**  The Paulding County Sheriff's Office authorizes sworn personnel to carry one type of baton, specifically the ASP expandable baton.

    D.  **Weapons of Opportunity:**  Any weapon, instrument or device that may be used in defense of a deputy or third party out of necessity.

    E.  **Intervene** — To come between, whether verbally or physically, so as to prevent or alter a result or course of events.



PLAINTIFF'S EXHIBIT 12

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   USE OF FORCE

SUBJECT:         USE OF FORCE

III.   **Force Options**
   A. When the Deputy is performing a duty, there is often the potential for a confrontation requiring the use of force. The Deputy should not only maintain environmental and situational awareness, but also be mentally and physically prepared to control a resisting or violent subject; the Deputy will have to utilize some level of force to ensure control. The force utilized by the Deputy must:
      1. Be utilized to control;
      2. Be reasonable and necessary;
      3. Be relative to the suspect's resistance level;
      4. Be escalated and de-escalated; and
      5. Cease when control has been established.
   B. The Deputy has various options to choose from to overcome and control a resisting subject.
      1. Presence:  An identification of authority;
      2. Verbal commands: Verbal skills utilized to control or de-escalate the situation;
      3. Soft Physical Techniques: Contact to guide a person or escort, lightly grabbing an arm or shoulder, a hand to chest for direction control.
      4. Hard Physical Techniques: Limb control techniques, take down/ ground stabilization, striking techniques, OC Aerosol Spray, Electronic Control Weapons.
      5. Intermediate Weapons: Impact weapons (ASP Baton), Specialty Impact Weapons (12 gauge Drag stabilizer "Tear Drop" Bean Bag), 37mm Baton round, Ice Shield, Pepper ball, R-E-A-C-T Belt
      6. Deadly force: Any action that will cause death or great bodily injury.
   C. The Deputy must understand that the above force options must be correlated with the totality of the circumstances, in order to articulate and define what force level is reasonable and necessary. This also includes weapons of opportunity.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   USE OF FORCE

SUBJECT:            USE OF FORCE

IV. **Use of Deadly Force**
   A. Deputy shall use deadly force only if he or she reasonably believes that such force is necessary to prevent death or great bodily harm to himself or herself or a third person or to prevent the commission of a forcible felony.
   B. The use of a choke hold is prohibited except in situations where the use of deadly force is allowed by law.
   C. Deputies should not be placed in a position of choosing between the alternatives of criminal freedom versus the use of deadly force. The apprehension of criminal offenders and the protection of property must at all times be subservient to the protection of life. The protection of life, either the deputy's own, or that of another, shall be the sole concern.
   D. The Deputy, when using force, will only use a reasonable and necessary amount. The force used must coincide with the Graham Factors (Graham v. Connor)
      1. Severity of the crime
      2. Whether the suspect poses an immediate threat to the safety of the officers or others
      3. Is the subject actively resisting arrest
      4. Is the subject trying to Flee or evade arrest
   E. Legal requirements concerning the apprehension of fleeing suspects are clear. The Deputy shall not use deadly force to seize an unarmed, non-dangerous suspect. However, the deputy may use deadly force to apprehend a suspected felon only when the deputy reasonably believes that the suspect possesses a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; when the Deputy reasonably believes that the suspect poses an immediate threat of physical violence to the Deputy or others; or when there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm. SEE O.C.G.A. 17-4-20(b)
   F. Deputy shall review and be familiar with O.C.G.A. 16-3-20 through 16-3-24.2 (excluding O.C.G.A. 16-3-22.1 for purposes of this policy).

Rev. 08-2020

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL                    PAGE 4 OF 12

CHAPTER TITLE:    USE OF FORCE

SUBJECT:              USE OF FORCE

G. A Deputy may also discharge a weapon under the following circumstances:
   1. During range practice or competitive sporting events;
   2. To destroy an animal that represents a threat to public safety, or as a humanitarian measure where the animal is seriously injured.

