## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

TYLER LEE CANARIS,

     Plaintiff,

v.

MICHAEL MCMASTER *et al.*,

     Defendants.

CIVIL ACTION FILE NO:

4:23-cv-00215-WMR

## ORDER

This matter comes before the Court on both Defendant Michael McMaster's Motion for Summary Judgment [Doc. 68] and Defendant Sheriff Gary Gulledge's Motion for Summary Judgment [Doc. 70]. For the reasons stated herein, both Defendants' motions for summary judgment are **GRANTED**.

## I.    STATEMENT OF FACTS

The Court derives the following facts primarily from dashboard camera video that captured the incident at issue in this case ("Daschcam Video"). *See* [Doc. 69]. It also references Defendant McMaster's Investigative Narrative [Doc. 1-1], Plaintiff's Deposition [Doc. 75], and Plaintiff's Complaint [Doc. 1]. The Court has included screenshots from the video itself to help further illustrate the facts.[1]

---

[1] "When considering a motion for summary judgment, including one asserting qualified immunity, 'courts must construe the facts and draw all inferences in the light most favorable to the nonmoving

1

The incident stems from 911 calls reporting "a male with dark clothing and a backpack attempting to break into cars in the area." [Doc. 1-1 at 31]. Dispatch sent McMaster to respond to the complaints. [*Id*.]. The Dashcam Video shows that shortly after turning on the road where the alleged break-ins were reported, McMaster saw Plaintiff Tyler Canaris walking. Dashcam Video at 0:56 *et seq*. In the video, Plaintiff appears to be wearing a dark hoodie, dark pants, and a backpack. *Id*.

The Dashcam Video shows blue emergency vehicle lights activating from McMaster's vehicle. *Id*. at 0:59 *et seq*. Plaintiff stops in front of McMaster's vehicle. *Id*. at 01:01 *et seq*. McMaster first commands Plaintiff to "let me see your hands." *Id*. at 01:04 *et seq*. Plaintiff seems to remove a headphone from his ear as McMaster repeats himself, stating "let me see your hands." *Id*. at 01:06 *et seq*. Next, McMaster instructs Plaintiff to "get your hands out of your pockets." *Id*. at 01:08 *et seq*.

Then, McMaster approaches Plaintiff and informs him that he is "being detained." *Id*. at 01:12 *et seq*. McMaster repeatedly asks Plaintiff to take his backpack off. *Id*. at 01:15 *et seq*. Plaintiff then asks McMaster "what am I doing?" *Id*. at 01:17 *et seq*. McMaster states "before you get taken to the ground, take your

---

party[.]'" *Underwood v. City of Bessemer*, 11 F.4th 1317, 1327 (11th Cir. 2021) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). But when, as here, the record contains reliable video "capturing the events in question," courts should view the facts "in the light depicted by the videotape." *Id*. at 378, 381.

backpack off." *Id*. at 01:21 *et seq*. Plaintiff explains he is getting picked up for work. *Id*. at 01:24 *et seq.*

McMaster takes Plaintiff to the hood of the police car where he continually struggles with Plaintiff to get Plaintiff's hands behind Plaintiff's back. *Id*. at 01:28 *et seq.* Plaintiff holds his phone up and asks McMaster to "just tell me what's going on." *Id*. at 01:34 *et seq.* McMaster takes Plaintiff's phone and places it on the hood of the car. *Id*. at 01:42 *et seq*. Then, McMaster removes Plaintiff's backpack. *Id*. at 01:45 *et seq.*. McMaster explains that he is detaining Plaintiff because Plaintiff fit the description of a person breaking into cars. *Id*. at 01:47 *et seq.*

After this statement, Plaintiff states "I'm not breaking into anyone's cars." *Id*. at 1:50 *et seq*. While making this statement, Plaintiff's left hand remained in front of him. *Id.* at 1:48 *et seq.* Plaintiff then pulled his right arm away and turned to his right-hand-side. *Id.* For a short moment, both of Plaintiff's hands were free. *Id*. Plaintiff's left hand went toward the front of his body, out of McMaster's view. *Id.* at 1:49 *et seq.*

3



McMaster then locked his arms around Plaintiff's midsection and took Plaintiff to the ground by picking him up and forcefully moving backwards. *Id*. at 01:51 *et seq*. The two landed on the pavement. *Id*.





Soon after, another officer appears in the video. *Id*. at 02:04 *et seq*. The video shows both officers on the ground, and Plaintiff not in view. *Id*. The Court assumes the officers are putting handcuffs on Plaintiff because the next angle shows Plaintiff with handcuffs on. Thirty-one seconds after the second officer appears, both officers lift Plaintiff up by either side to bring Plaintiff to a standing position. *Id*. at 02:35 *et seq*. The two officers escort Plaintiff out of the video frame. *Id*. Plaintiff struggles to walk as McMaster continues to reprimand him. *Id*. Plaintiff was on the ground for approximately fifty seconds total. *Id*. The Court calculated this from the moment McMaster conducted his takedown of Plaintiff to the time the two officers assisted Plaintiff to stand. *Id*.