V.   **Use of Non-Deadly Force**
   A. Where deadly force is not authorized, the Deputy shall use only that level of force that is reasonably necessary to de-escalate the situation and bring it under control.
   B. The Deputy is authorized to use non-deadly force techniques and department issued equipment (baton, OC spray, and Electronic Control Weapons) for resolution of incidents as follows:
      1. To protect the Deputy or another from physical harm;
      2. To restrain or subdue a resistant individual;
      3. To bring an unlawful situation safely and effectively under control; and
      4. When the Deputy's chain of command authorizes the Deputy to use non-deadly force techniques in a crowd control situation. Typical examples are the use of the baton, and the deployment of chemical agents.
   C. At no time is any use of force or restraint device to be used as punishment

VI.  **Use of Restraints in the Detention Facility**
   A. Authorized Types of Restraints
      a. Whenever possible, cell/room lock down should be used as the preferred means of containing an inmate. If restraint devices are necessary, the following types of restraint devices are authorized for use by staff.
         i. Handcuffs (metal, disposable, etc)
         ii. Leg-shackles (metal, disposable, etc)
         iii. Waist-chain/belt
         iv. Restraint Chair**
         v. Other types as specifically directed by the Jail Administrator or as provided for by policy
         vi. Any combination of the above

Note:  All restraints placed on an inmate will be checked for proper application and double-locked, if applicable.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   USE OF FORCE

SUBJECT:             USE OF FORCE

---

    **B.** Principles governing the application of restraints:
        **a.** Protection from self-harm
        **b.** Maintain control
        **c.** Prevention of escape or assault
        **d.** Transport of inmates outside of facility

**\*\*Time limitations** – the restraint chair may be used for a period not longer than two (2) hours. At which time the inmate must be removed and examined by the Shift Supervisor, if possible. The supervisor may approve an extension of two (2) additional hours at which time the inmate will be reassessed. No inmate is to remain in the restraint chair for a period of 8 hours without medical assessment. Inmate must be checked every fifteen (15) minutes and a notation made in the permanent log.

**VII.** **Agency Response To Use Of Force**
    **A.** When a deputy uses force (other than presence, dialogue, or handcuffing) which does not result in any injury, complaint of injury, or property damage, the following procedures will be utilized:
        1. The incident will be documented on an incident report; and
        2. A Use of Force Report (separate from the incident report) will be completed, and submitted to the Office through the Sheriff's Office chain of command.
    **B.** When a Deputy uses force which results in property damage, complaint of injury, or non-serious injury to any individual including deputies, the following procedures will be utilized:
        1. Provide necessary medical aid, up to and including transport to a medical facility for the purpose of treatment;
        2. Immediately notify the Deputy's supervisor; and
        3. Document the incident on an incident report, and
        4. A Use of Force Report (separate from the incident report) will be completed, and submitted to the Office through the Sheriff's Office chain of command.
    **C.** When a Deputy uses non-deadly force which results in an injury that requires medical attention the following procedures will be utilized:
        1. If any person is injured and requires medical attention, deputies of this Sheriff's Office will render aid in accordance with their training and will also request medical assistance;

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:      USE OF FORCE

SUBJECT:            USE OF FORCE

2. The involved Deputy will notify their immediate supervisor of the incident and location.  If the Deputy is unable to do this, the first uninvolved deputies on the scene will do so.

3. The Deputy will take whatever action the Deputy's immediate supervisor advises as to whether the Deputy should remain at the scene or relocate.

4. Document the incident on a department incident report, and

5. A Use of Force Report (separate from the incident report) will be completed and submitted to the Office through the Sheriff's Office chain of command.

D. When a Deputy confronts a subject with a firearm, but does not discharge the firearm the following procedure will be utilized:

1. An incident report will be completed documenting the circumstance of the incident; and

2. A Use of Force Report (separate from the incident report) will be completed and submitted to the Office through the Sheriff's Office chain of command.

E. When a Deputy discharges their firearm, either accidentally or intentionally, but there is no injury, the following procedure will be utilized:

1. The deputies will notify their immediate supervisor.  Once the supervisor has been notified, the supervisor will:

   a. Proceed immediately to the scene;

   b. Take charge of securing the scene;

   c. Insure that the next level of command has been notified;

   d. Render command assistance to the involved deputy and assigned detective; and

   e. Complete a detailed supplement to the original report.

2. The Deputy will remain at and secure the scene, unless directed to do otherwise by a superior deputy.

3. The superior deputy will notify OPS (Office of Professional Standards) of the incident.  If the Deputy is at a different location, the supervisor will notify the detectives of the Deputy's location.