Plaintiff alleges that he "sustained significant injuries that required medical and surgical treatment from being body slammed to the ground by Defendant

McMaster." [Doc. 1 at 2]. These injuries included a "left clavicle fracture, right thumb fracture, skull fracture, rupture of left ear drum, traumatic brain injury," and other injuries. [*Id.* ¶ 23]. However, Plaintiff did not seek counseling or treatment for emotional distress in connection with this incident. [Doc. 75 at 34].

## II.    PROCEDURAL HISTORY

On September 22, 2023, Plaintiff filed his Complaint in this Court. [Doc. 1]. He asserted multiple causes of action under 42 U.S.C. § 1983. [*Id.* at 23–28]. First, against McMaster, he asserts a Fourth Amendment Excessive Force Claim (Count I). [*Id.* at 23–25]. Next, he asserts a Supervisory Liability Claim against Gulledge in his Individual and Official Capacity (Count II). [*Id.* at 25–29]. Plaintiff also filed multiple state law claims against McMaster, including false imprisonment (Count III), assault and battery (Count IV), intentional infliction of emotional distress (Count V), and a claim for punitive damages (Count VI). [29–35]. Finally, Plaintiff seeks attorneys' fees against both McMaster and Gulledge (Count VII). [*Id.* at 36–37].

After discovery, on July 14, 2025, both Defendants submitted Motions for Summary Judgment. *See* [Docs. 68, 70]. The Court held a hearing on these motions on October 6, 2025. [Doc. 95].

## III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper when the record evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if evidence suggests a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). The moving party bears the burden of demonstrating that there is no genuine issue of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The Court views the evidence and any inferences that may be reasonably drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).

## IV.  ANALYSIS

As a preliminary matter, Defendant McMaster filed a notice of objection, [Doc. 93], to Plaintiff's use of an order from Paulding County State Court in the criminal case against McMaster. [Doc. 82-1]. Defendant Gulledge joined the notice

of objection. [Doc. 94]. Both Defendants urge the Court not to consider the state court order.

At the hearing on October 6, 2025, Plaintiff relied on *Webb v. Ethridge*, 849 F.2d 546 (11th Cir. 1998), to argue against Defendants' objections. Plaintiff seemingly hoped for the Court to consider the state court's interpretation of the facts.[2] However, the Court finds Plaintiff's use of this case unconvincing and misguided. Plaintiff argued that the Court could not decide the issue of qualified immunity because the parties disputed the facts and compared this case to *Webb*. However, that case is distinct from the case in front of the Court today.

In *Webb*, the Eleventh Circuit addressed the issue of when "parties dispute the conduct of defendants leading up to [the plaintiff's] arrest[.]" *Id*. at 550. That was the key issue, and the Court could not decide whether the officers acted reasonably there. *Id*. Here, as noted above, a true and accurate video depicts the events. Although the parties disagreed at the hearing about what happened between Plaintiff and McMaster, the Court independently interpreted the video and found the facts it laid out above. Therefore, the Court can decide the issue of qualified immunity at

---

[2] The Court notes that it did not review the state court order in making its factual determination, so as to not influence its assessment of the depiction of events in the Dashcam Video. Even if the Court had considered the state court decision, that ruling addressed the criminal prosecution and does not resolve the issue presently before the Court, namely, whether there was arguable probable cause, or even arguable reasonable suspicion, for the officer to detain Plaintiff in the first instance.

this stage, and the state court proceedings are both inadmissible and unnecessary for the Court to consider at this juncture.[3]

The Court agrees with the Defendants that the state court order is not proper evidence, and its legal conclusions are not binding on this Court. *See United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994) (holding that it was improper for a district court to take judicial notice of findings of facts in previous suits). The Court also notes that the issues in this case are distinct from those before the state court. For those reasons, the Court disregards the state court order and independently evaluates the present motions.

### A. Qualified Immunity Bars Plaintiff's Section 1983 Claims Against Defendant McMaster

Plaintiff's Complaint alleges an excessive force claim against McMaster pursuant to § 1983. For the reasons stated herein, qualified immunity bars that claim; therefore, McMaster is entitled to summary judgment. The Court will first analyze whether Plaintiff's detention and subsequent arrest were lawful and then analyze qualified immunity.

*i.    Defendant McMaster had Authority to Stop Plaintiff.*

Although the Complaint does not raise any federal claim related to Plaintiff's detention and arrest, the Court begins its analysis of McMaster's qualified immunity

---

[3]Additionally, *Webb* is inapplicable here because it involved a trial verdict. Here, the Court is considering a pretrial dismissal, a materially different procedural posture; therefore, *Webb*, also does not apply for that reason.

with determining whether those were valid before turning to excessive force. This is because any use of force would be unreasonable if there was no prior lawful detention. *See Motes v. Myers*, 810 F.2d 1055, 1060 (11th Cir. 1987) (stating that "[i]t is obvious that if the jury finds the arrest unconstitutional, the use of force . . . [was] unconstitutional").