4. The Deputy will protect their firearm and present it for examination by a superior deputy or detective when requested.  If physically taking hold of the weapon would result in the loss of evidence, the Deputy will visually secure the scene, including the undisturbed weapon, until the scene has been released by detectives.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   USE OF FORCE

SUBJECT:          USE OF FORCE

5.  The involved deputy will make themselves available for all questioning, and will follow all verbal or written directives of his immediate supervisor, or investigator.
6.  The Deputy will complete an incident report.
7.  OPS will conduct an investigation of the incident in accordance with the Unit's Standard Operating Procedures. A Use of Force Report will be completed by Deputy, and submit to OPS through the chain of command.

F.  When a Deputy discharges their firearm, or uses other deadly force and injury or death of another results, the following procedures will be utilized:

1.  If any person is injured and requires medical attention, deputies will render aid in accordance with their training and will also request medical assistance.
2.  The involved Deputy will notify their immediate supervisor and the communications center of the incident. If the involved Deputy is unable to do this, the first deputy at the scene shall do so.
3.  If the involved Deputy used a firearm in the incident, they will protect and present it for examination by a superior deputy or detective when requested. If the involved Deputy is unable to do so, the first deputy on scene will ensure the weapon is protected for examination without disturbing the scene. If it appears that physically taking hold of the weapon would result in the loss of evidence, the responsible deputy will visually secure the scene, including the undisturbed weapon, until the scene has been released by detectives.
4.  The supervisor on scene will assign a noninvolved deputy to the involved Deputy, and remove the involved deputies from the scene as soon as possible and taken to the nearest ER for evaluation.
5.  The non-involved senior Deputy on scene will complete an incident report and Use of Force report to be submitted through the chain of command to OPS.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   USE OF FORCE

SUBJECT:            USE OF FORCE

6.
Responding Supervisor will do the following:
   a. Respond to the scene immediately.
   b. Determine the facts, provide such information to
      Command, Internal Affairs, and Investigating Agency.
   c. A non-involved deputy will be assigned to the involved
      deputy; removing them from the scene to the nearest E.R.
      as soon as possible.  The deputy's firearm should be
      secured at this point for evidence.
   d. Any deputy who discharged a firearm will <u>not</u> make an
      immediate statement and will be taken from the scene
      unless the situation dictates otherwise.
   e. Any deputy who discharged a firearm will provide a
      statement within a reasonable time, but no more than 72
      hours following the incident.  (This does not prevent the
      supervisor from gathering the facts of the incident.)
   f. Deputy witnesses (non-shooter) may answer questions at
      the scene.  Instruct all deputies not to discuss the incident
      until their statement are taken and they will complete
      supplemental reports.
   g. The senior non-shooter deputy on scene should perform
      these on scene functions until relieved by a supervisor.
   h. Photos will be taken of all involved deputies as they were
      when incident occurred if feasible.  Once this has been
      completed, the involved deputies may dress down and store
      away gear and weapons if needed.
   i. If a deputy's firearm has to be taken into evidence, the on-
      scene supervisor or command staff will issue another
      firearm to the deputy.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   USE OF FORCE

SUBJECT:          USE OF FORCE

## VIII. Duty to Intervene

A. **Use of Force:** Deputies of the Sheriff's Office have an affirmative duty to intervene if they witness a use force that is clearly unreasonable. Any deputy(ies) present and observing another deputy(ies) using force that is clearly beyond that which is reasonable under the circumstances shall, when in a position to safely do so, intervene to prevent the use of unreasonable force. Any deputy(ies) who observes another employee use of force that exceeds the degree of force permitted by law should promptly report these observations to a supervisor.

B. Deputies of the Sheriff's Office must recognize and act upon the duty to intervene to prevent or stop any member from conducting any act that violates the law or an agency policy (e.g., excessive force, theft, fraud, inappropriate language, sexual misconduct, harassment, falsifying documents, inappropriate behavior, etc.). Intervention may be verbal and/or physical. Failure to intervene may subject a deputy(ies) of this agency to disciplinary and or legal action.

## IX.    Administrative Requirements After Use of Deadly Force

A. **Administrative Leave/Duty Procedure**

1. Any deputy involved in a deadly force incident resulting in serious injury or death shall be placed on Administrative Leave directly upon completion of their preliminary interview of the incident with investigating agency. The Deputy will be given at least 24 hours prior to any interview.