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Although "reasonable suspicion" is less demanding than "probable cause," it requires officers to have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Notably, "[a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (quoting *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000) (other citations omitted)). As for qualified immunity in analyzing a *Terry* stop, it is an even lower standard than reasonable suspicion. Rather, there must be an "arguable" reasonable suspicion to support the detention. *See Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000).

Here, Defendant McMaster was dispatched near Plaintiff's location after

Dispatch received reports of a person breaking into cars. This created a possible emergency situation. Dispatch described the individual as a male in dark clothing and a backpack in the area. After arriving to the area, McMaster saw Plaintiff, which he alleges matched dispatch's description, and based on the Court's interpretation of the video, it agrees. Therefore, based on the emergency nature of the situation and McMaster's corroboration of facts given by Dispatch, the Court concludes that was enough to entitle McMaster to begin a *Terry* stop. *See United States v. Davis*, 175 F. App'x 286, 288 (11th Cir. 2006) (officer had reasonable suspicion while responding to 911 call about burglary where suspect matched the description in the dispatch area and he spoke with the driver of a car to confirm facts); *United States v. Sanders*, 394 F. App'x 547, 549 (11th Cir. 2010) (finding reasonable suspicion where officers corroborating information based on an anonymous 911 call indicating a possible emergency situation and detainee matched the suspect's reported clothing); *Washington v. City of Atlanta, Georgia*, No. 1:17-CV-00605-ELR, 2018 U.S. Dist. WL 8263136, at *4 (N.D. Ga. Feb. 16, 2018) (reasonable suspicion existed based on "the information provided by the 911 caller, [officer's] observation that Plaintiff matched the description from the 911 caller, and the fact that Plaintiff was in the area of the reported incident"); *compare Florida v. J.L.*, 529 U.S. 266, 268 (2000) (finding that an anonymous tip reporting that a person was carrying a gun, without more was insufficient to support a finding of reasonable suspicion). Since McMaster

11

was entitled to stop Plaintiff based on an arguable reasonable suspicion, to reach

qualified immunity, the court must also find that Plaintiff's arrest was lawful.[4]

### ii. Defendant McMaster had Authority to Arrest Plaintiff.

Next, to have the authority to arrest Plaintiff, McMaster would need to have

had probable cause. *See United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir.

1992) ("Probable cause to arrest exists when law enforcement officials have facts

and circumstances within their knowledge sufficient to warrant a reasonable belief

that the suspect had committed or was committing a crime.") (citation omitted).

"Absent probable cause, an officer is still entitled to qualified immunity if arguable

probable cause existed." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009)

(citation omitted). A court can find arguable probable cause "where 'reasonable

---

[4] The Court also notes that McMaster may still have been entitled to act as he did without probable cause to arrest for obstruction. Officer safety is the main underpinning of *Terry* stops. *See Terry*, 392 U.S. at 29 ("The sole justification of the search [of a suspect] is the protection of the police officer and others nearby."). However, a frisk must be "reasonably related in scope to the circumstances which justified the [frisk] in the first place." *Id.* at 20. A frisk "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer[,]" does not exceed the scope of the Fourth Amendment. *Id.* at 29. However, the scope "must not be so limited that officers cannot take reasonable actions in furtherance of their own safety and that of others." *United States v. Johnson*, 921 F.3d 991, 1000 (11th Cir. 2019). Here, since the Court established McMaster had reasonably articulable suspicion to stop Plaintiff, McMaster, once Plaintiff moved his arm out of McMaster's view, was then arguably entitled to conduct a frisk to discover possible weapons on Plaintiff. His maneuver, while undoubtedly violent, was arguably to ensure his own safety and those nearby. Plaintiff's arm moved out of McMaster's line of vision right before the takedown. Therefore, it was reasonable for McMaster to attempt to disarm and stop Plaintiff from potentially reaching for a weapon. If McMaster had been attempting to further investigate a possible crime, that would be prohibited, however that is not the case here. *See Minnesota v. Dickerson*, 508 U.S. 366, 378 (1993) (holding that an officer may not continue to conduct a pat down and investigate evidence where the criminality was not apparent without further manipulation by the officer). Rather, McMaster's actions comport with a finding that he was disarming Plaintiff in the interest of the safety of himself and those nearby.

officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001).

Evidence shows that Plaintiff did not comply with McMaster's commands throughout the interaction. While Plaintiff's non-compliance, in the Court's view, was minor, the facts show that he repeatedly failed to follow McMaster's directives. Plaintiff states that he was wearing headphones and could not hear McMaster's commands; however, this argument carries little weight since the Fourth Amendment only considers information available to the officer, not all information. *See Case*, 555 F.3d at 1327 (reviewing officer's conduct based on all information available to him). Here, there is no evidence that McMaster knew Plaintiff could not hear him and that such was the reason for his noncompliance. Therefore, the Court finds Plaintiff's noncompliance as reason for Plaintiff's arrest for obstruction of a law enforcement officer.