2. The Sheriff or the designee thereof will give the order placing the Deputy on Administrative Leave. The scope and contents of the order will comply with the Standard Operating Procedures of Investigations.

3. This leave shall be without loss of pay or benefits, pending the results of the investigation. The assignment shall not be interpreted to imply or indicate that the deputy has acted improperly.

4. While on Administrative Leave the Deputy shall strictly comply with all rules associated with this leave status as prescribed by the Sheriff's Office.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:       USE OF FORCE

SUBJECT:                    USE OF FORCE

---

5. The Division Commander of the involved deputy will appoint or act themselves as a liaison for the involved deputy and their family. Agency Chaplain/ Peer Counselor will be notified and Traumatic Event handouts will be provided to all involved.

B. **Psychological Services for the Deputy**

1. In all cases where any person has been injured or killed as a result of the use of deadly force by a deputy, or when a deputy has been injured as the result of the use of deadly force, the Deputy will be afforded the opportunity to receive psychological, psychiatric, or peer counseling as soon as possible after the incident. This counseling is not required as a condition of employment but is highly recommended by the Sheriff's Office. Psychological or psychiatric counseling will also be made available to members of the Deputy's immediate family. The purpose of this counseling will be to allow the Deputy to express their feelings and to deal with the effects of the incident. The counseling shall not be related to any department investigation of the incident and nothing discussed in the briefing will be reported or disclosed to the department. The counseling session and communications to the counselors will remain protected by the privileged Professional Psychologists Code of Ethics and O.C.G.A. $\$\$$ 24-5-501(a)(5-8); 24-5-510; and 43-39-16.

2. It will be the responsibility of the Deputy to notify Internal Affairs Commander if they desire such services. Upon notification by the deputy, the Internal Affairs Commander shall arrange the services as soon as possible. Internal Affairs may make administrative documentation of such counseling in unit records, but no mention of the request will be placed in the investigative file.

3. In all cases where any person has been injured or killed as a result of the use of deadly force by a deputy, the Deputy shall not return to regular duty until the Deputy is determined by a license professional to be psychologically fit for duty. The Internal Affairs Commander will immediately notify the Sheriff upon receipt of the return to duty status. The Sheriff or the designee thereof, in turn will notify the chain of command.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL                    PAGE 11 OF 13

CHAPTER TITLE:    USE OF FORCE

SUBJECT:              USE OF FORCE

### C. Legal Representation Rights

1. A deputy involved in a deadly force incident shall be entitled to contact and have their personal attorney present at all stages of the Agency's investigation, to advise them of their legal and Departmental rights. If the attorney is present during the investigation conducted by Internal Affairs or outside Investigating Agency, the attorney will act as a mute observer only, and, accept as otherwise provided by law, will not advise or otherwise take an active part in the investigative proceedings.

2. The attorney may aid the Deputy in preparing a detailed and accurate report of the circumstances surrounding the event. This report shall be turned over to the investigative unit as part of and supplemental to any other oral or written report of the event.

### D. Blood/Urine Testing

In all administrative investigations where any person has been injured or killed as a result of deadly force by a deputy, the Deputy will required to submit to a post-incident blood and/ or urine test

CHAPTER TITLE:   USE OF FORCE

SUBJECT:          USE OF FORCE

      1. These tests will be administered according to the guidelines set forth in use of drugs and alcohol policy of the Sheriff's Office Policy Manual.

  E. **Civil Rights Investigation**
      1. The Sheriff's Office will respect the authority of the Federal Government to conduct an independent investigation to identify any civil rights violation which may have occurred.
      2. The Sheriff's Office will not order or request any of its members who may be suspects to confer with federal investigators without the advice of counsel.

X. **Administrative Review of Incidents**
  A. All reported uses of force will be reviewed by the involved deputy supervisor(s) authority to determine whether:
      1. Sheriff's Office rules, policy or procedure were violated.
      2. The relevant policy was clearly understandable and effective in the resolution of the incident.
  B. The findings of any policy violations or training inadequacies shall be reported to the appropriate unit for disposition
  C. There will be a regular review of use of force incidents by the Sheriff or designee to ascertain training and policy needs.