Georgia's criminal statute for obstruction of a law enforcement officer provides:

> Except as otherwise provided in subsection (b) of this Code section, a person who knowingly and willfully obstructs or hinders any law enforcement officer, prison guard, jailer, correctional officer, community supervision officer, county or Department of Juvenile Justice juvenile probation officer, probation officer serving pursuant to Article 6 of Chapter 8 of Title 42, or game warden in the lawful discharge of his or her official duties shall be guilty of a misdemeanor.

O.C.G.A § 16-10-24. The evidence shows Plaintiff failed to comply with McMaster's order to "show his hands" three times. Additionally, Plaintiff failed to comply with four commands to take off his backpack, requests to put down his phone, and requests to put his hands behind his back. Plaintiff's actions qualified as obstruction under Georgia law because his noncompliance hindered McMaster's ability to fully execute his investigative duties as a law enforcement officer. McMaster meets the qualified immunity "arguable probable cause" standard for arrest. Accordingly, under the facts revealed by video and the other undisputed facts of this case, Plaintiff's detention and arrest were lawful.

*iii.   McMaster's Use of Force was Reasonable.*

Excessive force claims allege that law enforcement officers carried out an unreasonable seizure through an unjustified use of force under the relevant circumstances. *Cnty. of Los Angeles, Calif v. Mendez*, 581 U.S. 420, 428 (2017). Therefore, these claims are "governed by the Fourth Amendment's 'reasonableness' standard." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This is an "objective inquiry that pays careful attention to the facts and circumstances of

14

each particular case" and considers facts from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Mendez*, 581 U.S. at 428. The Court considers "the totality of the circumstances[,]" "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (quoting *Graham*, 490 U.S. at 369)). Courts also "examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) (overruling exists on other grounds).

Courts have long recognized that the "typical arrest involves some force and injury." *Mobley v. Palm Beach Cty. Sheriff's Dept.*, 783 F.3d 1347, 1353 (11th Cir. 2015) (citation omitted). Here, while the injuries Plaintiff suffered were regrettable, the use of force was reasonable.

First, the 911 call and other information indicated that Plaintiff may have been the person reported to have been breaking into vehicles. Then, Plaintiff's non-compliance gave McMaster probable cause for the arrest, as mentioned above. This justified some use of force, albeit less than if Plaintiff was committing a violent crime. This weighs in favor of McMaster.

Next, whether McMaster was at risk is arguable. He had not searched Plaintiff for weapons and Plaintiff was, even if minorly, resisting his commands. This supports a finding that Plaintiff may have posed a threat, especially when McMaster realized that he could no longer see Plaintiff's right hand. Of course, in hindsight, Plaintiff had no weapon, but McMaster did not have that information at the time. This slightly weighs in favor of McMaster.

Next, evidence shows that Plaintiff continually failed to comply with McMaster's commands. Particularly when Plaintiff struggled to free his hand to seemingly avoid being handcuffed or restrained. It was not violent resistance, but still these facts lean in favor of McMaster as well.

Accordingly, the Court concludes that some force was allowable under the circumstances, particularly in considering Plaintiff's struggle when McMaster attempted to handcuff him.

Next, the Court considers whether the take down maneuver by McMaster was proportional in this case. The Court, especially after viewing the video, recognizes the violent nature of the maneuver. While it is appreciative of the difficult job of law enforcement, it is equally concerned about such aggressive maneuvers against citizens. The Court finds that this factor does not go in favor of either party.

Similarly, Plaintiff sustained extremely serious injuries, this factor might seemingly go in favor of Plaintiff. However, the Court is bound by prior Eleventh

16

Circuit case law, which reflects examples of similar injuries from similar police conduct where the Eleventh Circuit found no excessive force. *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (finding no excessive force where officer "grabbed [the plaintiff] by the arm, forced him to the ground, placed him in handcuffs" and "held [him] to the ground for less than one minute" and noting that "when the arrest occurred, [the officer] could not have known whether [the plaintiff] was armed or whether he would resist after"); *Croom v. Balkwill*, 645 F.3d 1240, 1245 (11th Cir. 2011) (finding sheriff was entitled to qualified immunity where he "pushed [the plaintiff] from a squatting position to the ground." And "then placed a foot on [plaintiff's] back," and detained her "on the ground for up to ten minutes"); *Horn v. Barron*, 720 F. App'x. 557, 565 (11th Cir. 2018) (finding officer entitled to qualified immunity where plaintiff repeatedly pulled her hands away from the officer and the officer used force to restrain her and stopped the use of force after plaintiff was restrained). Plaintiff here was held to the ground for fifty seconds total, cuffed, and then escorted to the police vehicle. Additionally, neither McMaster nor the other officer used any additional force after they restrained Plaintiff. Therefore, the Court finds this factor is also neutral.