XI. **Training and Certification**
  A. All deputies will be certified with agency firearms in accordance with the agency Policy Issue and Modification of Firearms.
  B. The Paulding County Sheriff's Office Training Unit will provide training in the use of firearms. This training is provided annually. All deputies will attend and satisfactorily complete the training, in accordance with the agency Standard Operating Procedures. This Training includes:

      1. A review of Sheriff's Office policy on the use of force;
      2. Constitutional and Legal Requirements for using deadly force;
      3. Moral responsibility of carrying a firearm;
      4. Firearm proficiency; and
      5. Any other requirements set forth in Rules of the Georgia Peace Officers Standards & Training Council.
  C. The Paulding County Sheriff's Office Training Unit will also provide training in the use of impact weapons.
      1. Deputies will be certified in the use of authorized batons; and

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

PAGE 13 OF 13

CHAPTER TITLE:   USE OF FORCE

SUBJECT:   USE OF FORCE

2. Deputies will attend and satisfactorily complete training as directed by the training director in the use of:
   a. Non-Deadly force techniques;
   b. Authorized batons; and
   c. ECW use.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   INTERNAL AFFAIRS                    Page 1 of 1

SUBJECT:         POLICY

## I.   POLICY

To establish guidelines and procedures for thorough investigations of all complaints of alleged employee misconduct; to accurately determine whether the allegations are valid or invalid, and to take appropriate follow-up action. The provisions of this SOP applies to all members of the Paulding County Sheriff's Office.

## II.   PURPOSE

To maintain a public trust with the community by continuing to build a strong, positive relationship between the agency and the general public. One of the best ways to build public trust is to establish procedures for the handling of information concerning allegations of employee misconduct and to provide the public with a fair and effective means to redress their legitimate grievances against the agency or an individual employee.  The purposes for having such procedures are to:

    a.  Identify practices requiring corrective measures through remedial training or policy revision;

    b.  Protect the reputation of individual employees, the agency, and the public from false or misleading allegations; and

    c.  Identify employees who may be involved in illegal, unethical, or unprofessional conduct so that the appropriate corrective measures may be taken.



PLAINTIFF'S EXHIBIT 13

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   INTERNAL AFFAIRS              Page 1 of 2

SUBJECT:         PROCEDURES

## III.   PROCEDURES

Procedures shall apply to the receipt, recording, investigation and disposition of misconduct involving personnel of the Paulding County Sheriff's Office.

It is the policy of the Department to investigate all complaints against the Department or its personnel in a manner that will assure the community of prompt corrective action, when the Department personnel conduct themselves improperly. While also protecting the Department and its personnel from any unwarranted criticism pursuant to discharge of official duties. All personnel in the Department shall be instructed in and issued copies of the Office of Professional Standards policy.

It is the policy of the Paulding County Sheriff's Office to thoroughly investigate all complaints of alleged employee misconduct, to accurately determine whether the allegations are valid or invalid, and to take appropriate follow-up action.

1. Whenever an agency employee is alleged to have violated a criminal offense, the matter will be investigated by the agency's Internal Affairs Division for misdemeanor offenses or referred to the Georgia Bureau of Investigations for any felony offense or as otherwise determined by the Sheriff.

2. Whenever an agency employee is under investigation for any criminal violation, whether by this agency or an outside agency, a concurrent internal investigation may be conducted by the Internal Affairs Division when directed by the Sheriff.

## A. DEFINITIONS

1. Internal Affairs Investigation: An administrative inquiry into an allegation of employee or agency misconduct to determine the facts, circumstances, and contributing factors so that appropriate corrective action may be taken.

2. Misconduct: Employee actions that are unlawful, dishonest, improper, or that represent a failure to do what duty requires to be done.



PLAINTIFF'S
EXHIBIT
14

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   INTERNAL AFFAIRS                          Page 1of 2

SUBJECT:          CONDUCT OF INTERNAL INVESTIGATIONS

## VI. CONDUCT OF INTERNAL INVESTIGATIONS:

1. **GENERAL:** All complaints received shall be documented on a complaint form and an investigation shall be initiated so long as the complaint contains sufficient information upon which to base further investigative action.

    a. Individuals who make allegations concerning excessive use of force shall be asked to provide written authorization for the release of their relevant medical records to the agency.

    b. When appropriate, complainants shall be informed by the IA Officer of the legal consequences for filing false and malicious allegations against a law enforcement official in accordance with OCGA 16-10-20, 16-10-26-, OR 16-10-71.