Overall, this analysis does not yield a clear answer about whether this use of force was excessive under all the facts and circumstances. The Court has discretion to decide qualified immunity solely on the basis that the law was not clearly

established. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). That inquiry provides a resolution to the present motion, so that is where the Court turns next.

     *iv.*     *Defendant McMaster is Entitled to Qualified Immunity.*

"Qualified immunity is a question of law for the courts, even when asserted on summary judgment." *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity applies unless officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (citation omitted). This doctrine "gives government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law." *City & Cnty. Of San Francisco, Calif. v. Sheehan*, 575 U.S 600, 601 (2015) (citation omitted). "Qualified immunity applies to police officers partly because the law recognizes that they do an important necessary—but sometimes dangerous—job on the public's behalf." *Patel v. City of Madison, Ala.*, 959 F.3d 1330, 1337 (11th Cir. 2008).

To receive qualified immunity, a public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010). Discretionary authority covers "all actions of governmental officials that (1) were undertaken

pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (citation omitted).

Here, Defendant McMaster acted within his discretionary authority because he was a deputy fulfilling law enforcement responsibilities. *See Patel*, 959 F.3d at 1338 (holding that a police officer was acting within his discretionary authority when "he performed [a] takedown while on duty as a police officer conducting investigative functions."). Because Defendant McMaster established he was acting within the scope of his discretionary authority, the burden shifts to Plaintiff to demonstrate that qualified immunity is inappropriate.

To overcome qualified immunity, "a plaintiff must establish more than broad legal truisms; he or she must demonstrate that the law fixed the contours of the right so clearly that a reasonable official would have understood his acts were unlawful." *Dolihite v. Maughon ex rel. Videon*, 74 F.3d 1027, 1040–41 (11th Cir. 1996).

> The [plaintiff] can demonstrate that the contours of the right were clearly established in several ways. First, the [plaintiff] may show that a materially similar case has already been decided. Second, the [plaintiff] can point to a broader, clearly established principle that should control the novel facts of the situation. Finally, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary.

*Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (citations omitted).

Because "[t]his is not an obvious case[,] to show a violation of clearly established law, [Plaintiff] must identify a case that put [McMaster] on notice that

19

his specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021).

"Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (quoting *Mullenix v. Luna,* 577 U.S. 7, 13 (2015)). Generally, to meet this burden and overcome qualified immunity, a plaintiff must show that "existing precedent … placed the statutory or constitutional question *beyond debate*." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citation omitted) (emphasis added).

Here, the Court finds no existing, binding authority that clearly establishes that McMaster was prohibited from using this particular conduct. This case falls within cases in the Eleventh Circuit dealing with resisting, unrestrained suspects. *See Charles*, 18 F.4th  at 686 (finding no excessive force where officer tackled suspect when officer had no back up, arrestee was resisting by yelling and refusing to put his hands behind his back); *Myers,* 713 F.3d at 1328 (finding no excessive force where officer forced arrestee to the ground); *Saunders v. Duke*, 766 F.3d 1262, 1268 (11th Cir. 2014) (successful claim for excessive force where arrestee was already under control, not resisting, and obeying commands and officer "slammed" his head on the ground when arrestee raised his head); *Priester v. City of Riviera Beach*, 208 F.3d 919, 928 (11th Cir. 2000) (successful excessive force claim where

arrestee was compliant and a police officer ordered a dog to attack him).

Since the Court cannot find controlling precedent that classifies McMaster's conduct as a violation *beyond debate*, the Court finds qualified immunity applies here. Because the clearly established law prong is at least "debatable" and does not clearly favor Plaintiff, the Court finds that qualified immunity entitles Defendant McMaster to summary judgment against Plaintiff's federal excessive force claim.

### B. Plaintiff's State Law Claims Against McMaster Do Not Survive.

Plaintiff also alleges state law claims against McMaster for assault and battery, false imprisonment, and intentional infliction of emotional distress. McMaster raised the defense of official immunity to each of these claims.

This defense offers immunity to police officers involved in discretionary functions from tort claims unless they acted with "actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. Art. I, § 2, Par. IX(d); *Bashir v. Rockdale Cty.*, 445 F.3d 1323, 1333 (11th Cir. 2006); *Selvy v. Morrison*, 292 Ga. App. 702, 704 (2008) (stating that in the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact).

As stated above, there is no dispute that McMaster was acting within his discretionary role during the events. Therefore, the Court's inquiry focuses on whether a reasonable jury could find that McMaster acted with actual malice or intent to cause illegal injury. Actual malice does not include reckless conduct. *Black*

*v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016). Rather, actual malice requires a "deliberate intention to do wrong." *Adams v. Hazelwood*, 271 Ga. 414, 414–15 (1999) (citation omitted). "[A]ctual malice is not established merely by showing that the defendant acted with 'ill will.'" *Gates v. Khokhar*, 884 F.3d 1290, 1304 (11th Cir. 2018) (quoting *Adams*, 271 Ga. at 414–15). Similarly, "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *West v. Davis*, 767 F.3d 1063, 1073 (11th Cir. 2014) (citation omitted).