2. **RELIEF FROM DUTY:** Employees accused of being involved in the following may be relieved from their normal duties as directed by the Sheriff and/or his designee or IA Officer:

    a. Use of deadly force resulting in death or injury;

    b. Use of non-deadly force resulting in death or serious physical injury;

    c. Any criminal violation; OR

    d. Any serious rule violation.

3. **CONCURRENT INVESTIGATIONS:** Unless otherwise directed by the Sheriff and/or his designee, the Internal Affairs Officer will conduct a concurrent investigation when an employee is being investigated for a criminal action:

    a. The IA Officer will coordinate with the investigative agency to ensure that his/her activities do not compromise or interfere with the Criminal Investigations. The IA Officer will only suspend his/her activities if it is determined that the criminal investigation may be compromised and only for



PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   INTERNAL AFFAIRS                    Page 2 of 2

SUBJECT:              CONDUCT OF INTERNAL INVESTIGATIONS

as long as it is reasonably necessary.

    b. All internal affairs activities will be conducted separately from those of other investigative agencies.

The IA Officer may furnish any information obtained as a result of his/her investigation to other law enforcement agencies EXCEPT for:,

    c. evidence or statements obtained from the accused employee as a result of a "Garrity warning."

    d. Information obtained from other agencies may be used as deemed appropriate by the IA Officer.

4. **INTERNAL INVESTIGATIONS WILL BE COMPLETED WITHIN 30 DAYS** of receipt. Additional time needed to complete the investigation properly will be authorized on a case by case basis by the IA Officer or Sheriff and/or his designee.

PAULDING COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURES MANUAL

CHAPTER TITLE:   INTERNAL AFFAIRS                    Page 1 of 1

SUBJECT:  SHERIFF AND/OR HIS DESIGNEE ACTIONS

## IX. SHERIFF AND/OR HIS DESIGNEE ACTIONS:

1. Upon completion of the investigation, the IA Officer will submit their findings to the Sheriff and/or his designee.

2. The Sheriff and/or his designee shall review the report and supporting documents and shall either return the case for further investigations or shall, based upon a "conclusion of fact", give approval of the findings of the case as follows:

   a. Sustained: The evidence is sufficient to prove the allegations.

   b. Not Sustained: The evidence is insufficient to either prove or disprove the allegations.

   c. Exonerated: The evidence shows that the incident occurred and was lawful or proper.

   d. Unfounded: The evidence shows that the allegation is false or not factual.

3. The Senior Commander or Division Commander of the employee who was the subject of the internal investigation will notify said employee of the recommended disposition of the case in writing.

   a. In those instances, when the matter is not sustained, exonerated, or unfounded, no further action against the employee will be taken.

   b. In those cases when the allegations of misconduct are sustained, the Sheriff and/or his designee shall determine the degree of severity and act with the appropriate disciplinary action.



PLAINTIFF'S EXHIBIT 16



# PAULDING COUNTY SHERIFF'S OFFICE

### SHERIFF GARY GULLEDGE
*180 Constitution Blvd.*
*Dallas, Georgia 30132*

Office  (770) 443-3010
Jail    (770) 443-3030
Fax     (770) 443-3014

## Termination Letter

VIA HAND DELIVERY

02/27/23

Michael McMaster

This letter serves as official notification of your dismissal from employment with the Paulding County Sheriff's Office effective today, 02/27/23.

It has been determined that you violated agency and/or county policy as indicated by the following actions:

Most recently, Case: <u>2023-02130012</u> where this Office received a complaint from a citizen and find the following:

    --Deputy McMaster should have used de-escalation tactics instead of arguing with the defendant where they both were yelling at one another.
    --Deputy McMaster stated, "Bitch is stupid" when she was placed in the back of patrol unit.
    --Deputy McMaster exceeded the speed limit several times while transporting defendant to jail and failed to seat belt the defendant in rear of patrol vehicle.
    --Noted in Deputy McMaster's report, he wrote, "While in route, the smell of alcohol, Marijuana and body odor became overwhelming, so I rolled the windows down for a moment to air out the vehicle" I find this false as video/ audio reveal that the windows were down the entire transport time from Pine Valley Rd. to the Detention Center. According to Accuweather.com, it was 34 degrees Fahrenheit that morning in Dallas, GA.