Plaintiff has not met this standard. Instead, McMaster used force to overcome Plaintiff's resistance to detention. The Court finds no basis to find actual malice or intent to cause an illegal injury. Therefore, official immunity bars Plaintiff's claims under state law.

Further, the Court finds that even without official immunity, Plaintiff's state law claims against McMaster do not survive this summary judgment review. First, his state law false imprisonment claim is barred because the Court already concluded that McMaster had legal cause to detain and arrest Plaintiff. Second, as for the assault and battery claim, the Court finds that Defendant had legal authority under Georgia state law to use force to overcome Plaintiff's resistance. O.C.G.A. § 17-4-20; *Selvy*, 292 Ga. App. at 706. Finally, under Georgia law, a lack of treatment to support severe emotional distress is often fatal to a plaintiff's claim. *Jefferson v. Hous. Hosps., Inc.*, 336 Ga. App. 478, 485 (2016); *Howerton v. Harbin Clinic*, LLC, 333

Ga. App. 191, 207–08 (2015). Here, there is no evidence of treatment for Plaintiff for severe emotional distress. Accordingly, the Court finds that Plaintiff's intentional infliction of emotional distress is also due to be dismissed.

### C. Plaintiff's Punitive Damages Claim Against McMaster Does Not Survive.

Plaintiff also moves for punitive damages under O.C.G.A. § 51-12-5.1 against McMaster. Georgia law allows punitive damages where a plaintiff can prove "by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).

Because the Court grants summary judgment on Plaintiff's substantive claims against McMaster, there is no basis for punitive damages. After reviewing the record, the Court finds no basis on which a jury could find clear and convincing evidence to justify punitive damages under O.C.G.A. § 51-12-5.1(b). Accordingly, McMaster is also granted summary judgment as to punitive damages.

### D. Plaintiff's Section 1983 Claim Against Sherrif Gulledge Does Not Survive.

As a preliminary matter, Plaintiff concedes that the Eleventh Amendment bars any claims against Sheriff Gulledge in his official capacity. [Doc. 84 at 19]. Accordingly, the Court grants Sheriff Gulledge's Motion for Summary Judgment as to claims against him in his official capacity.

### E. Sherriff Gulledge is Entitled to Qualified Immunity on Claims Asserted Against Him in His Individual Capacity.

Second, Plaintiff alleges a supervisory claim against Sheriff Gulledge. After review, the Court finds that Sherriff Gulledge is also entitled to qualified immunity and summary judgment is granted on this claim.[5]

To hold Sheriff Gulledge liable for a claim of supervisory liable pursuant to § 1983, Plaintiff must show that Sheriff Gulledge either "directly participated in the unconstitutional conduct or that a causal connection exists between [Sherriff Gulledge's] actions and the alleged constitutional violation." *Keith v. Dekalb Cnty., GA*, 749 F.3d 1034, 1047–48 (11th Cir. 2014). This is an "extremely rigorous" standard. *Id*. It is undisputed that Sherriff Gulledge did not participate in Plaintiff's stop or arrest, so Plaintiff can prevail only if he has identified some *other* causal connection between Sherriff Gulledge and McMaster's conduct.

Plaintiff alleges that Sherriff Gulledge "acted with deliberate indifference" by allowing widespread abuse of citizens by McMaster "without taking corrective action until after the incident involving Plaintiff." [Doc. 1 ¶ 71].

In supervisory liability, plaintiffs can establish causal connections through:

(1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate

---

[5]Since all claims against McMaster are dismissed and there are no allegations that Sheriff Gulledge acted independently in any way, all claims against him are likewise due to be dismissed. For the sake of completeness, the Court also addresses the additional independent grounds for which Sheriff Gulledge's Motion to Dismiss is due to be granted.

indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1298 (11th Cir. 2023) (citation omitted). The Court analyzes all three bases, but determines that Plaintiff's claim against Sheriff Gulledge cannot survive summary judgment.

### i.    *History of Widespread Abuse*

"[D]eprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and continued of duration, rather than isolated occurrences." *Keith*, 749 F.3d at 1048. Plaintiff cites multiple pieces of evidence to attempt to meet this standard.