Chapter: <u>Code of Conduct</u>
    Subject: Standards of Conduct
        Section: I (A) Code of Ethics "being mindful of the welfare of others"
        Section: I (B) (10) Professional Image, (B) (17) On/Off duty conduct

    Subject: Officer/Employee Responsibility
        Section: IV Ethics and Conduct, General
        (5)All personnel of the Sheriff's Office shall be dignified, courteous and orderly in conduct and demeanor. At all times in the performance of duty, they must maintain proper decorum, be attentive, control their temper, be patient, and discreet.
        (6) All personnel of the Sheriff's Office will refrain from harsh, violent, coarse, profane or arrogant language in any and all communications with the public or fellow employees.
        (39) A sworn employee shall not maliciously use his office to oppress, persecute or otherwise harass any person or persons.

Chapter: <u>Use of Force</u>
    Subject Use of Force:
        (B) (2) Verbal Commands: "utilized to control or de-escalate"

Chapter: <u>Arrest</u>
    Subject: Taking Suspects into Custody Subsection: Transporting Prisoners (A) When the prisoner is placed in a car, a seatbelt shall be secured around the prisoner, if at all possible.

**PLAINTIFF'S EXHIBIT**
**17**

Chapter: Vehicle Operations
    Subject: Departmental Rules and Regulations
        Subsection (C) Due Regard (1) Routine Patrol

Chapter: Patrol Functions
    Subject: Handling Disputes
        (2) (E) "attempt to establish normal speaking conversation"


Additionally, upon looking into previous cases, the following has been found:

Case: 2022-04290027

    On 4/29/22, Deputy McMaster saw a gun in the passenger seat while conducting his investigation on a traffic stop where the defendant did not have a tag on his vehicle. The defendant was outside of his car on the driver side and at the back door. Deputy McMaster then observed a gun in the front passenger seat. Thereafter, rather than questioning the defendant about the gun or asking for the defendant's identification to see if he was legally able to possess a firearm, Deputy McMaster's attempts to detain the defendant by handcuffing him even though the defendant was not near the gun. The defendant immediately starts questioning what is going on, and Deputy McMaster attempts to grab him around the waist and take him to the ground, which was unsuccessful. The defendant then fell back onto Deputy McMaster, and they started rolling around on the ground. The vehicle is an extension of our homes and in our duties; law enforcement officers deal with people daily who are armed or have a weapon in their vehicle. By Deputy McMaster's actions, he caused the situation to needlessly escalate, resulting in the defendant being charged with felony obstruction. In his report, Deputy McMaster does not indicate if he ever checked the criminal history or if he verified if the defendant had a Weapons permit. This escalation of the situation is putting himself and others in harm.


Chapter: Use of Force
    Subject Use of Force: (B) (2) Verbal Commands: "utilized to control or de-escalate"


    Cases 2022-12130058 and 2022-12270040

    Similar to Case 2022-04290027, in both of these cases Deputy McMaster is escalating the situation rather than de-escalating increasing the potential to cause harm to himself or others.

Case: 2022-12270040

    Occurred in the Detention Center 12/27/22, a defendant had been brought in by Georgia State Patrol. Deputy McMaster was in the intake vestibule while a pat down was in progress. Deputy McMaster spoke towards the male in an antagonizing and condescending way. As the defendant stepped away from the wall, Deputy McMaster pushed him back against the wall. The defendant stated "don't push me" and Deputy McMaster replied, "I will". Deputy McMaster then stated "man take your fucking shoes off, I'm tired of dealing with you". As the defendant bent over, Deputy McMaster was observed grabbing the defendant by the back of his head taking him to the ground.

Chapter: Code of Conduct
    Subject: Officer/Employee Responsibility
        Section: IV Ethics and Conduct, General
            (5) All personnel of the Sheriff's Office shall be dignified, courteous and orderly in conduct and demeanor. At all times in the performance of duty, they must maintain proper decorum, be attentive, control their temper, be patient, and discreet.

Case: 2022-12130058

Occurred in the Detention Center on 12/13/22, as the above in the intake vestibule with the defendant, during the pat down that Deputy McMaster had taken over the male stated "only weapon I brought in was my big ass dick", Deputy McMaster replied "it's not that big". Continuing during the process the defendant stated, "slam my face against the wall". Deputy McMaster replied, "I will". Then while in pre-booking, Deputy McMaster was escorting the defendant to the strip search room. Deputy McMaster stated "don't fucking snatch away from me, what's wrong with you". During the interaction in the strip search room the defendant was taking down to the floor. The defendant was then placed in the Safety Restraint Chair. The defendant asked about urinating and, "who was going to aim his dick", then he said "y'all just gonna let me piss my pants". Deputy McMaster replied "you can just piss right there".