First, Plaintiff, through his expert, cites McMaster's previous use of force incidents. [Doc. 84 at 13]. According to Plaintiff's experts, McMaster participated in 78 use of force incidents from 9/4/14 to 3/14/2022. [*Id*.]. Plaintiff's expert characterized the amount as "significant" and stated that it "demonstrates the Paulding County Sheriff's Office failure to monitor [McMaster's behavior[.]" [*Id*.]. Plaintiff attempts to use McMaster's sheer number of use of force reports to show a history of widespread abuse. Second, Plaintiff argues that the police department terminated McMaster "for multiple policy and procedure violations when dealing with defendants." [Doc. 84 at 15]. Plaintiff points to Sheriff Gulledge's approval of McMaster's termination to support this evidence. [*Id*.]. Finally, Plaintiff cites a 2015

citizen's report where the citizen stated that McMaster threatened to come to his office and "beat his ass." [*Id*. at 16]. This incident led to a review by supervisors of McMaster's use of force reports. [*Id*. at 16–17]. After analyzing that evidence, the Court finds none of it supports a finding of a history of widespread abuse.

First, as to the use of force reports, there is no indication that McMaster used excessive force, that force was unreasonable, or that McMaster committed any other wrongdoing in any of those incidents. These reports seem to be a routine measure within the department and do not, on their own, constitute evidence of wrongdoing. Additionally, Sherriff Gulledge's expert emphasized that in some of these cases, McMaster was assisting another officer, or these incidents occurred within the jail. [Doc. 70-1 at 13]. That argument seems to allege that those reports do not bear any similarity to the current incident. Accordingly, the Court agrees with Sherriff Gulledge that these incidents do not show a history of widespread abuse.

Next, the incidents cited in McMaster's termination happened *after* the incident involving Plaintiff. *Compare* [Doc. 70-2 at 26] (indicating that McMaster was fired on February 27, 2023, for incidents that happened from April 2022 to February 2023); *with* [*Id*.] (indicating that the date of the incident at issue was March 4, 2022, one month before the dates cited for McMaster's termination). As these incidents occurred after, they could not have put Sherriff Gulledge on notice,

constructive or otherwise, of the need to take correct action. Therefore, these also do not support a finding of widespread abuse.

Finally, the 2015 phone call complaint did not involve any kind of excessive force. Additionally, the phone call was six years prior to the incident at issue here. That call involved McMaster threatening an employee at an Animal Clinic and was unrelated to his work as a police officer. While the Court acknowledges this call may illustrate an unsavory personality, it does not help support a history of widespread abuse such that Sherriff Gulledge should be held liable. The Court finds no reason to believe that it bears any similarity to the current situation such that it can support Plaintiff's claim. The Court acknowledges that this incident led his superiors to review his use of force reports and conclude that while working in the jail, "McMaster [could] be unnecessarily overly aggressive in handling situations that arise in the *Detention Center*." [Doc. 84 at 16] (emphasis added). Again, that may indicate behavior in the jail, but not for use of force during arrests. Accordingly, Plaintiff has not alleged a history of widespread abuse to put Sheriff Gulledge on notice of a need to correct these alleged wrongdoings before McMaster's use of force on Plaintiff.

### ii.    There is No Evidence of a Custom or Policy Resulting in Sherriff Gulledge's Deliberate Indifference.

Next, Plaintiff can attempt to support his supervisory liability claim against Sherriff Gulledge by establishing a causal connection "demonstrating that a

27

supervisor's policy or custom resulted in 'deliberate indifference to [Plaintiff's] constitutional rights.'" *Piazza v. Jefferson Cnty. Ala.*, 923 F.3d 947, 957 (11th Cir. 2019). Plaintiffs can also point to the *absence* of a policy that led to a violation. *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). "A policy is a 'decision that is officially adopted by the [law enforcement agency], or created by an official of such rank that he or she could be said to be acting on behalf of the [law enforcement agency]." *Myrick*, 69 F.4th at 1299 (quoting *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1356 (11th Cir. 2022) (other citations omitted)). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Christmas*, 51 F.4th at 1356 (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322 (11th Cir. 2007)). "Demonstrating a policy or custom requires showing a persistent and wide-spread practice." *Goebert*, 510 F.3d at 1332 (quoting *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986)). The alleged unconstitutional act "must have been carried out pursuant to the alleged policy or custom." *Christmas*, 51 F.4th at 1356.

Here, Plaintiff has not plausibly alleged that Sheriff Gulledge instituted a policy or custom that caused McMaster to use excessive force on him. Plaintiff attempts to rely on his expert's opinion that the Sheriff's Office failed to train or ensure McMaster did not unlawfully detain, arrest, or use force on citizens. However, there is no evidence that any policy or custom provision supports this

claim. The Court does not see any official policy proposed by Plaintiff that could have led to the events that transpired between him and McMaster. Accordingly, this also fails.

Further, the Court finds Plaintiff's allegations lack proof of deliberate indifference by Sherriff Gulledge. Deliberate indifference requires "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than gross negligence." *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331–32 (11th Cir. 2013)). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Goebert*, 510 F.3d at 1332 (citations omitted).