Chapter: Code of Conduct
    Subject: Officer/Employee Responsibility
        Section: IV Ethics and Conduct, General
            (5)All personnel of the Sheriff's Office shall be dignified, courteous and orderly in conduct and demeanor. At all times in the performance of duty, they must maintain proper decorum, be attentive, control their temper, be patient, and discreet.

Given the severity and scope of these policy violations and conduct, prior disciplinary history, and the fact that you have previously been given formal notice that further unacceptable conduct may result in dismissal, the decision has been made to terminate your employment with the Paulding County Sheriff's Office effective today, 2/27/23. You must make arrangements to return all county property to Captain B. Godsey or Major D. Pace no later than close of business on 03/03/23. Your final check for all earned salary, vacation, and sick leave will be processed for the pay period closing 03/03/23 and paid on Friday, 03/10/23. *This check will not be direct deposited; it will be mailed to your address on file or you may make arrangements to pick it up in Human Resources after 10:00 AM on Friday, 03/10/23.*

Pursuant to the Rules and Regulations of the Paulding County Civil Service System, you have a right to appeal to the Civil Service Board by filing a written request with the Human Resources Department within ten (10) days of this termination. Under separate coverage, you will receive separation information, including notification of your continuation of benefits rights under COBRA.

Sincerely,

Col. Chad Hunton
Chief Deputy

cc:  Sheriff Gary Gulledge
     Major David Pace
     Major Karen Ritch
     Tara Palmer, Human Resources Director

On Friday, October 30, 2015, Lt. RITCH received a phone call from an unknown person who wished to remain anonymous. The caller stated that they worked at the veterinary hospital with Deputy MCMASTER'S wife. The caller stated that earlier in the week Deputy MCMASTER called the office and talked with the receptionist and made threats to come to their office and "beat his ass."

The caller stated the staff is now scared and afraid of Deputy MCMASTER coming to the office and causing problems. Lt. RITCH asked the caller what caused this reaction from Deputy MCMASTER and the caller stated that there was a new guy in the office and apparently he rubbed the shoulders of Deputy MCMASTER'S wife and then the wife told him about the incident. The caller stated that Ms. MCMASTER'S was not upset about the incident.

The caller also stated that this was not the first incident with Deputy MCMASTER intimidating people at their office. The caller further stated that they did not want him there anymore because he has an anger problem. They do not wish to file a formal complaint at this time, but will do so if this continues.

Lt. RITCH advised the caller to contact her back if any more issues with Deputy MCMASTER arise. Lt. RITCH advised the caller that a supervisor will take with Deputy MCMASTER about the situation.





PLAINTIFF'S EXHIBIT
18

On Wednesday, 4 November 2015, myself, Captain John Sheirling and Major Craton counseled Deputy Michael McMaster reference an anonymous complaint received about him. The anonymous complaint was received by Lt Karen Ritch and once we became aware of this complaint we pulled his file to review any use of force reports. Once reviewing his file we recognized that Deputy McMaster can be unnecessarily overly aggressive in handling situations that arise in the Detention Center. Deputy McMaster was recently written up for aggressive behavior when dealing with an inmate.

While speaking with Deputy McMaster we asked if there were any contributing factors to his anger issues and he informed us that he was having issues at home with his wife. He also stated that he is not getting enough sleep as he is watching his child while his wife is at work.

We advised Deputy McMaster that it is vital that he remain professional at all times in his dealings with inmates and he cannot let the inmates get to him. We encouraged him to contact the Employee Assistance Program to seek counselling for his issues at home as well as his anger issues. We also advised him that he cannot continue to go without sleep. He must work out child care so that he can get a reasonable amount of sleep to be able to function in a competent manner.

We stressed to Deputy McMaster that we want him to do his job, we want him to be comfortable with the job requirements, but that he must learn to use the most reasonable amount of force necessary to control any situation in a safe way. We further explained to Deputy McMaster that if he continues to demonstrate a pattern of inappropriate use of force it could lead to further disciplinary action and/or termination.

Captain John Sheirling
Assistant Jail Administrator