Plaintiff fails to show how or when Sheriff Gulledge allegedly had subjective knowledge of a risk of serious harm and disregarded that risk by more than grossly negligent conduct. Therefore, Plaintiff does not support a claim for deliberate indifference for supervisory liability by showing a custom or policy that resulting in deliberate indifference.

       iii.   *There are No Facts Supporting an Inference that the Sherriff Gulledge Directed McMaster to Act Unlawfully.*

Finally, the last basis Plaintiff can use to attempt to establish the necessary causal connection for his claim against Sherriff Gulledge, is showing that Sherriff Gulledge directed his subordinates, here McMaster, to act unlawfully or knew that

McMaster would act unlawfully but failed to stop them from doing so. *See Keith*, 749 F.3d at 1048.

As the Court's reasoning thus far should indicate, Plaintiff presents no evidence that illustrates that Sherriff Gulledge either directed McMaster to act unlawfully here or knew he would act unlawfully and failed to stop him. Plaintiff cannot overcome Sherriff Gulledge's defense of qualified immunity. Accordingly, Plaintiff's claims against Sherriff Gulledge in his individual capacity are dismissed.

> iv. *Plaintiff Cannot Show Sherriff Gulledge Violated a Clearly Established Right.*

For completeness, the Court also finds that Sherriff Gulledge did not violate a clearly established right such that Plaintiff may continue to pursue § 1983 claims against him for this incident. As laid out in the Court's analysis of the claims against McMaster, "'[c]learly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable officer would understand that what he is doing' is unlawful." *Charles*, 18 F.4th at 698 (citations omitted). "The salient question is whether the state of the law at the time of an incident provided 'fair warning' to the defendant[ ] that [his] alleged conduct was unconstitutional." *Singletary v. Vargas,* 804 F.3d 1174, 1184 (11th Cir. 2015) (citing *Tolan v. Cotton*, 134 U.S. 640, 656 (2014)). "Fair warning is most commonly provided by materially similar precedent from the Supreme Court, [the Eleventh Circuit], or the highest state court in which the case arose." *Id.*

As Plaintiff cannot establish supervisory liability against Sheriff Gulledge, there is no evidence Sheriff Gulledge committed a constitutional violation at all. Therefore, Plaintiff's claims against Sherriff Gulledge are dismissed because Sherriff Gulledge is entitled to qualified immunity.

### F.  Plaintiff's Claim for Attorneys' Fees Against both Defendants Does Not Survive Summary Judgment.

Finally, Plaintiff's claims for attorney's fees against both Defendants are due to be dismissed. Under O.C.G.A. § 13-6-11, "[t]he expenses of litigation generally shall not be allowed as part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." To examine claims under this statute, courts have divided the conduct into two distinct categories: "bad faith" and "stubbornly litigious or causing unnecessary trouble and expense." *David G. Brown, P.E., Inc., v. Kent*, 274 Ga. 849, 850 (2002).[6]

First, "bad faith" requires more than "simply bad judgment or negligence, but [instead] it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive

---

[6]Plaintiff seeks attorneys' fees against both Defendants. O.C.G.A. § 13-6-11 only applies to state law claims, and Plaintiff only asserts state law claims against McMaster. Accordingly, the statute could apply only to McMaster. Nevertheless, because Plaintiff seeks fees from both Defendants, the Court addresses both here for completeness.

of interest or ill will." *Rapid Group, Inc. v. Yellow Cab of Columbus, Inc.*, 253 Ga. App. 43, 49 (2001) (citations and internal quotation marks omitted); *see also Davis v. Walker*, 288 Ga. App. 820, 825 (2007) (same). Plaintiff has provided no evidence to support the assertion that Defendants acted in bad faith, or their behavior otherwise comported with § 13-6-11. In the absence of evidence on the record as to this claim, Plaintiff's claim for attorneys' fees for bad faith fails.

Second, as to stubborn litigiousness, "if there is a bona fide controversy, there can be no stubborn litigiousness as a matter of law." *Steel Magnolias Realty, LLC v. Bleakley*, 276 Ga. App. 155, 158 (2005) (quoting *Grange Mut. Cas. Co. v. Kay*, 264 Ga. App. 139 (2003)). A bona fide controversy exists where a defendant has a reasonable defense at trial. *See White v. Scott*, 284 Ga. App. 87, 88–90 (2007); *Anderson v. Cayes*, 278 Ga. App. 592, 594 (2006). Here, there is a bona fide controversy because, as outlined above, both Defendants had reasonable defenses against each of Plaintiff's claims. Plaintiff has not proven he is entitled to attorney's fees for the second category under O.C.G.A. § 13-6-11. Therefore, the Court dismisses Plaintiff's claim for attorneys' fees in favor of both Defendants.

## V.    CONCLUSION

For the foregoing reasons, both Motions for Summary Judgment [Doc. 68], [Doc. 70] are now **GRANTED**. Accordingly, all claims are **DISMISSED WITH PREJUDICE**, and the Clerk of Court is **DIRECTED** to **TERMINATE** the case.

**IT IS SO ORDERED**, this 15th day of December, 2025.


_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE